1   **PANAKOS LAW, APC**
    Aaron D. Sadock (SBN 282131)
2   555 West Beech Street, Suite 500
    San Diego, California 92101
3   Telephone:      (619) 800-0529
    Facsimile:      (866) 365-4856
4
    Attorneys for Michael J. Pratt
5

6

7

8

9                   **UNITED STATES DISTRICT COURT**

10                 **SOUTHERN DISTRICT OF CALIFORNIA**

11   In re                                Case No.  **'19 CV 0160 MMA BLM**

12   MICHAEL J. PRATT,                    NOTICE OF REMOVAL OF ACTION

13                         Debtor.
     United States Bankruptcy Court,
14   Southern District of California
     Case No. 19-00271-LT13
15

16   _____

17   JANE DOE NOS. 1-14, inclusive,
     individuals;
18
             Plaintiffs,
19   v.

20   GIRLSDOPORN.COM, a business
     organization, form unknown; MICHAEL J.
21   PRATT, an individual; et al.,

22              Defendants.

23   LEAD CASE:
     Case No. 37-2016-00019027-CU-FR-CTL
24
     CONSOLIDATED WITH:
25   Case No. 37-2017-00043712-CU-FR-CTL
     Case No. 37-2017-00033321-CU-FR-CTL
26   _____

27   / / / /

28   / / / /

                                    -1-

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Michael J. Pratt ("Defendant") hereby submits this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1452 and Federal Rule of Bankruptcy Procedure 9027 and removes the action to the United States District Court for the Southern District of California.

1. Michael J. Pratt, the debtor in the above-referenced bankruptcy case ("Debtor"), filed a Voluntary Petition under Chapter 13 of Title 11, of the United States Code in the United States Bankruptcy Court, Southern District of California on January 23, 2019, as Case No. 19-00271-LT13.

2. On or about June 2, 2016, an action was commenced against Debtor in the Superior Court of the State of California, County of San Diego, as Lead Case No. 37-2016-00019027-CU-FR-CTL, Consolidated with Case No. 37-2017-00043712-CU-FR-CTL and Case No. 37-2017-00033321-CU-FR-CTL, and entitled JANE DOE NOS. 1-14, Plaintiffs, v. GIRLSDOPORN.COM; and MICHAEL J. PRATT, et al., Defendants (the "State Court Action").

3. The action described in the foregoing paragraph is a civil action of which this Court has jurisdiction under the provisions of 28 U.S.C. § 1334(b). Michael J. Pratt, a defendant in that action, is the Debtor in the above-referenced case under Title 11 of the United States Code. In the State Court action, Plaintiffs seek a money judgment against Debtor and to collect any judgment obtained therein, which relates to property of the estate and claims against the estate. Because the State Court Action has been pending since 2016, the process and pleadings in that case are voluminous. True and correct copies of all process and pleadings in the State Court action will be filed upon request of this Court.

4. The action is one which may be removed to this Court pursuant to 28 U.S.C. § 1452. Upon removal, the action is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). If referred to the Bankruptcy Court, all Defendants whom Plaintiffs have served with complaints and summonses and not dismissed in the State Court Action consent to entry of final orders or

1    judgment by the Bankruptcy Court.

2        5.    The other defendants in the State Court Action whom Plaintiffs have served with

3    complaints and summonses and not dismissed are: ANDRE GARCIA, an individual;

4    MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA

5    HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a

6    Nevada limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M

7    MEDIA, LLC, a California limited liability company; BUBBLEGUM FILMS, INC., a business

8    organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO MEDIA

9    
10   HOLDINGS, LLC, a Nevada limited liability company.

11       6.    Defendant will promptly file a copy of this Notice with the Clerk of the Superior

12   Court of California, County of San Diego – Central Division.

13       WHEREFORE, Defendant prays that the above State Court Action now pending in the

14   Superior Court of California, County of San Diego – Central Division, bearing Lead Case No. 37-

15   2016-00019027-CU-FR-CTL, Consolidated with Case No. 37-2017-00043712-CU-FR-CTL and

16   Case No. 37-2017-00033321-CU-FR-CTL entitled JANE DOE NOS. 1-14, Plaintiffs, v.

17   
18   GIRLSDOPORN.COM; and MICHAEL J. PRATT, et al., Defendants, be removed to this Court,

19   and for such further relief as may be just and proper.

20

21   DATED:  January 2✗, 2019            **PANAKOS LAW, APC**

22

23

24                                      By: _____
                                            Aaron D. Sadock
25                                          Attorneys for Michael J. Pratt

26

27

28

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jane Does Nos. 1-22

**DEFENDANTS**

Girlsdoporn.com, et al.

**(b)** County of Residence of First Listed Plaintiff   n/a
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John J. O'Brien, Esq.
THE O'BRIEN LAW FIRM, APLC
750 B. Street, Suite 3300

Attorneys *(If Known)*
Aaron D. Sadock
555 West Beech Street, Suite 500
San Diego CA 92101

**'19CV0160 MMA BLM**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                         *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☒ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1  Original Proceeding | ☒ 2  Removed from State Court | ☐ 3  Remanded from Appellate Court | ☐ 4  Reinstated or Reopened | ☐ 5  Transferred from Another District *(specify)* | ☐ 6  Multidistrict Litigation - Transfer     ☐ 8  Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Section 157

Brief description of cause:
Notice of Removal

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE  Hon. Joel R. Wohlfeil          DOCKET NUMBER  37-2016-19027-CU-FR-CTL

DATE
01/24/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

1  Robert Hamparyan (State Bar No. 181934)
   ROBERT HAMPARYAN, APC
2  275 W. Market Street
   San Diego, CA 92101
3  t. 619.550.1355
   e. robert@hamparyanlawfirm.com
4
   John J. O'Brien (State Bar No. 253392)
5  THE O'BRIEN LAW FIRM, APLC
   750 B Street, Suite 3300
6  San Diego, CA 92101
   t. 619.535.5151
7  e. john@theobrienlawfirm.com
8  Brian M. Holm (State Bar No. 255691)
   HOLM LAW GROUP, PC
9  12636 High Bluff Drive, Suite 400
   San Diego, CA 92130
10 t. 858.707.5858
   e. brian@holmlawgroup.com
11
12 Carrie Goldberg (via Pro Hac Vice)
   C.A. GOLDBERG, PLLC
13 16 Court Street, Suite 2500
   Brooklyn, NY 11241
14 t: 646.666.8908
   e: carrie@cagoldberglaw.com
15
16
   **Attorneys for Plaintiffs**
17

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**03/13/2017** at 04:51:00 PM
Clerk of the Superior Court
By Richard Day,Deputy Clerk

18        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

19              **COUNTY OF SAN DIEGO**

20  JANE DOE NOS. 1 - 14, inclusive, individuals;     CASE NO.:  37-2016-00019027-CU-FR-CTL

21          Plaintiffs,                               **SECOND AMENDED COMPLAINT**
    v.
22
23  GIRLSDOPORN.COM, a business organization,         1.  Intentional Misrepresentation
    form unknown; MICHAEL J. PRATT, an               2.  Fraudulent Concealment
    individual; ANDRE GARCIA, an individual;         3.  False Promise
24  MATTHEW WOLFE, an individual; BLL                4.  Negligent Misrepresentation
    MEDIA, INC., a California corporation; BLL       5.  Misappropriation of Name & Likeness
25  MEDIA HOLDINGS, LLC, a Nevada limited                [Common Law]
    liability company; DOMI PUBLICATIONS,            6.  Misappropriation of Name & Likeness
26  LLC, a Nevada limited liability company; EG          [Civ. C. § 3344]
    PUBLICATIONS, INC., a California                 7.  Intentional Infliction of Emotional Distress
27  corporation; M1M MEDIA, LLC, a California        8.  Negligence
    limited liability company; BUBBLEGUM            9.  Breach of Contract
28

                                    1

FILMS, INC., a business organization, form unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and ROES 1 - 550, inclusive,

Defendants.

10. Promissory Estoppel
11. Unlawful & Fraudulent Business Practices [Bus. & Prof. Code §17200]
12. Fraudulent Transfer

Plaintiffs JANE DOES NOS. 1 - 14, inclusive, individuals, (all plaintiffs collectively, "The Plaintiffs") bring this second amended complaint against defendants GIRLSDOPORN.COM, a business organization, form unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC, a California limited liability company; BUBBLEGUM FILMS, INC., a business organization, form unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and ROES 1 - 550, inclusive (all defendants collectively, "The Defendants").

## **THE PARTIES**

1. Plaintiff JANE DOE NO. 1 is an individual residing in San Diego County, California.

2. Plaintiff JANE DOE NO. 2 is an individual residing in San Diego County, California.

3. Plaintiff JANE DOE NO. 3 is an individual residing in Miami-Dade County, Florida.

4. Plaintiff JANE DOE NO. 4 is an individual residing in Monmouth County, New Jersey.

5. Plaintiff JANE DOE NO. 5 is an individual residing in Alachua County, Florida.

6. Plaintiff JANE DOE NO. 6 is an individual residing in St. Tammany Parish, Louisiana.

7. Plaintiff JANE DOE NO. 7 is an individual residing in Dallas County, Texas.

8. Plaintiff JANE DOE NO. 8 is an individual residing in San Diego County, California.

9. Plaintiff JANE DOE NO. 9 is an individual residing in Bexar County, Texas.

10. Plaintiff JANE DOE NO. 10 is an individual residing in Los Angeles County, California.

11. Plaintiff JANE DOE NO. 11 is an individual residing in Knox County, Tennessee.

12.     Plaintiff JANE DOE NO. 12 is an individual residing in Charlotte County, Florida.

13.     Plaintiff JANE DOE NO. 13 is an individual residing in Miami-Dade County, Florida.

14.     Plaintiff JANE DOE NO. 14 is an individual residing in Alberta, Canada.

15.     GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of business in San Diego County, California.

16.     BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego County, California.

17.     BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

18.     DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

19.     EG PUBLICATIONS, INC. is a California corporation with its principal place of business in San Diego County, California.

20.     M1M MEDIA, LLC is a California limited liability company with its principal place of business in San Diego County, California.

21.     BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information and belief, its "principal place of business" in Port Vila, Vanuatu.

22.     OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information and belief, its "principal place of business" in Port Vila, Vanuatu.

23.     MERRO MEDIA, INC. is a California corporation with its principal place of business in San Diego County, California.

24.     MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

25.     On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., M1M MEDIA, LLC, BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO MEDIA HOLDINGS, LLC; and ROES 1 - 250 ("THE ENTITY DEFENDANTS") are entities in the business of online pornography production, distribution, and sales.  On information and belief, THE

3

1   ENTITY DEFENDANTS own and/or operate numerous online pornography websites, including,

2   without limitation, www.girlsdoporn.com.

3   26.    MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California.

4   On information and belief, he is a sales agent and representative, and the majority or sole shareholder,

5   managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

6   27.    ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California.  On

7   information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS

8   – as well as a participant and "actor" in their pornography.

9   28.    MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California.

10  On information and belief, he is a sales agent and representative for each of THE ENTITY

11  DEFENDANTS – as well as a videographer of their pornography.

12  29.    On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales

13  agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

14  30.    The Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued

15  herein as ROES 1 - 550, inclusive, and therefore sue these defendants by such fictitious names and

16  allege that ROES 1 - 550 are responsible in some manner for the occurrences herein alleged.  The

17  Plaintiffs will amend this complaint to allege their true names, capacities, and/or liabilities when

18  ascertained.

19  31.    In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

20  contracting with The Plaintiffs, The Defendants were agents, servants, representatives, partners, joint

21  venturers, affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions

22  herein alleged.  The Defendants were and are acting within the course and scope of their authority as

23  such agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or

24  employees and with the permission, authorization, consent, and ratification of each other.

25  32.    In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

26  contracting with The Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, and

27  ROES 251 – 550 acted as alter egos of each other.  In particular, they: (a) commingled their funds and

28  other assets, failed to segregate funds between them, and have without authorization diverted corporate

4

**SECOND AMENDED COMPLAINT**

1    funds and assets for noncorporate uses; (b) treated each other's assets as their own; (c) issued shares of

2    one other to themselves and third parties haphazardly and without authority; (d) held themselves out as

3    being personally liable for the debts of each other; (e) failed to maintain minutes and corporate records,

4    and confused of the records of the separate entities; (f) used the same business locations and employed

5    the same employees; (g) failed to adequately capitalize the entities; (h) used each other as a conduit for

6    a single venture of themselves; (i) failed to maintain arm's length relationships among themselves; and

7    (j) diverted assets without consideration from/to one another to the detriment of creditors, including

8    The Plaintiffs.  Recognition of the privilege of separate existences between these defendants would

9    promote injustice, unfairness, and fraud.  Any separateness is to be disregarded.  As such, The

10   Defendants are jointly and severally liable in this action as alter egos.

11                                    **JURISDICTION AND VENUE**

12   33.    This Court has jurisdiction over The Defendants as they are physically present in San Diego

13   County, California and/or because The Defendants committed the subject acts and omissions in San

14   Diego County, California.

15   34.    Venue is proper as San Diego County is where The Defendants reside and have their principal

16   place of business, the subject contracts were entered into, and/or the obligations and liability arose.

17                                    **FACTUAL ALLEGATIONS**

18   **The Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

19   35.    PRATT, GARCIA, WOLFE and the rest of The Defendants operate a San Diego-based

20   pornography business, which irreparably damages the lives of young women from San Diego and

21   across the country.

22   36.    The Defendants collectively run pornography websites, the main website being

23   www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than

24   the San Diego Padres website.

25   37.    The young women appearing in The Defendants' amateur pornography come from good

26   families, have never appeared in pornography before, are often paying their way through school, and

27   are just beginning their careers and adulthood.  So, there is only way The Defendants can convince

28   these women to have sex on film or produce other adult video material: The Defendants lie to them.

38.     The Defendants advertise themselves across the country as a legitimate Southern California modeling agency - on Craigslist and other websites, or even on sham websites they created, e.g., www.beginemodelling.com.  The Defendants ask for the name, age, height, weight, state, city, email, and phone number of each applicant, ask for photos, and, if The Defendants feel they have attracted a proper target, reach out to the women by phone and/or email in order to feel the women out more. Eventually, if a proper target, The Defendants offer the young women thousands of dollars for adult film work.

39.     When the young women ask The Defendants where they will distribute the video, The Defendants assure them that they will not post the video online (or cause it to be so posted), they will not distribute the video in the United States (or cause is to be so distributed), and they will keep each woman anonymous.  The Defendants represent the videos will be on DVDs overseas and for private use.  If needed for convincing, The Defendants provide a reference woman, who previously shot a video (but, whose video is not yet released), to vouch for The Defendants and promise the same security, limited distribution, and anonymity.

40.     In their discussions with these young woman, The Defendants use aliases and mention nothing about their website(s) where they plan to post the videos, or the websites on which they plan to publically promote and advertise the videos.  The Defendants also mention nothing about: (a) all of the other young women whose lives they have irreparably damaged earlier by The Defendants' video publication and promotion; (b) all of the other young women imploring them to stop and to take down their videos; and (c) all of the complaints that they (and their legal counsel) have received from other young women and their families.

41.     After The Defendants lie to the young women, they book rooms (usually under PRATT'S name) at upscale San Diego County hotels, most often at major high-end chains in downtown San Diego (e.g., Hilton, Hyatt, Marriot).  If the young women are not in Southern California, The Defendants pay for their airfare to San Diego (again, usually using PRATT'S name / credit card).

42.     Then, without hotel knowledge and consent, and, on information and belief, without any license or permit whatsoever, The Defendants sneak videography equipment into the hotel – hiding the equipment in large suitcases – in order to produce the amateur pornography.

SECOND AMENDED COMPLAINT

43.     Once the young women are confined to the hotel room, The Defendants present them with documents to sign: (a) often under duress, coercion, and/or while distracting or rushing them; (b) while continuing to orally misrepresent their intent for the video's eventual distribution; (c) while continuing to fraudulently omit the material facts referenced herein (e.g., that they work for a San Diego-based pornography website that has damaged other young women's lives); and (d) often lying about the purported nature and effect of the documents.

44.     Around one month after filming, despite their earlier representations, The Defendants release the videos on, at least, www.girlsdoporn.com (their monthly subscription-based website) and www.girls-do-porn.com (a free website with clips of the videos that then directs the user to www.girlsdoporn.com).  The Defendants also release/license all or part of the videos all over the internet on a multiple of free pornography websites – in part, to advertise www.girlsdoporn.com with the images and likenesses of the young women.  (Interestingly, and by no accident, GARCIA'S (and any other male participant's) face is never shown in any video.)  Soon thereafter, someone who knows one of the young women will notify them the video is online.  This becomes the first time the young women have ever heard of The Defendants' main website: www.girlsdoporn.com.

45.     When the young women reach out to The Defendants, they discover The Defendants have changed their phone numbers (they use disposable phones and/or changeable Internet phone numbers) and have also used fake names (e.g., PRATT often uses "Mark," GARCIA often uses "Jonathan," and WOLFE often uses "Ben" or "Isaac").  The Defendants then refuse to talk to the women, hang up on them, and/or block their calls.  If the women get in contact with The Defendants' counsel, they refuse to even give The Plaintiffs copies of any documents signed and threaten them with legal action.

46.     After The Defendants cause the videos to be distributed online, The Defendants, their subscribers, and/or Internet stalkers release The Plaintiffs' real names online, usually on blogs followed by "fans" and subscribers of www.girlsdoporn.com.  As a result (of which The Defendants are cognizant), third parties often then stalk, harass, bully, and blackmail the young women and their families – online, by telephone, and in-person.

47.     Because of The Defendants, some of these young women lose relationships with friends, significant others, and family.  Some lose or change jobs, and some are forced to leave their school.

1   Months to years after the videos, many are still harassed by strangers on the Internet.  And almost all

2   have suffered severe psychological and emotional damage -- some have even considered suicide.

3   48.     Below, are more specific facts and claims of fourteen (14) plaintiff young women.

4   **JANE DOE NO. 1**

5   49.     In July 2015, The Defendants posted an advertisement on Craigslist.com in the gigs/modeling

6   section for the Las Vegas area, seeking young women for adult modeling.

7   50.     That same month, JANE DOE NO. 1 responded to the advertisement and corresponded with

8   GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA eventually

9   offered her $9,200 for 3 videos.

10  51.     That same month, in July 2015, GARCIA told JANE DOE NO. 1 on the phone that they would

11  not post the videos online, they would not distribute the videos in the United States, and that she would

12  remain anonymous.  GARCIA told her the video would go to *one* "private buyer" overseas in Australia

13  - and would only be in DVD format.  They had her speak with another women, who assured her the

14  videos do not get leaked.

15  52.     On August 3, 2015, September 14, 2015, and September 22, 2015, JANE DOE NO. 1 made

16  adult videos for The Defendants at The Palomar in downtown San Diego, 707 10th Avenue in

17  downtown San Diego, and at the Coronado Island Marriott, respectively.  Before each shoot, GARCIA

18  and WOLFE (going by his alias "Ben"), again, assured JANE DOE NO. 1 they would not post the

19  videos online, they would not distribute the videos in the United States, and that she would remain

20  anonymous.  They assured her there was nothing to worry about, promised her privacy, and said

21  nobody she knew would see the videos.

22  53.     They continued to make these representations when providing her with documents, which

23  GARCIA and WOLFE did not let JANE DOE NO. 1 thoroughly read; they also distracted her and told

24  her the documents merely said the films would be for video format in Australia.

25  54.     After the videos, The Defendants reneged on their promise to pay JANE DOE NO. 1 the $9,200

26  and only paid her $8,200.

27  55.     In October 2015, The Defendants released JANE DOE NO. 1's videos on their website,

28  www.girlsdoporn.com, and other websites, which were then discovered by her high school, college, and

8

**SECOND AMENDED COMPLAINT**

1   graduate school friends and acquaintances – as well her family.

2   56.    Also around October 2015, The Defendants, their subscribers, and/or third parties leaked JANE

3   NO. DOE 1's real name and her contact information (social media, phone, email, etc.) on other

4   websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 1 was harassed

5   through social media, text message, and phone.  People emailed and called JANE DOE NO. 1's college

6   and graduate school students, faculty, and deans, calling her a "whore, slut, disgrace, etc.," sent links to

7   or screenshots of her videos, and tagged her boyfriend on social media with the video.

8   **JANE DOE NO. 2**

9   57.    In Around February 2015, The Defendants posted an advertisement on Craigslist.com in the

10  gigs/modeling section for San Diego, CA, seeking young women for adult modeling.

11  58.    That same month, JANE DOE NO. 2 responded to the advertisement and corresponded with

12  GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA offered her

13  $6,000 for 2 videos.

14  59.    That same month, GARCIA told JANE DOE NO. 2 on the phone that they would not post the

15  videos online, they would not post the video online, they would not distribute the video in the United

16  States, and that she would remain anonymous.  They told her the video would go to "private buyers"

17  overseas and would only be in DVD format.  They further told her the "private buyers" had contracts,

18  which prevented them from sharing or distributing the videos.  They had her speak with another

19  women, who assured her the videos do not get leaked.

20  60.    On February 1, 2015 and February 19, 2015, JANE DOE NO. 2 made adult videos for The

21  Defendants at the Hard Rock Hotel in downtown San Diego and a downtown condo, respectively.

22  Before each shoot, GARCIA and WOLFE (going by his alias "Isaac") assured JANE DOE NO. 2 they

23  would not post the video online, they would not distribute the video in the United States, and that she

24  would remain anonymous.  They assured her there was nothing to worry about, promised her privacy,

25  and said nobody she knew would see the videos.

26  61.    They continued to make these representations when providing her with documents, which

27  GARCIA and WOLFE did not let JANE DOE NO. 2 thoroughly read; they also distracted her and told

28  her they was merely a "tax form" and "privacy agreement."

9
**SECOND AMENDED COMPLAINT**

62.    After the video, The Defendants reneged on their promise to pay JANE DOE NO. 2 the $6,000 and only paid her $5,000.

63.    On or about April 10, 2015, The Defendants released JANE DOE NO. 2's video on www.girlsdoporn.com and other websites, which was discovered by her friends and acquaintances – as well her family.

64.    Also around April 10, 2015, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 2's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 2 was harassed through social media, text message, and phone.  She was called her a "whore, slut, disgrace, etc." and people sent her friends and acquaintances links to or screenshots of her video, and tagged her boyfriend on social media with the video.

**JANE DOE NO. 3**

65.    In March 2014, The Defendants posted an advertisement on exploretalent.com, seeking young women for adult modeling in San Diego, CA.

66.    That same month, JANE DOE NO. 3 responded to the advertisement and corresponded with GARCIA (going by his alias "Jonathan") by email and text message.  GARCIA offered her $3,000 to do an adult video.  JANE DOE NO. 3 asked GARCIA where the video would be distributed.  GARCIA told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  GARCIA told her the video would be on DVD and only distributed overseas in South America.

67.    On March 23, 2014, JANE DOE NO. 3 made an adult video for The Defendants at the Hilton San Diego Bayfront.  Before the shoot, GARCIA and WOLFE (going by his alias "Ben"), again, assured JANE DOE NO. 3 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

68.    They continued to make these representations when providing her with documents, which GARCIA and WOLFE said were merely to ensure her privacy and that she would be compensated.

///

69.     Around July 4, 2014, The Defendants released JANE DOE NO. 3's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, co-workers, and employer.

70.     Also around July 4, 2014, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 3's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then harassed JANE DOE NO. 3 through social media, text message, and phone.  She has been shunned and blackmailed by friends and coworkers.

**JANE DOE NO. 4**

71.     In April 2013, The Defendants, going by their alias "Bubblegum Casting," posted an advertisement on Craigslist.com in the gigs/modeling section for Eastern, North Carolina, seeking young women for modeling.

72.     That same month, JANE DOE NO. 4 responded to the advertisement and corresponded with WOLFE by email and text message.  JANE DOE NO. 4 also FaceTimed with WOLFE and GARCIA.  WOLFE and GARCIA offered her $2,000 to do an adult video.  JANE DOE NO. 4 asked WOLFE and GARCIA where the video would be distributed.  WOLFE and GARCIA told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  WOLFE and GARCIA told her the video would be on DVD and would go only to a video store in Australia.

73.     On April 9, 2013, JANE DOE NO. 4 made an adult video for The Defendants at the downtown San Diego Marriott.  The Defendants booked the room under WOLFE'S name.  Before the shoot, GARCIA and WOLFE, again, assured JANE DOE NO. 4 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

74.     They continued to make these representations when providing her with documents, which GARCIA and WOLFE did not let JANE DOE NO. 4 thoroughly read; they also gave JANE DOE NO. 4 alcohol and she was intoxicated when signing the documents.

**SECOND AMENDED COMPLAINT**

75.     GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 4 the $2,000 and only paid her $400 (they gave her stack of cash with twenty dollar bills on top, but clandestinely filled the middle with one dollar bills).

76.     Around June 2013, The Defendants released JANE DOE NO. 4's videos on www.girlsdoporn.com and other websites, including www.pornhub.com, which were then discovered by her family and friends.

77.     Also around June 2013, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 4's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then harassed JANE DOE NO. 4 through social media, text message, and phone.  JANE DOE NO. 4 became depressed, could not leave the house, was bullied, was blackmailed, and her car was vandalized.

**JANE DOE NO. 5**

78.     In August 2014, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Gainesville, Florida.

79.     That same month, JANE DOE NO. 5 responded to the advertisement and corresponded with GARCIA (going by his alias "Jonathan") and PRATT or WOLFE (going by the alias "Mike") by email and text message.  They offered her $3,000.00 to do an adult video.  JANE DOE NO. 5 asked them where the video would be distributed.  They told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They told her the video would only go to a private collector in Australia.  They had her speak with another women, who assured her the videos do not get leaked.

80.     On August 29, 2014 and in early September 2014, JANE DOE NO. 5 made adult videos for The Defendants at the Hilton San Diego Bayfront.  Before the shoots, GARCIA and PRATT or WOLFE, again, assured JANE DOE NO. 5 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.

81.     They continued to make these representations when providing her with documents, which they did not let JANE DOE NO. 5 thoroughly read; they told her they were merely documents saying she

1   was sober.

2   82.   Around mid-December, 2014, The Defendants released JANE DOE NO. 5's video on

3   www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

4   people in her hometown.

5   83.   Also on information and belief, around mid-December, 2014, The Defendants, their subscribers,

6   and/or third parties leaked JANE DOE NO. 5's real name and her contact information (social media,

7   phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People

8   then harassed, threatened, and bullied JANE DOE NO. 5 through social media, text message, and

9   phone.

10   **JANE DOE NO. 6**

11   84.   In May 2016, The Defendants posted an advertisement on Craigslist.com, seeking young

12   women for adult modeling in Baton Rouge, Louisiana.

13   85.   That same month, JANE DOE NO. 6 responded to the advertisement and corresponded with

14   GARCIA (going by his alias "Jonathan") by email and text message.  GARCIA offered her $7,000 to

15   do an adult video.  JANE DOE NO. 6 asked them where the video would be distributed.  GARCIA told

16   her they would not post the video online, they would not distribute the video in the United States, and

17   that she would remain anonymous.  They told her the video would only go to DVDs in Australia.  They

18   had her speak with another women, who assured her the videos do not get leaked.

19   86.   On May 19, 2016, JANE DOE NO. 6 made an adult video for The Defendants at the Coronado

20   Island Marriot.  Before the shoot, GARCIA and ROE 251 (going by his alias "Ted") and The

21   Defendants' makeup artist ("Riva") assured JANE DOE NO. 6 they would not post the video online,

22   they would not distribute the video in the United States, and that she would remain anonymous.  They

23   assured her there was nothing to worry about, promised her privacy, and said nobody she knew would

24   see the videos.  In fact, GARCIA said The Defendants had never had an issue with the videos getting

25   released, going viral, or anyone seeing the videos in the United States.[1]

26   ///

27

28   _____

[1] Notably, this is a month *after* Jane Doe Nos. 1 - 4 first sued The Defendants (including GARCIA) in this action for, among other things, fraud and mass Internet distribution of their videos.

13

**SECOND AMENDED COMPLAINT**

1   87.    They continued to make these representations when providing her with documents, which

2   GARCIA and ROE 251 did not let JANE DOE NO. 6 thoroughly read, and they told her the documents

3   reiterated what they already discussed.

4   88.    After the video, The Defendants reneged on their promise to pay JANE DOE NO. 6 the $7,000

5   and only paid her $4,500.

6   89.    Around early August 2016, The Defendants released JANE DOE NO. 6's video on

7   www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

8   people in her hometown.

9   90.    Also on information and belief, in early August 2016, The Defendants, their subscribers, and/or

10  third parties leaked JANE DOE NO. 6's real name and her contact information (social media, phone,

11  email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 6

12  became depressed, could not leave the house, and considered dropping out of school.

13  **JANE DOE NO. 7**

14  91.    In October 2013, The Defendants posted an advertisement on Craigslist.com, seeking young

15  women for adult modeling in Dallas, Texas.

16  92.    That same month, JANE DOE NO. 7 responded to the advertisement and corresponded with

17  GARCIA and WOLFE.  They offered her $2,000 to do an adult video.  JANE DOE NO. 7 asked them

18  where the video would be distributed.  GARCIA told her they would not post the video online, they

19  would not distribute the video in the United States, and that she would remain anonymous.  They told

20  her the video would only go to DVDs in Australia.

21  93.    In October 2013, JANE DOE NO. 7 made an adult video for The Defendants at the Rancho

22  Bernardo Inn.  Before the shoot, GARCIA and WOLFE assured JANE DOE NO. 7 they would not post

23  the video online, they would not distribute the video in the United States, and that she would remain

24  anonymous.  They assured her there was nothing to worry about, promised her privacy, and said

25  nobody she knew would see the videos.

26  94.    They continued to make these representations when providing her with documents, which

27  GARCIA and WOLFE did not let JANE DOE NO. 6 thoroughly read, and they told her they were

28  merely documents saying the video's distribution was on DVD in Australia only.

95.     On or before July 2016, The Defendants released JANE DOE NO. 7's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and people in her hometown.

96.     Also on information and belief, on or before July 2016, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 7's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 7 became depressed, discriminated against, humiliated, and deeply traumatized.

**JANE DOE NO. 8**

97.     In July 2016, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in San Diego, California.

98.     That same month, JANE DOE NO. 8 responded to the advertisement and corresponded with GARCIA and PRATT or WOLFE by email and text message.  They offered her $2,000 to do an adult video.  JANE DOE NO. 8 asked them where the video would be distributed.  They told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They told her the video was for private use and would not be so used for many years.

99.     On or about July 18, 2016 and August 5, 2016, JANE DOE NO. 8 made adult videos for The Defendants at L'Auberge Del Mar and a condo downtown, respectively.  Before the shoots, GARCIA, PRATT or WOLFE, and The Defendants' makeup artist ("Riva") assured JANE DOE NO. 8 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  In fact, GARCIA said The Defendants had never had an issue with the videos getting released, going viral, or anyone seeing the videos in the United States.[2]

100.     They continued to make these representations when providing her with documents, which GARCIA and PRATT or WOLFE did not let JANE DOE NO. 8 thoroughly read, and they told her they were merely "protocol" and documents saying, "it was okay to film."

---

[2] This is almost 6 months *after* Jane Doe Nos. 1 - 4 first sued The Defendants (including GARCIA) in this action for, among other things, fraud and mass Internet distribution of their videos.

**SECOND AMENDED COMPLAINT**

1    101.    In or around September 2016, The Defendants released JANE DOE NO. 8's video on

2    www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

3    people in her hometown.

4    102.    Also on information and belief, in or around September 2016, The Defendants, their

5    subscribers, and/or third parties leaked JANE DOE NO. 8's real name and her contact information

6    (social media, phone, email, etc.) on other websites, including, at least, the blog

7    www.pornwikileaks.com.  JANE DOE NO. 8 became depressed, could not leave the house, and

8    debated suicide several times.

9    **JANE DOE NO. 9**

10    103.    In April 2014, The Defendants posted an advertisement on Craigslist.com, seeking young

11    women for adult modeling in San Antonio, Texas.

12    104.    That same month, JANE DOE NO. 9 responded to the advertisement and corresponded with

13    WOLFE and PRATT by email and text message.  They offered her $3,500 to do adult videos.  JANE

14    DOE NO. 9 asked them where the videos would be distributed.  GARCIA told her they would not post

15    the videos online, they would not distribute the videos in the United States, and that she would remain

16    anonymous.  When JANE DOE NO. 9 said she did not want the videos online, they said, "No, we

17    wouldn't do that, you'll be fine and protected – it's discreet and professional."  They told her the videos

18    were for a DVD overseas.

19    105.    In April 2014, JANE DOE NO. 9 made adult videos for The Defendants at La Valencia in La

20    Jolla and at a condo downtown.  Before the shoots, GARCIA and WOLFE assured JANE DOE NO. 9

21    they would not post the video online, they would not distribute the video in the United States, and that

22    she would remain anonymous.  They assured her there was nothing to worry about, promised her

23    privacy, and said nobody she knew would see the videos.

24    106.    They continued to make these representations when providing her with documents, which

25    GARCIA and PRATT or WOLFE did not let JANE DOE NO. 9 thoroughly read, and they told her they

26    were merely documents saying, "it was okay to film."

27    107.    In or around June 2014, The Defendants released JANE DOE NO. 9's videos on

28    www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

16
**SECOND AMENDED COMPLAINT**

1  employer.

2  108.    Also on information and belief, in or around June 2014, The Defendants, their subscribers,

3  and/or third parties leaked JANE DOE NO. 9's real name and her contact information (social media,

4  phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.

5  **JANE DOE NO. 10**

6  109.    In March 2016, a prior woman who had just made a film referred JANE DOE NO. 10 to The

7  Defendants.

8  110.    That same month, JANE DOE NO. 10 corresponded with GARCIA and WOLFE by email and

9  text message.  They offered her $5,000 to do an adult video.  JANE DOE NO. 10 asked them where the

10  video would be distributed.  They told her they would not post the video online, they would not

11  distribute the video in the United States, and that she would remain anonymous.  They told her the

12  video was for a private collector in Australia only.  They assured her there was nothing to worry about,

13  promised her privacy, and said nobody she knew would see the videos.  They had her speak with

14  another women, who assured her the videos do not get leaked.

15  111.    On July 12, 2015, JANE DOE NO. 10 made an adult video for The Defendants at The US Grant

16  in San Diego.  Before the shoot, GARCIA and WOLFE assured JANE DOE NO. 10 they would not

17  post the video online, they would not distribute the video in the United States, and that she would

18  remain anonymous.

19  112.    They continued to make these representations when providing her with documents, which

20  GARCIA and WOLFE did not let JANE DOE NO. 10 thoroughly read.

21  113.    GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 10 the $7,000 and

22  only paid her $2,000 (saying she looked old and deserved less).

23  114.    In or around November 2015, The Defendants released JANE DOE NO. 10's video on

24  www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

25  employer.

26  115.    Also on information and belief, in or around November 2015, The Defendants, their subscribers,

27  and/or third parties leaked JANE DOE NO. 10's real name and her contact information (social media,

28  phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People

17

**SECOND AMENDED COMPLAINT**

1 then harassed JANE DOE NO. 10 and her family through social media.

2 **JANE DOE NO. 11**

3 116.    In March 2016, The Defendants posted an advertisement on Craigslist.com, seeking young

4 women for adult modeling in Knoxville, Tennessee.

5 117.    That same month, JANE DOE NO. 11 corresponded with WOLFE or PRATT by email and text

6 message.  They offered her $5,000.00 to do an adult video.  JANE DOE NO. 11 asked him where the

7 video would be distributed.  They told her they would not post the video online, they would not

8 distribute the video in the United States, and that she would remain anonymous.  They told her the

9 video was for DVD in Australia only.  They assured her there was nothing to worry about, promised

10 her privacy, and said nobody she knew would see the videos.  They had her speak with another women,

11 who assured her the videos do not get leaked.

12 118.    On March 29, 2016, JANE DOE NO. 11 made an adult video for The Defendants at a hotel in

13 San Diego.  Before the shoot, GARCIA and ROE 251 ("Ted") assured JANE DOE NO. 11 they would

14 not post the video online, they would not distribute the video in the United States, and that she would

15 remain anonymous.

16 119.    They continued to make these representations when providing her with documents, did not

17 allow her to thoroughly read, and GARCIA represented the documents were "liability stuff and to

18 protect their identities."  In fact, JANE DOE NO. 11 asked GARCIA if anyone had ever found the

19 videos or had seen him in the videos.  He said no.  The Defendants' makeup artist ("Riva") also assured

20 her there was nothing to worry about.

21 120.    Around May 1, 2016, The Defendants released JANE DOE NO. 11's video on

22 www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

23 employer.

24 121.    Also on information and belief, around May 1, 2016, The Defendants, their subscribers, and/or

25 third parties leaked JANE DOE NO. 11's real name and her contact information (social media, phone,

26 email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People then

27 harassed JANE DOE NO. 11 through social media, text message, and phone.  JANE DOE NO. 11

28 became depressed and debated suicide several times.

**JANE DOE NO. 12**

122.    Around February 2015, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Knoxville, Tennessee.

123.    That same month, JANE DOE NO. 12 corresponded with GARCIA and WOLFE by email and text message.  They offered her $5,000.00 to do adult videos.  JANE DOE NO. 12 asked them where the videos would be distributed.  They told her they would not post the videos online, they would not distribute the videos in the United States, and that she would remain anonymous.  They told her the videos would never go on the Internet and was for DVD in Australia only.  They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  They had her speak with another women, who assured her the videos do not get leaked.

124.    On February 2, 2015 and February 5, 2015, JANE DOE NO. 12 made an adult video for The Defendants at a hotel in San Diego and at a condo downtown, respectively.  Before the shoot, GARCIA WOLFE assured JANE DOE NO. 12 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.

125.    They continued to make these representations when providing her with documents, which they said were simply her agreeing to the amount she would be paid and to the video, and also distracted her while she was reading.

126.    GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 12 the $5,000 and only paid her $4,000.00 (saying she had cellulite on her legs).

127.    Around April 2015, The Defendants released JANE DOE NO. 12's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and school.

128.    Also on information and belief, around April 2015, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 12's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  JANE DOE NO. 12 became depressed, had nightmares, and lost/injured relationships with friends and family.

///

///

## JANE DOE NO. 13

129.    Around November 2015, The Defendants posted an advertisement on Craigslist.com, seeking young women for adult modeling in Knoxville, Tennessee.

130.    That same month, JANE DOE NO. 13 corresponded with GARCIA (going by his alias "Jonathan") and ROE 251 (going by his alias "Ted") by email and text message. They offered her $5,000 to do an adult video. JANE DOE NO. 13 asked them where the video would be distributed. They told her they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous. They told her the video would never go on the Internet and was for DVD in Australia only. They assured her there was nothing to worry about, promised her privacy, and said nobody she knew would see the videos. They had her speak with another women, who assured her the videos do not get leaked.

131.    On November 24, 2015, JANE DOE NO. 13 made an adult video for The Defendants at The Grand Hyatt Hotel in New York, New York (where The Defendants were traveling at the time). Before the shoot, GARCIA and ROE 251 assured JANE DOE NO. 13 they would not post the video online, they would not distribute the video in the United States, and that she would remain anonymous.

132.    They continued to make these representations when providing her with documents, which they said were simply "summing up all they had talked about," and also distracted her and rushed her while she was reading.

133.    GARCIA and ROE 251 then reneged on their promise to pay JANE DOE NO. 13 the $5,000 and only paid her $3,000.00 (saying she had fat and cellulite on her legs, and they did not like her breasts).

134.    Around January 10, 2016, The Defendants released JANE DOE NO. 13's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and school.

135.    Also on information and belief, around on January 10, 2016, The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 12's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com. People then harassed JANE DOE NO. 13 through social media, text message, and phone. JANE DOE NO. 13

1  became depressed and debated suicide.

2  **JANE DOE NO. 14**

3  136.    Around July 2014, The Defendants posted an advertisement on Craigslist.com, seeking young

4  women for adult modeling in New York, New York.

5  137.    That same month, JANE DOE NO. 14 corresponded with GARCIA and WOLFE by email and

6  text message.  They offered her $5,000 to do adult videos.  JANE DOE NO. 14 asked them where the

7  videos would be distributed.  They told her they would not post the videos online, they would not

8  distribute the videos in the United States, and that she would remain anonymous.  They told her the

9  videos would never go on the Internet and was for DVD in Australia only.  They assured her there was

10  nothing to worry about, promised her privacy, and said nobody she knew would see the videos.  They

11  had her speak with another women, who assured her the videos do not get leaked.

12  138.    Around July 15, 2014, JANE DOE NO. 14 made an adult videos for The Defendants in San

13  Diego.  Before the shoot, GARCIA and WOLFE assured JANE DOE NO. 14 they would not post the

14  video online, they would not distribute the video in the United States, and that she would remain

15  anonymous.

16  139.    They continued to make these representations when providing her with documents, which they

17  said were simply "standard documents stating her name and age," and also distracted her and rushed

18  her while she was reading.

19  140.    Around June 2015, The Defendants released JANE DOE NO. 14's video on

20  www.girlsdoporn.com and other websites, which were then discovered by her family, friends, and

21  school.

22  141.    Also on information and belief, around on January 10, 2016, The Defendants, their subscribers,

23  and/or third parties leaked JANE DOE NO. 14's real name and her contact information (social media,

24  phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  People

25  then harassed JANE DOE NO. 14 and her family through social media, text message, and phone.

26  JANE DOE NO. 14 became depressed, lives in fear, and moved out of the country to Canada.

27  ///

28  ///

**SECOND AMENDED COMPLAINT**

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION**

**(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

142.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

143.    During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any purported agreements), The Defendants represented: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and that The Plaintiffs would remain anonymous.  The Defendants further represented at all times to The Plaintiffs that would not cause the videos to be posted online or distributed in the United States. The Defendants at all times assured The Plaintiffs there was nothing to worry about, promised privacy, and said nobody The Plaintiffs knew would see the videos.  The Defendants caused other women to reiterate these representations to The Plaintiffs.  Finally, The Defendants represented they would pay The Plaintiffs certain sums of money; as set forth above, some of The Plaintiffs did not receive the sums represented.

144.    Those representations were false.

145.    The Defendants intended that The Plaintiffs rely on the above representations when each young woman decided to make an adult video.

146.    The Plaintiffs reasonably relied on the representations.

147.    The Plaintiffs have been harmed by their reasonable reliance in that The Defendants published their videos online, published their videos in the United States, and released The Plaintiffs' real names.

148.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but

22

**SECOND AMENDED COMPLAINT**

1   not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs

2   received for what they were told was *limited* distribution and what The Defendants profited through

3   *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the

4   compensatory damages).  The Plaintiff also seek injunctive relief.

5   149.    The Defendants were acting individually and on behalf of each other when they made each of

6   these representations and, when one of them made a representation, the others ratified the

7   representation and/or knew of the misrepresentation and failed to correct it.

8   150.    The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The

9   Defendants had knowledge of and agreed to both the objective and course of action to injure The

10  Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the

11  time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

12  injured The Plaintiffs, as set forth above.

13  151.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

14  award of punitive damages pursuant to Section 3294 of the California Civil Code.

15                          **SECOND CAUSE OF ACTION**

16                          **FRAUDULENT CONCEALMENT**

17              **(All The Plaintiffs against All Named Defendants and ROES 1 – 500)**

18  152.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

19  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

20  153.    During The Plaintiffs' discussions and negotiations with The Defendants before each made an

21  adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any

22  purported agreements), The Defendants actively concealed their true identities (their individual names

23  and, more importantly, the identity of www.girlsdoporn.com, on which they intended to publish The

24  Plaintiffs nude photos and sex acts).  At all these times, they actively concealed the fact their true

25  intention was to post the videos online and distribute them in the United States – or cause such

26  publication and distribution.  At all these times, The Defendants also concealed the facts regarding: (a)

27  all of the other young women whose lives they have irreparably damaged earlier by The Defendants'

28  video publication and promotion; (b) all of the other young women imploring them to stop and to take

23
**SECOND AMENDED COMPLAINT**

down their videos; and (c) all of the complaints that they (and their legal counsel) have received from other young women and their families.

154.     The Defendants owed The Plaintiffs duties to disclose this information as, among other reasons, they provided some information to The Plaintiffs during correspondence, and during contract and business negotiations.

155.     The Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their website, their business, their video distribution, and the likelihood of injury to and harassment of The Plaintiffs.

156.     The Defendants concealed these facts with the intent to induce The Plaintiffs to make the adult videos.

157.     The concealed information was objectively material to any reasonable person and caused The Plaintiffs to make the adult videos.

158.     The Plaintiffs justifiably relied on The Defendants' false representations.

159.     The Defendants' failure to disclose these material facts to The Plaintiffs was substantial factor in causing their harm.  Had The Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

160.     The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff also seek injunctive relief.

161.     The Defendants were acting individually and on behalf of each other when they made each of these omissions and, when one of them made an omission, the others ratified the omission and/or knew of the omission and failed to correct it.

**SECOND AMENDED COMPLAINT**

162.    The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

163.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### THIRD CAUSE OF ACTION

### FALSE PROMISE

**(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

164.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

165.    During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any purported agreements), The Defendants made promises to The Plaintiffs that: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and The Plaintiffs would remain anonymous.  The Defendants promised The Plaintiffs that would not cause the videos to be posted online or distributed in the United States.  The Defendants promised The Plaintiffs there was nothing to worry about, promised privacy, and promised nobody they knew would see the videos.  Finally, The Defendants represented they would pay The Plaintiffs certain sums of money; as set forth above, some of The Plaintiffs did not receive the sums represented.

166.    The Defendants' affirmative promises were of material fact and important as The Plaintiffs would not have otherwise made the adult videos.

167.    The Defendants did not intend to perform these promises at the times they made them, and have not performed as promised.  The Defendants knew their promises were false and merely wanted The Plaintiffs to make the videos for The Defendants' benefit.

168.    The Defendants intended to induce The Plaintiffs to alter their positions in reliance on the

25

1  promises by making the adult videos.

2  169.    The Plaintiffs justifiably and reasonably relied on The Defendants' promises and The

3  Defendants' affirmative promises were an immediate cause of The Plaintiffs' conduct.

4  170.    The Defendants did not perform the promises.

5  171.    As an actual and proximate cause of The Defendants' false promises and The Plaintiffs'

6  justifiable reliance, The Plaintiffs were damaged in that The Defendants posted the videos online,

7  distributed the videos in the United States, and released The Plaintiffs' names.

8  172.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their

9  harm. The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000

10  per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to,

11  bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety,

12  depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but

13  not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs

14  received for what they were told was *limited* distribution and what The Defendants profited through

15  *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the

16  compensatory damages). The Plaintiff also seek injunctive relief.

17  173.    The Defendants were acting individually and on behalf of each other when they made each of

18  these omissions and, when one of them made a false promise, the others ratified it, and/or knew of the

19  false promise and failed to correct it.

20  174.    The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The

21  Defendants had knowledge of and agreed to both the objective and course of action to injure The

22  Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the

23  time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

24  injured The Plaintiffs, as set forth above.

25  175.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

26  award of punitive damages pursuant to Section 3294 of the California Civil Code.

27  ///

28  ///

**FOURTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

176.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

177.     During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants (and simultaneous with The Plaintiffs' attempted review of any purported agreements), The Defendants represented: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and that The Plaintiffs would remain anonymous.  The Defendants further represented at all times to The Plaintiffs that would not cause the videos to be posted online or distributed in the United States. The Defendants at all times assured The Plaintiffs there was nothing to worry about, promised privacy, and said nobody The Plaintiffs knew would see the videos.  The Defendants caused other women to reiterate these representations to The Plaintiffs.

178.     The representations were false and although The Defendants may have honestly believed that the representations were true, they had no reasonable grounds for believing the representations were true when they made them.

179.     The Defendants intended that The Plaintiffs would rely on the above representations in their decisions to make the adult videos.

180.     The Plaintiffs reasonably relied on The Defendants' misrepresentations in their decisions to make the adult videos.

181.     The Plaintiffs' reliance on The Defendants' false representations was a substantial factor in causing their harm in that The Defendants posted their videos online, published their videos in the United States, and released The Plaintiffs' names.

182.     The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they

27

1    were told was *limited* distribution and what The Defendants profited through *global* distribution).

2    <u>**FIFTH CAUSE OF ACTION**</u>

3    <u>**MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]**</u>

4    **(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

5    183.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

6    complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

7    184.    The Defendants used The Plaintiffs' names, likenesses, and/or identities without The Plaintiffs'

8    permission, though fraud, and/or without promised consideration, including, without limitation, on The

9    Defendants' websites (e.g., www.girlsdoporn.com), social media, and advertising.  Finally, any release

10    purporting to give The Defendants unconditional use of The Plaintiff's videos is unenforceable due to

11    unclear terms, a lack of mental capacity/competence, mistake, undue influence, and/or The Defendants'

12    unclean hands.

13    185.    The Defendants' gained a commercial benefit by using The Plaintiffs' names, likenesses, and/or

14    identities.

15    186.    Following Defendants' initial publication of each of The Plaintiffs' videos on their own

16    websites, and through the date of this amended complaint, Defendants have republished and redirected

17    the misappropriated content to different websites and to different audiences.  Defendants have

18    republished The Plaintiffs' misappropriated likenesses to different audiences in various advertising

19    campaigns on the Internet, including on third party websites (such as www.pornhub.com and

20    www.youporn.com), where Defendants post varying and edited snippets of The Plaintiffs' videos with

21    embedded links and advertisements to Defendants' websites; these varying and edited snippets of The

22    Plaintiffs' videos have been viewed millions of times by hundreds of thousands of different individuals.

23    Defendants conduct the same form of repetitive mass advertising on their fan blogs and forums, and on

24    their own social media.

25    187.    The Plaintiffs' reliance on these false representations was a substantial factor in causing their

26    harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000

27    per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to,

28    bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety,

depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff also seek injunctive relief.

188. The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, likenesses, and/or identities at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

189. The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

## SIXTH CAUSE OF ACTION

## MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]

### (All The Plaintiffs against All Named Defendants and ROES 1 - 500)

190. The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

191. On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, The Defendants knowingly used The Plaintiffs' names, voices, photographs, video, and likenesses to advertise or sell subscriptions to The Defendants' businesses.

192. The Defendants' use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

193. The Defendants did not have The Plaintiffs' consent, obtained it though fraud, and/or without promised consideration. Finally, any release purporting to give The Defendants unconditional use of The Plaintiff's videos is unenforceable due to unclear terms, a lack of mental capacity/competence, mistake, undue influence, and/or The Defendants' unclean hands.

194. The Defendants use of The Plaintiffs' names, voices, photographs, video, and likenesses was directly connected to The Defendants' commercial purpose.

195.     Following Defendants' initial publication of each of The Plaintiffs' videos on their own websites, and through the date of this amended complaint, Defendants have republished and redirected the misappropriated content to different websites and to different audiences.  Defendants have republished The Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where Defendants post varying and edited snippets of The Plaintiffs' videos with embedded links and advertisements to Defendants' websites; these varying and edited snippets of The Plaintiffs' videos have been viewed millions of times by hundreds of thousands of different individuals. Defendants conduct the same form of repetitive mass advertising on their fan blogs and forums, and on their own social media.

196.     The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages and/or statutory damages, including, disgorgement of profits; (c) attorney fees; and (d) restitution / unjust enrichment damages (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution).  The Plaintiff also seek injunctive relief.

197.     The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, voices, photographs, video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

198.     The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

///

///

///

**SECOND AMENDED COMPLAINT**

**SEVENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)**

199.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

200.    The Defendants concealed the fact they run an online pornography website.  In order to get The Plaintiffs to make adult videos, The Defendants lied to The Plaintiffs about the distribution.  They assured The Plaintiffs there was nothing to worry about and promised privacy.  The Defendants knew all of the other young women whose lives they have irreparably damaged earlier by The Defendants' video publication and promotion; all of the other young women imploring them to stop and to take down their videos; and all of the complaints and they (and their legal counsel) have received from other young women and their families.  The Defendants used The Plaintiffs' videos and names to commercially promote their websites and enrich themselves.  This conduct was outrageous as it exceeded all bounds of common decency usually tolerated by a civilized society.

201.    The Defendants intended to inflict the injuries stated herein upon The Plaintiffs, or the injuries were substantially certain to result from The Defendants' conduct.

202.    The Defendants' outrageous conduct actually and proximately caused The Plaintiffs to suffer serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, fear, and – for some - consideration of suicide.  The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff.

203.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, with their outrageous conduct, The Defendants intentionally inflicted severe emotional distress upon The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

204.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

31

**SECOND AMENDED COMPLAINT**

## EIGHTH CAUSE OF ACTION

## NEGLIGENCE

### (Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)

205.     The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

206.     In their transactions and dealings with The Plaintiff, The Defendants had a duty to use ordinary care and to prevent injury to The Plaintiffs based on the foreseeability of harm to The Plaintiffs, the degree of certainty The Plaintiff would suffer injuries, the closeness of connection between The Defendants' actions and The Plaintiffs' injuries, the moral blame attached to The Defendants' conduct, the policy of preventing future harm, and the extent of The Defendants' burden and the consequences to the community of imposing duty and liability.

207.     The Defendants' above-described actions and omissions (e.g., lying about and concealing the fact they run an online pornography website upon which they planned to post the videos; and assuring The Plaintiffs there was nothing to worry about – all while knowing that release of the videos would cause harassment and severe emotional damage), breached the duty of care.

208.     The Defendants' breach of the duty of care actually and proximately caused The Plaintiffs harm in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money The Plaintiffs received for what they were told was *limited* distribution and what The Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff also seek injunctive relief.

///

///

///

**SECOND AMENDED COMPLAINT**

## NINTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)

209.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

210.    The Plaintiffs entered into oral agreements with The Defendants whereby The Plaintiffs agreed to make their respective videos with the conditions: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and they would ensure their privacy and anonymity.

211.    The Plaintiffs performed all of their obligations under the agreements; in particular, they participated in the video shoots.

212.    All conditions required for The Defendants' performances occurred, but they breached the contract by distributing and/or causing the videos to be posted online and in the United States, and by failing to ensure The Plaintiffs' privacy and anonymity.  Also, as set forth above, some of The Plaintiffs did not receive the sums agreed upon for their video(s).

213.    As an actual and proximate cause of The Defendants' breach, The Plaintiffs were damaged in an amount to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

## TENTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL

### (Jane Doe Nos. 1-3, 5-8, and 10-14 against All Named Defendants and ROES 1 - 500)

214.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

215.    The Defendants made clear and unambiguous promises to The Plaintiffs that: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and they would ensure their privacy and anonymity.

216.    The Plaintiffs relied on these promises in that they made the videos.

217.    The Plaintiffs' reliance was both reasonable and foreseeable.

218.    The Plaintiffs were injured as a result in that The Defendants distributed or cause the

33

**SECOND AMENDED COMPLAINT**

1    distribution of the videos online and in the United States, and failed to ensure The Plaintiffs' privacy

2    and anonymity.

3    219.    Injustice can be avoided only by an award of compensatory and consequential damages in the

4    amount of, at least, $500,000 per plaintiff.

5    **ELEVENTH CAUSE OF ACTION**

6    **VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**

7    **(All The Plaintiffs against All Named Defendants and ROES 1 - 500)**

8    220.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

9    complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

10   221.    The Defendants' conduct constitutes a "business practice" under Business & Professions Code,

11   Section 17200, et seq. ("Section 17200").

12   222.    The Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it

13   violates common and California statutory law.  The Defendants' "business practice" constitutes

14   "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the

15   public.

16   223.    The Defendants intended their conduct to cause – and it did so cause – The Plaintiffs to suffer

17   economic injury in fact and caused The Defendants to receive ill-gotten gains.  The Plaintiffs were

18   damaged – and The Defendants unjustly enriched - in an amount to be proven at trial, but believed to

19   be, at least, $500,000 per plaintiff.  As such, The Plaintiffs have individual standing under Section

20   17200.

21   224.    Pursuant to the remedies provisions of Section 17200: The Defendants owe The Plaintiffs

22   restitution of The Plaintiffs' property (e.g., videos and images); the Court should enjoin The

23   Defendants' violative conduct; and the Court should issue the maximum civil penalties permitted.

24   ///

25   ///

26   ///

27

28

**SECOND AMENDED COMPLAINT**

### TWELFTH CAUSE OF ACTION

### FRAUDULENT TRANSFER

**(All The Plaintiffs against All The Named Defendants and ROES 475 - 550)**

225.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

226.    The Plaintiffs have a right to payment from The Defendants for the claims in this action and are, thus, creditors.

227.    On information and belief, The Defendants transferred The Plaintiffs' videos and the revenue generated therefrom to defendant Oh Well Media Limited (a sham entity in Vanuatu used to hide assets) and ROES 200 – 250 with the intent to hinder, delay, or defraud The Plaintiffs in their collection efforts on the subject claims.

228.    The Plaintiffs were harmed as, among other things, they still have not received compensation for the claims in this action.

229.    The Defendants' conduct was a substantial factor in causing The Plaintiffs' harm.

230.    The Defendants' actions were fraudulent and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

///

///

///

**SECOND AMENDED COMPLAINT**

1

## **PRAYER FOR RELIEF**

2       WHEREFORE, The Plaintiffs pray for judgment against The Defendants as follows:

3       A.      For compensatory damages of, at least, $7,000,000;

4       B.      For restitution and ill-gotten gains/unjust enrichment;

5       C       For civil penalties;

6       D.      For an injunction;

7       E.      For punitive damages;

8       F.      For attorney fees;

9       G.      For prejudgment interest;

10      H.      For costs of suit; and

11      I.      For such other and further relief as the Court deems just and proper.

12

13   Date: March 13, 2017                    By: */s/ John J. O'Brien*

14                                               Robert Hamparyan
                                                 John J. O'Brien
15                                               Brian M. Holm
                                                 Carrie Goldberg
16                                               **Attorneys for Plaintiffs**

17

18

19

20

21

22

23

24

25

26

27

28

36
**SECOND AMENDED COMPLAINT**

# PROOF OF SERVICE
## (Section 1013a, 2015.5 Code of Civ. Proc.)
### State of California, County of

I am employed in the County of San Diego, State of California.  I am over 18 years of age and not a party to the within action; my business address is 275 West Market Street, San Diego, California 92101.

**Case Name: Jane DOES v. Girlsdoporn.com, et. al**
**Case Number: 37-2016-00019027-CU-FR-CTL**

On March 13, 2017, I served the following documents described as:

## PLAINTIFFS' SECOND AMENDED COMPLAINT (REDACTED)

On the interested parties in this action, addressed as follows:

George D. Rikos
Law Office of George Rikos
225 Broadway, Suite 2100, San Diego, CA 92101
Tel: (858) 342-9161
Fax: (866) 365-4856
***Counsel for Defendant DOMI Publications, LLC.***
george@georgerikoslaw.com

Aaron Sadock, Esq.
Panakos Law APC
555 West Beech Street, Suite 500
San Diego, CA 92101
Fax: (866) 365-4856
asadock@panakoslaw.com
***Co-Counsel for Remaining Defendants***

John J. O'Brien
THE O'BRIEN LAW FIRM, APLC
750 B Street, Suite 3300
San Diego, CA 92101
Tel: 619.535.5151
Fax: (888) 805-6785
john@theobrienlawfirm.com
***Co-Counsel for Plaintiffs***

Daniel Kaplan
Law Offices of Daniel A. Kaplan
555 West Beech Street, Suite 230
San Diego, CA 92101
Tel: (619) 685-3988
Fax: (619) 684-3239
dkaplan@danielkaplanlaw.com
***Co-Counsel for Remaining Defendants***

Brian M. Holm
HOLM LAW GROUP, PC
12636 High Bluff Drive, Suite 400
San Diego, CA 92130
Tel: 858.707.5858
brian@holmlawgroup.com
***Co-Counsel for Plaintiffs***

Carrie Goldberg
C.A. GOLDBERG, PLLC
16 Court Street, Suite 2500
Brooklyn, NY 11241
Tel: 646.666.8908
carrie@cagoldberglaw.com
***Co-Counsel for Plaintiffs***

–  1  –

Proof of Service

____    BY MAIL:  I am readily familiar with the office practice for collection and processing of correspondence for mailing with the United States Postal Service (USPS). The correspondence indicated above would be deposited with the USPS the same date as this declaration in the ordinary course of business. The correspondence was placed for deposit with the USPS at the offices of the Law Offices of Robert Hamparyan, 275 West Market Street, San Diego, California. The envelope(s) was/were sealed with postage fully prepaid on this date and placed for collection and mailing following ordinary business practices and addressed as shown above.

____    BY PERSONAL SERVICE:  By personally delivering the above-captioned document(s) to the parties within.

____    BY FACSIMILE TRANSMISSION:  I caused the above-referenced document to be faxed to the fax number(s) indicated above. The facsimile machine I used complied with rule 2.301 and no error was reported by the machine. Pursuant to rule 2.306(g), I caused the machine to print a record of the transmission.

____    BY OVERNIGHT MAIL:  I caused to be served by leaving for delivery by USPS a copy of the aforementioned document, in sealed envelopes addressed as shown above.

_X_    BY ELECTRONIC SERVICE:  By sending the above-captioned document(s) to the parties via electronic transmission through One Legal as stipulated between parties.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on March 13, 2017, at San Diego, California.

_____
**Alicia Aquino**

| | |
|---|---|
| 1 | Robert Hamparyan (State Bar No. 181934)<br>ROBERT HAMPARYAN, APC |
| 2 | 275 W. Market Street<br>San Diego, CA 92101 |
| 3 | t. 619.550.1355<br>e. robert@hamparyanlawfirm.com |
| 4 | John J. O'Brien (State Bar No. 253392) |
| 5 | THE O'BRIEN LAW FIRM, APLC<br>750 B Street, Suite 3300 |
| 6 | San Diego, CA 92101<br>t. 619.535.5151 |
| 7 | e. john@theobrienlawfirm.com |
| 8 | Brian M. Holm (State Bar No. 255691) |
| 9 | HOLM LAW GROUP, PC<br>12636 High Bluff Drive, Suite 400 |
| 10 | San Diego, CA 92130<br>t. 858.707.5858 |
| 11 | e. brian@holmlawgroup.com |
| 12 | **Attorneys for Plaintiffs** |

'16 JUN 2 PH 3:29

F I L E D

Clerk of the Superior Court

JUN 0 2 2016

By: _____ Deputy

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

| | |
|---|---|
| JANE DOE NOS. 1 - 4, inclusive, individuals;<br><br>Plaintiffs,<br><br>v.<br><br>GIRLSDOPORN.COM, a business organization, form unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC, a California limited liability company; BUBBLEGUM FILMS, INC., a business organization, form unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and ROES 1 - 500, inclusive,<br><br>Defendants. | CASE NO.:**37-2016-00019027-CU-FR-CTL**<br><br>**COMPLAINT**<br><br>1. Intentional Misrepresentation<br>2. Fraudulent Concealment<br>3. False Promise<br>4. Negligent Misrepresentation<br>5. False Imprisonment<br>6. Sexual Battery<br>7. Gender Violence [Civ. C. § 52.4]<br>8. Intentional Infliction of Emotional Distress<br>9. Misappropriation of Name & Likeness [Common Law]<br>10. Misappropriation of Name & Likeness [Civ. C. § 3344]<br>11. Negligence<br>12. Breach of Contract<br>13. Promissory Estoppel<br>14. Unlawful & Fraudulent Business Practices [Bus. & Prof. Code §17200] |

1

**COMPLAINT**

1        Plaintiffs JANE DOES NOS. 1 - 4, inclusive, individuals, (all plaintiffs collectively, "The

2  Plaintiffs") bring this action against defendants GIRLSDOPORN.COM, a business organization, form

3  unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW

4  WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS,

5  LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada limited liability

6  company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC, a California

7  limited liability company; BUBBLEGUM FILMS, INC., a business organization, form unknown; OH

8  WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA, INC., a

9  California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability company; and

10  ROES 1 - 500, inclusive (all defendants collectively, "The Defendants").

11                      **THE PARTIES**

12  1.     Plaintiff JANE DOE NO. 1 is an individual residing in San Diego County, California.

13  2.     Plaintiff JANE DOE NO. 2 is an individual residing in San Diego County, California.

14  3.     Plaintiff JANE DOE NO. 3 is an individual residing in San Diego County, California.

15  4.     Plaintiff JANE DOE NO. 4 is an individual residing in Manmouth County, New Jersey.

16  5.     GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of

17  business in San Diego County, California.

18  6.     BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego

19  County, California.

20  7.     BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place

21  of business in Clark County, Nevada.

22  8.     DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of

23  business in Clark County, Nevada.

24  9.     EG PUBLICATIONS, INC. is a California corporation with its principal place of business in

25  San Diego County, California.

26  10.    M1M MEDIA, LLC is a California limited liability company with its principal place of business

27  in San Diego County, California.

28  11.    BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information

1  and belief, its "principal place of business" in Port Vila, Vanuatu.

2  12.    OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information

3  and belief, its "principal place of business" in Port Vila, Vanuatu.

4  13.    MERRO MEDIA, INC. is a California corporation with its principal place of business in San

5  Diego County, California.

6  14.    MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal

7  place of business in Clark County, Nevada.

8  15.    On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA

9  HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., MIM MEDIA, LLC,

10  BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO

11  MEDIA HOLDINGS, LLC; and ROES 1 - 250 ("THE ENTITY DEFENDANTS") are entities in the

12  business of online pornography production, distribution, and sales.  On information and belief, THE

13  ENTITY DEFENDANTS own and/or operate numerous online pornography websites, including,

14  without limitation, www.girlsdoporn.com.

15  16.    MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California.

16  On information and belief, he is a sales agent and representative, and the majority or sole shareholder,

17  managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

18  17.    ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California.  On

19  information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS

20  – as well as a participant and "actor" in their pornography.

21  18.    MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California.

22  On information and belief, he is a sales agent and representative for each of THE ENTITY

23  DEFENDANTS – as well as a videographer of their pornography.

24  19.    On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales

25  agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

26  20.    The Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued

27  herein as ROES 1 - 500, inclusive, and therefore sue these defendants by such fictitious names and

28  allege that ROES 1 - 500 are responsible in some manner for the occurrences herein alleged.  The

1 Plaintiffs will amend this complaint to allege their true names, capacities, and/or liabilities when

2 ascertained.

3 21.    In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

4 contracting with The Plaintiffs, The Defendants were agents, servants, representatives, partners, joint

5 venturers, affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions

6 herein alleged.  The Defendants were and are acting within the course and scope of their authority as

7 such agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or

8 employees and with the permission, authorization, consent, and ratification of each other.

9 22.    In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

10 contracting with The Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, and

11 ROES 251 – 500 acted as alter egos of each other.  In particular, they: (a) commingled their funds and

12 other assets, failed to segregate funds between them, and have without authorization diverted corporate

13 funds and assets for noncorporate uses; (b) treated each other's assets as their own; (c) issued shares of

14 one other to themselves and third parties haphazardly and without authority; (d) held themselves out as

15 being personally liable for the debts of each other; (e) failed to maintain minutes and corporate records,

16 and confused of the records of the separate entities; (f) used the same business locations and employed

17 the same employees; (g) failed to adequately capitalize the entities; (h) used each other as a conduit for

18 a single venture of themselves; (i) failed to maintain arm's length relationships among themselves; and

19 (j) diverted assets without consideration from/to one another to the detriment of creditors, including

20 The Plaintiffs.  Recognition of the privilege of separate existences between these defendants would

21 promote injustice, unfairness, and fraud.  Any separateness is to be disregarded.  As such, The

22 Defendants are jointly and severally liable in this action as alter egos.

23                                                **JURISDICTION AND VENUE**

24 23.    This Court has jurisdiction over The Defendants as they are physically present in San Diego

25 County, California and/or because The Defendants committed the subject acts and omissions in San

26 Diego County, California.

27 24.    Venue is proper as San Diego County is where The Defendants reside and have their principal

28 place of business, the subject contracts were entered into, and/or the obligations and liability arose.

1    **FACTUAL ALLEGATIONS**

2    **The Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

3    25.    PRATT, GARCIA, WOLFE and the rest of The Defendants operate a San Diego-based

4    pornography business, which irreparably damages the lives of young women from San Diego and

5    across the country.

6    26.    The Defendants collectively run pornography websites, the main website being

7    www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than

8    the San Diego Padres website.

9    27.    The young women appearing in The Defendants' amateur pornography come from good

10   families, have never appeared in pornography before, are often paying their way through school, and

11   are just beginning their careers and adulthood.  So, there is only way The Defendants can convince

12   these women to have sex on film: The Defendants lie to them.

13   28.    The Defendants advertise themselves across the country as a legitimate Southern California

14   modeling agency, directing applicants to a sham website, e.g., www.beginemodelling.com.  The

15   website contains an "Apply Now" form on every page that asks for the name, age, height, weight, state,

16   city, email, and phone number of each applicant.  It also contains an attachment where prospective

17   models can upload photos.  Once obtaining the information, The Defendants reach out to the women by

18   phone or email in order to feel the women out.  Eventually, The Defendants offer the young women

19   thousands of dollars for adult film work.

20   29.    When the young women ask The Defendants where they will distribute the video, The

21   Defendants assure them that they will not post the video online, they will not distribute the video in the

22   United States, and they will keep each woman anonymous.  The Defendants represent the videos will

23   be on DVDs overseas and for private use.  If needed for convincing, The Defendants provide a

24   reference woman, who previously shot a video (but, whose video is not yet released), to vouch for The

25   Defendants and promise the same security, limited distribution, and anonymity.

26   30.    After The Defendants lie to the young women, they book rooms (usually under PRATT'S

27   name) at upscale San Diego County hotels, most often at major high-end chains in downtown San

28   Diego (e.g., Hilton, Hyatt, Marriot).  If the young women are not in Southern California, The

1    Defendants pay for their airfare to San Diego (again, usually using PRATT'S name / credit card).

2    31.    Then, without hotel knowledge and consent, and, on information and belief, without any license

3    or permit, The Defendants sneak videography equipment into the hotel – hiding the equipment in large

4    suitcases – in order to produce the amateur pornography.

5    32.    Once the young women are confined to the hotel room, The Defendants present them with

6    documents to sign: (a) under duress and coercion (often yelling at them and saying there is no time to

7    read); and (b) while continuing to orally misrepresent their intent for the video's eventual distribution.

8    33.    After the filming begins, and/or when the young women are told what to do, if they refuse or

9    say they are uncomfortable or in pain, The Defendants often yell at them, saying it is too late to change

10    their minds and they cannot leave the hotel room. Further, the filming often takes much longer than the

11    promised – often, the young women are confined in the hotel room and forced to film and have sex for

12    many hours. Even worse, the young women are sometimes forced to have sex when not filming – to

13    appease the "actor," most often GARCIA.

14    34.    Around one month after filming, things get unimaginably worse for the young women. Despite

15    their earlier representations, The Defendants release the videos on, at least, www.girlsdoporn.com (their

16    monthly subscription website) and www.girls-do-porn.com (a free website with clips of the videos that

17    then directs the user to www.girlsdoporn.com). The Defendants also release/license all or part of the

18    videos all over the internet on a multiple of free pornography websites – in part, to advertise

19    www.girlsdoporn.com with the images and likenesses of the young women. (Interestingly, and by no

20    accident, GARCIA'S (and any other male participant's) face is never shown in any video.) Soon

21    thereafter, someone who knows one of the young women will notify them the video is online. This

22    becomes the first time the young women have ever heard of The Defendants' website:

23    www.girlsdoporn.com.

24    35.    When the young women reach out to The Defendants, they discover The Defendants have

25    changed their phone numbers (they use disposable phones and/or changeable Internet phone numbers).

26    Later, the young women discover The Defendants have also used fake names (e.g., PRATT often uses

27    "Mark," GARCIA often uses "Jonathan," and WOLFE often uses "Ben" or "Isaac").

28    ///

1   36.    Finally, to further injure the young women, The Defendants release their real names online,

2   usually on blogs followed by "fans" of www.girlsdoporn.com, who then stalk, harass, bully, and

3   blackmail the young women and their families – online, by telephone, and in-person.

4   37.    As a result, these young women lose relationships with friends, significant others, and family.

5   Some lose or change jobs, and some are forced to leave their school. Months to years after the videos,

6   many young women are still harassed by strangers on the Internet. And, many have suffered severe

7   psychological damage, necessitating medical, and professional treatment. Some have consulted rape

8   counselors. Some have attempted suicide.

9   38.    Below, are specific facts and claims of four (4) plaintiff young women.

10  **JANE DOE NO. 1**

11  39.    In July 2015, The Defendants posted an advertisement on Craigslist.com in the gigs/modeling

12  section for the Las Vegas area, seeking young women for adult modeling.

13  40.    That same month, JANE DOE NO. 1 responded to the advertisement and corresponded with

14  GARCIA (going by his alias "Jonathan") by email, text message, and telephone. GARCIA eventually

15  offered her $9,200.00 for 3 videos.

16  41.    That same month, in July 2015, GARCIA told JANE DOE NO. 1 on the phone that they would

17  not post the videos online, they would not distribute the videos in the United States, and they would not

18  release her name. GARCIA told her the video would go to *one* "private buyer" overseas in Australia -

19  and would only be in DVD format.

20  42.    On August 3, 2015, September 14, 2015, and September 22, 2015, JANE DOE NO. 1 made

21  adult videos for The Defendants at The Palomar in downtown San Diego, 707 10th Avenue in

22  downtown San Diego, and at the Coronado Island Marriott, respectively. Before each shoot, GARCIA

23  and WOLFE (going by his alias "Ben"), again, assured JANE DOE NO. 1 they would not post the

24  videos online, they would not distribute the videos in the United States, and they would not release her

25  name.

26  43.    During the filming on September 22, 2015 at the Coronado Island Marriott, JANE DOE NO. 1

27  expressed physical and mental discomfort. GARCIA and WOLFE would not allow her to leave.

28  ///

1   44.    In October 2015, The Defendants released JANE DOE NO. 1's videos on their website,

2   www.girlsdoporn.com, and other websites, which were then discovered by her high school, college, and

3   graduate school friends and acquaintances – as well her family.  Also around October 2015, The

4   Defendants leaked JANE NO. DOE 1's real name and her contact information (social media, phone,

5   email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com.  Internet strangers

6   then harassed JANE DOE NO. 1 through social media, text message, and phone.  They also emailed

7   and called JANE DOE NO. 1's college and graduate school students, faculty, and deans, calling her a

8   "whore, slut, disgrace, etc.," sent links to or screenshots of her videos, and later tagged her new

9   boyfriend on social media with the video.  She considered dropping out of school.  When JANE DOE

10   NO. 1 goes to her hometown, she often cannot leave the house due to the humiliation and

11   embarrassment.

12   **JANE DOE NO. 2**

13   45.    In April 2015, The Defendants posted an advertisement on Craigslist.com in the gigs/modeling

14   section for San Diego, CA, seeking young women for fashion modeling.

15   46.    That same month, JANE DOE NO. 2 responded to the advertisement and corresponded with

16   GARCIA (going by his alias "Jonathan") by email, text message, and telephone.  GARCIA asked her to

17   come his condo in downtown San Diego to discuss the modeling shoot.  At the condo, JANE DOE NO.

18   2 met GARCIA and WOLFE (going by his alias "Isaac").

19   47.    At GARCIA's condo in April 2015, GARCIA and WOLFE surprised JANE DOE NO. 2 with

20   the news that the modeling shoot was actually an adult film, and offered her $5,000 cash.  They told

21   JANE DOE NO. 2 they would not post the video online, they would not distribute the video in the

22   United States, and they would not release her name.  They told her the video would go to "private

23   buyers" overseas and would only be in DVD format.  They further told her the "private buyers" had

24   contracts, which prevented them from sharing or distributing the videos.  GARCIA and WOLFE had

25   JANE DOE NO. 2 call another young woman named "Taylor," who assured JANE DOE NO. 2 the

26   video would remain private.

27   48.    In April 2015, JANE DOE NO. 2 made an adult video for The Defendants at the Hard Rock

28   Hotel in downtown San Diego.  There, GARCIA and WOLFE, again, assured JANE DOE NO. 2 they

1    would not post the video online, they would not distribute the video in the United States, and they

2    would not release her name.  When providing her with a written agreement, GARCIA and WOLFE

3    would not allow JANE DOE NO. 2 to read it, and told her it was merely a "tax form" and "privacy

4    agreement."

5    49.    During the shoot, JANE DOE NO. 2 expressed physical and mental discomfort.  GARCIA and

6    WOLFE told her she could not leave.  She was afraid to leave.

7    50.    On or about April 10, 2015, The Defendants released JANE DOE NO. 2's video on

8    www.girlsdoporn.com and other websites, which was discovered by her friends and acquaintances – as

9    well her family.  Also around April 10, 2015, The Defendants leaked JANE DOE NO. 2's real name

10    and her contact information (social media, phone, email, etc.) on other websites, including, at least, the

11    blog www.pornwikileaks.com.  The users of that blog then harassed JANE DOE NO. 2 through social

12    media, text message, and phone, calling her a "whore, slut, disgrace, etc.," sent her friends and

13    acquaintances links to or screenshots of her video, and later tagged her new boyfriend on social media

14    with the video.

15    **JANE DOE NO. 3**

16    51.    In March 2014, The Defendants posted an advertisement on exploretalent.com, seeking young

17    women for adult modeling in San Diego, CA.

18    52.    That same month, JANE DOE NO. 3 responded to the advertisement and corresponded with

19    GARCIA (going by his alias "Jonathan") by email and text message.  GARCIA offered her $3,000.00

20    to do an adult video.  JANE DOE NO. 3 asked GARCIA where the video would be distributed.

21    GARCIA told her they would not post the video online, they would not distribute the video in the

22    United States, and they would not release her name.  GARCIA told her the video would be on DVD

23    and only distributed overseas in South America.

24    53.    On March 23, 2014, JANE DOE NO. 3 made an adult video for The Defendants at the Hilton

25    San Diego Bayfront.  Before the shoot, GARCIA and WOLFE (going by his alias "Ben"), again,

26    assured JANE DOE NO. 3 they would not post the video online, they would not distribute the video in

27    the United States, and they would not release her name.

28    ///

54.    Around July 4, 2014, The Defendants released JANE DOE NO. 3's video on www.girlsdoporn.com and other websites, which were then discovered by her family, friends, co-workers, and employer. Also around July 4, 2014, The Defendants leaked JANE DOE NO. 3's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com. The users of that blog then harassed JANE DOE NO. 3 through social media, text message, and phone. She has been shunned and blackmailed by friends and coworkers.

**JANE DOE NO. 4**

55.    In April 2013, The Defendants, going by their alias "Bubblegum Casting," posted an advertisement on Craigslist.com in the gigs/modeling section for Eastern, North Carolina, seeking young women for modeling.

56.    That same month, JANE DOE NO. 4 responded to the advertisement and corresponded with WOLFE by email and text message. JANE DOE NO. 4 also FaceTimed with WOLFE and GARCIA. WOLFE and GARCIA offered her $2,000.00 to do an adult video. JANE DOE NO. 4 asked WOLFE and GARCIA where the video would be distributed. WOLFE and GARCIA told her they would not post the video online, they would not distribute the video in the United States, and they would not release her name. WOLFE and GARCIA told her the video would be on DVD and would go only to a video store in Australia.

57.    On April 9, 2013, JANE DOE NO. 4 made an adult video for The Defendants at the downtown San Diego Marriott. The Defendants booked the room under WOLFE'S name. Before the shoot, GARCIA and WOLFE, again, assured JANE DOE NO. 4 they would not post the video online, they would not distribute the video in the United States, and they would not release her name.

58.    During the shoot, JANE DOE NO. 4 became scared and in extreme pain, so she asked GARCIA and WOLFE to leave. They told her she could not leave until they were finished.

59.    GARCIA and WOLFE then reneged on their promise to pay JANE DOE NO. 4 the $2,000 and only paid her $400 (they gave her stack of cash with twenty dollar bills on top, but clandestinely filled the middle with one dollar bills). They also locked JANE DOE NO. 4 out of the hotel room, forcing her to find other hotel accommodations alone.

60. Around June 2013, The Defendants released JANE DOE NO. 4's videos on www.girlsdoporn.com and other websites, including www.pornhub.com, which were then discovered by her family and friends. Also around June 2013, The Defendants leaked JANE DOE NO. 4's real name and her contact information (social media, phone, email, etc.) on other websites, including, at least, the blog www.pornwikileaks.com. Later, the users of that blog then harassed JANE DOE NO. 4 through social media, text message, and phone. JANE DOE NO. 4 became depressed, could not leave the house, was bullied, was blackmailed, and her car was vandalized.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

#### (All The Plaintiffs against All The Defendants)

61. The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

62. During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants, The Defendants represented: they would not post the videos online, they would not distribute the videos in the United States, and they would not release The Plaintiffs' names.

63. Those representations were false.

64. The Defendants intended that The Plaintiffs rely on the above representations when each young woman decided to make an adult video.

65. The Plaintiffs reasonably relied on the representations.

66. The Plaintiffs have been harmed by their reasonable reliance in that The Defendants published their videos online, published their videos in the United States, and released The Plaintiffs' real names.

67. The Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

11

**COMPLAINT**

68. The Defendants were acting individually and on behalf of each other when they made each of these representations and, when one of them made a representation, the others ratified the representation and/or knew of the misrepresentation and failed to correct it.

69. The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

70. The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

## SECOND CAUSE OF ACTION

## FRAUDULENT CONCEALMENT

### (All The Plaintiffs against All The Defendants)

71. The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

72. During The Plaintiffs' discussions and negotiations with The Defendants before each made an adult video for The Defendants, The Defendants actively concealed their true identities (their individual names and, more importantly, the identity of www.girlsdoporn.com, on which they intended to publish The Plaintiffs nude photos and sex acts). They actively concealed the fact their true intention was to post the videos online, distribute them in the United States, and release The Plaintiffs' names.

73. The Defendants owed The Plaintiffs duties to disclose this information as, among other reasons, they provided some information to The Plaintiffs during correspondence, and during contract and business negotiations.

74. The Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their website, their business, their video distribution, and their release of The Plaintiff's names.

75. The Defendants concealed these facts with the intent to induce The Plaintiffs to make the adult videos.

///

76.    The concealed information was objectively material to any reasonable person and caused The Plaintiffs to make the adult videos.

77.    The Plaintiffs justifiably relied on The Defendants' false representations.

78.    The Defendants' failure to disclose these material facts to The Plaintiffs was substantial factor in causing their harm.  Had The Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

79.    The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

80.    The Defendants were acting individually and on behalf of each other when they made each of these omissions and, when one of them made an omission, the others ratified the omission and/or knew of the omission and failed to correct it.

81.    The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

82.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### THIRD CAUSE OF ACTION

### FALSE PROMISE

### (All The Plaintiffs against All The Defendants)

83.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

84.    The Defendants made promises to The Plaintiffs that: they would not post the videos online, they would not distribute the videos in the United States, and they would not release The Plaintiffs' names.

13

1   85.   The Defendants' affirmative promises were of material fact and important as The Plaintiffs

2   would not have otherwise made the adult videos.

3   86.   The Defendants did not intend to perform these promises at the times they made them, and have

4   not performed as promised.  The Defendants knew their promises were false and merely wanted The

5   Plaintiffs to make the videos for The Defendants' benefit.

6   87.   The Defendants intended to induce The Plaintiffs to alter their positions in reliance on the

7   promises by making the adult videos.

8   88.   The Plaintiffs justifiably and reasonably relied on The Defendants' promises and The

9   Defendants' affirmative promises were an immediate cause of The Plaintiffs' conduct.

10   89.   The Defendants did not perform the promises.

11   90.   As an actual and proximate cause of The Defendants' false promises and The Plaintiffs'

12   justifiable reliance, The Plaintiffs were damaged in that The Defendants posted the videos online,

13   distributed the videos in the United States, and released The Plaintiffs' names.

14   91.   The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000

15   per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress,

16   including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety,

17   depression, embarrassment, mortification, shame, and fear.

18   92.   The Defendants were acting individually and on behalf of each other when they made each of

19   these omissions and, when one of them made a false promise, the others ratified it, and/or knew of the

20   false promise and failed to correct it.

21   93.   The Defendants also acted in a conspiracy when they committed this fraud as: (1) each of The

22   Defendants had knowledge of and agreed to both the objective and course of action to injure The

23   Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally mislead The Plaintiffs at the

24   time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

25   injured The Plaintiffs, as set forth above.

26   94.   The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

27   award of punitive damages pursuant to Section 3294 of the Califomia Civil Code.

28   ///

14

**COMPLAINT**

## FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

**(All The Plaintiffs against All The Defendants)**

95.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

96.    During their negotiations, contracting, and dealings with The Plaintiffs, The Defendants made the above representations: they would not post the videos online, they would not distribute the videos in the United States, and they would not release The Plaintiffs' names.

97.    The representations were false and although The Defendants may have honestly believed that the representations were true, they had no reasonable grounds for believing the representations were true when they made them.

98.    The Defendants intended that The Plaintiffs would rely on the above representations in their decisions to make the adult videos.

99.    The Plaintiffs reasonably relied on The Defendants' misrepresentations in their decisions to make the adult videos.

100.    The Plaintiffs' reliance on The Defendants' false representations was a substantial factor in causing their harm in that The Defendants posted their videos online, published their videos in the United States, and released The Plaintiffs' names.

101.    The Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

## FIFTH CAUSE OF ACTION

### FALSE IMPRISONMENT

**(All The Plaintiffs against All The Defendants)**

102.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

103.    The Defendants intentionally deprived The Plaintiffs of their freedom of movement by use of

15

**COMPLAINT**

1  fraud, deceit, and/or unreasonable duress.

2  104.    The Defendants' conduct compelled The Plaintiffs to stay in their respective hotel rooms during

3  the video shoots for an appreciable period of time.

4  105.    The Plaintiffs did not voluntarily consent.

5  106.    The Plaintiffs were harmed by The Defendants' conduct in an amount to be proven at trial, but

6  is believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of

7  income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep,

8  enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and

9  fear.

10  107.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

11  Defendants had knowledge of and agreed to both the objective and course of action to injure The

12  Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally held The Plaintiffs at the time

13  and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

14  injured The Plaintiffs, as set forth above.

15  108.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

16  award of punitive damages pursuant to Section 3294 of the Califomia Civil Code.

17                                   **SIXTH CAUSE OF ACTION**

18                                      **SEXUAL BATTERY**

19                              **(All The Plaintiffs against All The Defendants)**

20  109.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

21  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

22  110.    The Defendants intended to cause a harmful and/or offensive contact with The Plaintiffs' sexual

23  organs, groin, buttocks, and breasts, and a sexually harmful and/or offensive contact with the same

24  resulted directly.

25  111.    The Plaintiffs' consent was obtained by fraud (i.e., they would not have consented to the sexual

26  contact but for The Defendants' above-referenced deceit).

27  112.    The Defendants' conduct harmed The Plaintiffs in an amount to be proven at trial, but is

28  believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income,

                                           **COMPLAINT**

1   and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring

2   fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

3   113.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

4   Defendants had knowledge of and agreed to both the objective and course of action to injure The

5   Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally battered The Plaintiffs at the

6   time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants

7   injured The Plaintiffs, as set forth above.

8   114.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

9   award of punitive damages pursuant to Section 3294 of the California Civil Code.

10                              **SEVENTH CAUSE OF ACTION**

11                           **GENDER VIOLENCE [Civil Code § 52.4]**

12                        **(All The Plaintiffs against All The Defendants)**

13  115.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

14  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

15  116.    The Defendants subjected The Plaintiffs to physical intrusions and physical invasions of a

16  sexual nature under coercive and fraudulent conditions.

17  117.    The Defendants conduct caused The Plaintiffs harm in an amount to be proven at trial, but is

18  believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income,

19  and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring

20  fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

21  118.    Pursuant to Civil Code § 52.4, The Plaintiffs are entitled to actual and compensatory damages,

22  injunctive relief, attorney fees, and punitive damages.

23  119.    The Defendants also acted in a conspiracy when they committed this wrongful conduct as: (1)

24  each of The Defendants had knowledge of and agreed to both the objective and course of action to

25  injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally harmed The

26  Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement,

27  The Defendants injured The Plaintiffs, as set forth above.

28  ///

                                            17
                                        **COMPLAINT**

120. The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### EIGHTH CAUSE OF ACTION

### MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]

#### (All The Plaintiffs against All The Defendants)

121. The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

122. The Defendants used The Plaintiffs' names, likenesses, and/or identities without The Plaintiffs' permission, including, without limitation, on The Defendants' websites (e.g., www.girlsdoporn.com), social media, and advertising.

123. The Defendants' gained a commercial benefit by using The Plaintiffs' names, likenesses, and/or identities.

124. The Defendants conduct caused The Plaintiffs harm in an amount to be proven at trial, but is believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

125. The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, likenesses, and/or identities at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

126. The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### NINTH CAUSE OF ACTION

### MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]

#### (All The Plaintiffs against All The Defendants)

127. The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

18

128.    On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, The Defendants knowingly used The Plaintiffs' names, voices, photographs, video, and likenesses to advertise or sell subscriptions to The Defendants' businesses.

129.    The Defendants' use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

130.    The Defendants did not have The Plaintiffs' consent.

131.    The Defendants use of The Plaintiffs' names, voices, photographs, video, and likenesses was directly connected to The Defendants' commercial purpose.

132.    The Defendants conduct caused The Plaintiffs harm in an amount to be proven at trial, but is believed to be, at least, $500,000 per plaintiff, and consists of, at least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear.

133.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The Defendants had knowledge of and agreed to both the objective and course of action to injure The Plaintiffs; (2) pursuant to their agreement, The Defendants intentionally misappropriated The Plaintiffs' names, voices, photographs, video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

134.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

## TENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (All The Plaintiffs against All The Defendants)

135.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

136.    The Defendants concealed the fact they run an online pornography website. In order to get The Plaintiffs to make adult videos, The Defendants lied to The Plaintiffs about the distribution. Then, after publishing the videos online, to further and permanently injure The Plaintiffs, The Defendants released The Plaintiffs' names, all contrary to their representations and promises. The Defendants then used the

19

1    videos and names to commercially promote their websites. This conduct was outrageous as it exceeded

2    all bounds of common decency usually tolerated by a civilized society.

3    137.    The Defendants intended to inflict the injuries stated herein upon The Plaintiffs, or the injuries

4    were substantially certain to result from The Defendants' conduct.

5    138.    The Defendants' outrageous conduct actually and proximately caused The Plaintiffs to suffer

6    serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright,

7    shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear. The Plaintiffs

8    have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff.

9    139.    The Defendants also acted in a conspiracy when they committed this tort as: (1) each of The

10    Defendants had knowledge of and agreed to both the objective and course of action to injure The

11    Plaintiffs; (2) pursuant to their agreement, with their outrageous conduct, The Defendants intentionally

12    inflicted severe emotional distress upon The Plaintiffs at the time and place and via the manner set forth

13    above; and (3) pursuant to their agreement, The Defendants injured The Plaintiffs, as set forth above.

14    140.    The Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an

15    award of punitive damages pursuant to Section 3294 of the California Civil Code.

16    **ELEVENTH CAUSE OF ACTION**

17    **NEGLIGENCE**

18    **(All The Plaintiffs against All The Defendants)**

19    141.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

20    complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

21    142.    In their transactions and dealings with The Plaintiff, The Defendants had a duty to use ordinary

22    care and to prevent injury to The Plaintiffs based on the foreseeability of harm to The Plaintiffs, the

23    degree of certainty The Plaintiff would suffer injuries, the closeness of connection between The

24    Defendants' actions and The Plaintiffs' injuries, the moral blame attached to The Defendants' conduct,

25    the policy of preventing future harm, and the extent of The Defendants' burden and the consequences to

26    the community of imposing duty and liability.

27    143.    The Defendants' above-described actions and omissions (e.g., lying about and concealing the

28    fact they run an online pornography website, publishing the videos online, releasing The Plaintiffs' real

20

**COMPLAINT**

1  names, using the videos and names to commercially promote their websites, falsely imprisoning The

2  Plaintiffs, and sexually battering The Plaintiffs) breached the duty of care.

3  144.    The Defendants' breach of the duty of care actually and proximately caused The Plaintiffs'

4  harm in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at

5  least, financial injury, loss of income, and serious emotional distress, including, but not limited to, loss

6  of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment,

7  mortification, shame, and fear.

8                           **TWELTH CAUSE OF ACTION**

9                            **BREACH OF CONTRACT**

10                      **(All The Plaintiffs against All The Defendants)**

11  145.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

12  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

13  146.    The Plaintiffs entered into oral agreements with The Defendants whereby The Plaintiffs agreed

14  to make their respective videos with the conditions: they would not post the videos online, they would

15  not distribute the videos in the United States, and they would not release The Plaintiffs' names.

16  147.    The Plaintiffs performed all of their obligations under the agreements; in particular, they

17  participated in the video shoots.

18  148.    All conditions required for The Defendants' performances occurred, but they breached the

19  contract by distributing the videos online and in the United States, and by releasing The Plaintiffs'

20  names.

21  149.    As an actual and proximate cause of The Defendants' breach, The Plaintiffs were damaged in an

22  amount to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

23                         **THIRTEENTH CAUSE OF ACTION**

24                           **PROMISSORY ESTOPPEL**

25                      **(All The Plaintiffs against All The Defendants)**

26  150.    The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

27  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

28  ///

1  151.   The Defendants made clear and unambiguous promises to The Plaintiffs that: they would not

2  post the videos online, they would not distribute the videos in the United States, and they would not

3  release The Plaintiffs' names.

4  152.   The Plaintiffs relied on these promises in that they made the videos.

5  153.   The Plaintiffs' reliance was both reasonable and foreseeable.

6  154.   The Plaintiffs were injured as a result in that The Defendants distributed the videos online and

7  in the United States, and released The Plaintiffs' names.

8  155.   Injustice can be avoided only by an award of compensatory and consequential damages in the

9  amount of, at least, $500,000 per plaintiff.

10                          **FOURTEENTH CAUSE OF ACTION**

11              **VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**

12                         **(All The Plaintiffs against All The Defendants)**

13  156.   The Plaintiffs incorporate by reference all of the preceding paragraphs contained in this

14  complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

15  157.   The Defendants' conduct constitutes a "business practice" under Business & Professions Code,

16  Section 17200, et seq. ("Section 17200").

17  158.   The Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it

18  violates common and California statutory law. The Defendants' "business practice" constitutes

19  "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the

20  public.

21  159.   The Defendants intended their conduct to cause – and it did so cause – The Plaintiffs to suffer

22  economic injury in fact and caused The Defendants to receive ill-gotten gains. The Plaintiffs were

23  damaged – and The Defendants unjustly enriched - in an amount to be proven at trial, but believed to

24  be, at least, $500,000 per plaintiff. As such, The Plaintiffs have individual standing under Section

25  17200.

26  160.   Pursuant to the remedies provisions of Section 17200: The Defendants owe The Plaintiffs

27  restitution of The Plaintiffs' property (e.g., videos and images); the Court should enjoin The

28  Defendants' violative conduct; and the Court should issue the maximum civil penalties permitted.

                                    22

**PRAYER FOR RELIEF**

WHEREFORE, The Plaintiffs pray for judgment against The Defendants as follows:

A.     For compensatory damages in an amount of, at least, $2,000,000;

B.     For restitution;

C      For civil penalties;

D.     For an injunction;

E.     For punitive damages;

F.     For attorney fees;

G.     For prejudgment interest;

H.     For costs of suit; and

I.     For such other and further relief as the Court deems just and proper.


Date: June 2, 2016                                    By:

                                                     Robert Hamparyan
                                                     John J. O'Brien
                                                     Brian M. Holm
                                                     **Attorneys for Plaintiffs**

**COMPLAINT**

1 | Robert Hamparyan (State Bar No. 181934)
ROBERT HAMPARYAN, APC
2 | 275 W. Market Street
San Diego, CA 92101
3 | t. 619.550.1355
e. robert@hamparyanlawfirm.com
4
John J. O'Brien (State Bar No. 253392)
5 | THE O'BRIEN LAW FIRM, APLC
750 B Street, Suite 3300
6 | San Diego, CA 92101
t. 619.535.5151
7 | e. john@theobrienlawfirm.com
8 | Brian M. Holm (State Bar No. 255691)
HOLM LAW GROUP, PC
9 | 12636 High Bluff Drive, Suite 400
San Diego, CA 92130
10 | t. 858.707.5858
e. brian@holmlawgroup.com
11

12 | **Attorneys for Plaintiffs**

F I L E D
Clerk of the Superior Court

NOV 08 2017

By: R. BABERS, Deputy

13

14 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15 | **COUNTY OF SAN DIEGO**

16 | JANE DOE NO. 17, an individual; JANE DOE
NO. 18, an individual; JANE DOE NO. 19, an
17 | individual; JANE DOE NO. 20, an individual;
JANE DOE NO. 21, an individual; JANE DOE
18 | NO. 22, an individual; inclusive,

19 |       Plaintiffs,

20 | v.

21 | GIRLSDOPORN.COM, a business
organization, form unknown; MICHAEL J.
22 | PRATT, an individual; ANDRE GARCIA, an
individual; MATTHEW WOLFE, an
23 | individual; BLL MEDIA, INC., a California
corporation; BLL MEDIA HOLDINGS, LLC,
24 | a Nevada limited liability company; DOMI
PUBLICATIONS, LLC, a Nevada limited
25 | liability company; EG PUBLICATIONS, INC.,
a California corporation; M1M MEDIA, LLC,
26 | a California limited liability company;
BUBBLEGUM FILMS, INC., a business
27 | organization, form unknown; OH WELL

CASE NO.:**37-2017-00043712-CU-FR-CTL**

**COMPLAINT (FILED UNDER SEAL)**

**[JURY TRIAL DEMANDED]**

1. Intentional Misrepresentation
2. Fraudulent Concealment
3. False Promise
4. Negligent Misrepresentation
5. Misappropriation of Name & Likeness
   [Common Law]
6. Misappropriation of Name & Likeness
   [Civ. C. § 3344]
7. Intentional Infliction of Emotional Distress
8. Negligence
9. Breach of Contract
10. Promissory Estoppel
11. Unlawful & Fraudulent Business Practices
    [Bus. & Prof. Code §17200]
12. Fraudulent Transfer
13. Declaratory Relief



28

1

**COMPLAINT**

1  MEDIA LIMITED, a business organization,
   form unknown; MERRO MEDIA, INC., a
2  California corporation; MERRO MEDIA
   HOLDINGS, LLC, a Nevada limited liability
3  company; CLOCKWORK PRODUCTIONS,
   INC., a business organization, form unknown;
4  UHD PRODUCTIONS, LLC, a Wyoming
   limited liability company; BUBBLEGUM
5  FILMS, LTD., a business organization, form
   unknown; GREENHILL SERVICES, LTD., a
6  business organization, form unknown; SIDLE
   MEDIA LIMITED, a business organization,
7  form unknown; RIVA YOUSIF, an individual;
   THEODORE GYI, an individual; VALERIE
8  MOSER, an individual; KAILYN WRIGHT,
   an individual; and ROES 1 - 550, inclusive,
9

10          Defendants.

11

12

13     This action is intricately related to San Diego Superior Court Case Nos. 37-2016-19027-CU-

14  FR-CTL and 37-2017-00033321-CU-FR-CTL where sixteen similarly situated young women sue the

15  same fraudulent pornography business for nearly identical claims.

16                                    ----

17     Plaintiffs JANE DOE NO. 17, JANE DOE NO. 18, JANE DOE NO. 19, JANE DOE NO. 20,

18  JANE DOE NO. 21, JANE DOE NO. 22 (all plaintiffs collectively, "Plaintiffs") bring this complaint

19  against defendants GIRLSDOPORN.COM, a business organization, form unknown; MICHAEL J.

20  PRATT, an individual; ANDRE GARCIA, an individual; MATTHEW WOLFE, an individual; BLL

21  MEDIA, INC., a California corporation; BLL MEDIA HOLDINGS, LLC, a Nevada limited liability

22  company; DOMI PUBLICATIONS, LLC, a Nevada limited liability company; EG PUBLICATIONS,

23  INC., a California corporation; M1M MEDIA, LLC, a California limited liability company;

24  BUBBLEGUM FILMS, INC., a business organization, form unknown; OH WELL MEDIA LIMITED,

25  a business organization, form unknown; MERRO MEDIA, INC., a California corporation; MERRO

26  MEDIA HOLDINGS, LLC, a Nevada limited liability company; CLOCKWORK PRODUCTIONS,

27  INC., place of incorporation unknown; UHD MEDIA, INC., place of incorporation unknown;

28  BUBBLEGUM FILMS, LTD., place of incorporation unknown; GREENHILL SERVICES, LTD.,

                                    2
                              COMPLAINT

1    place of incorporation unknown; SIDLE MEDIA LIMITED, place of incorporation unknown; RIVA

2    YOUSIF, an individual; THEODORE "TEDDY" GYI, an individual; VALERIE MOSER, an

3    individual; and ROES 1-550 (all defendants collectively, "Defendants").

4                                   **THE PARTIES**

5    **Plaintiffs**

6    1.       JANE DOE NO. 17 is an individual residing in the State of California.

7    2.       JANE DOE NO. 18 is an individual residing in the State of Utah.

8    3.       JANE DOE NO. 19 is an individual residing in the State of Nevada.

9    4.       JANE DOE NO. 20 is an individual residing in the State of Florida.

10    5.       JANE DOE NO. 21 is an individual residing in the State of New York.

11    6.       JANE DOE NO. 22 is an individual residing in the State of Georgia.

12    **Defendants**

13    7.       GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of

14    business in San Diego County, California.

15    8.       BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego

16    County, California.

17    9.       BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place

18    of business in Clark County, Nevada.

19    10.      DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of

20    business in Clark County, Nevada.

21    11.      EG PUBLICATIONS, INC. is a California corporation with its principal place of business in

22    San Diego County, California.

23    12.      M1M MEDIA, LLC is a California limited liability company with its principal place of business

24    in San Diego County, California.

25    13.      BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information

26    and belief, its "principal place of business" in Port Vila, Vanuatu.

27    14.      OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information

28    and belief, its "principal place of business" in Port Vila, Vanuatu.

15. MERRO MEDIA, INC. is a California corporation with its principal place of business in San Diego County, California.

16. MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place of business in Clark County, Nevada.

17. CLOCKWORK PRODUCTIONS, INC. is a corporation. Plaintiffs are unaware of what state or foreign nation it is incorporated in.

18. UHD PRODUCTIONS, LLC is a limited liability company organized in the State of Wyoming with its principal place of business in San Diego, California.

19. BUBBLEGUM FILMS, LTD is a business organization, form unknown, with, on information and belief, its "principal place of business" in Port Vila, Vanuatu.

20. GREENHILL SERVICES, LTD. is a corporation. Plaintiffs are unaware of what state or foreign nation it is incorporated in.

21. SIDLE MEDIA LIMITED is a corporation. Plaintiffs are unaware of what state or foreign nation it is incorporated in.

22. On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., M1M MEDIA, LLC, BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO MEDIA HOLDINGS, LLC; CLOCKWORK PRODUCTIONS, INC., UHD PRODUCTIONS, LLC, BUBBLEGUM FILMS, LTD., GREENHILL SERVICES, LTD, SIDLE MEDIA LIMITED and ROES 1 - 250 ("THE ENTITY DEFENDANTS") are entities in the business of online pornography production, distribution, and sales. On information and belief, THE ENTITY DEFENDANTS own and/or operate numerous online pornography websites, including, without limitation, www.girlsdoporn.com, www.girlsdotoys.com and www.mompov.com.

23. MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California. On information and belief, he is a sales agent and representative, and the majority or sole shareholder, managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

24. ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California. On information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS

4

1 – as well as a participant and "actor" in their pornography.

2 25.    MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California.

3 On information and belief, he is a sales agent and representative for each of THE ENTITY

4 DEFENDANTS – as well as a videographer of their pornography.

5 26.    RIVA YOUSIF ("YOUSIF") is an individual residing in San Diego County, California.

6 27.    THEODORE GYI ("GYI") is an individual residing in San Diego County, California.

7 28.    VALERIE MOSER ("MOSER") is an individual residing in San Diego County, California.

8 29.    KAILYN WRIGHT ("WRIGHT") is an individual that Plaintiffs are informed and believe and

9 thereon allege lives in Maricopa County, Arizona.

10 30.    On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales

11 agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

12 31.    Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued herein

13 as ROES 1 - 550, inclusive, and therefore sue these defendants by such fictitious names and allege that

14 ROES 1 - 550 are responsible in some manner for the occurrences herein alleged.  Plaintiffs will amend

15 this complaint to allege their true names, capacities, and/or liabilities when ascertained.

16 32.    In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

17 contracting with Plaintiffs, Defendants were agents, servants, representatives, partners, joint venturers,

18 affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions herein

19 alleged.  Defendants were and are acting within the course and scope of their authority as such agents,

20 servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees

21 and with the permission, authorization, consent, and ratification of each other.

22 33.    In doing all things alleged herein, including, without limitation, corresponding, negotiating, and

23 contracting with Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, GYI,

24 MOSER, YOUSIF, WRIGHT, and ROES 251 – 550 acted as alter egos of each other.  In particular,

25 they: (a) commingled their funds and other assets, failed to segregate funds between them, and have

26 without authorization diverted corporate funds and assets for noncorporate uses; (b) treated each other's

27 assets as their own; (c) issued shares of one other to themselves and third parties haphazardly and

28 without authority; (d) held themselves out as being personally liable for the debts of each other; (e)

5
COMPLAINT

1 | failed to maintain minutes and corporate records, and confused of the records of the separate entities;
2 | (f) used the same business locations and employed the same employees; (g) failed to adequately
3 | capitalize the entities; (h) used each other as a conduit for a single venture of themselves; (i) failed to
4 | maintain arm's length relationships among themselves; and (j) diverted assets without consideration
5 | from/to one another to the detriment of creditors, including Plaintiffs. Recognition of the privilege of
6 | separate existences between these defendants would promote injustice, unfairness, and fraud. Any
7 | separateness is to be disregarded. As such, Defendants are jointly and severally liable in this action as
8 | alter egos.

9 | ### JURISDICTION AND VENUE

10 | 34.     This Court has jurisdiction over Defendants as they are physically present in San Diego County,
11 | California and/or because Defendants committed the subject acts and omissions in San Diego County,
12 | California.

13 | 35.     Venue is proper as San Diego County is where Defendants reside and have their principal place
14 | of business, the subject contracts were entered into, and/or the obligations and liability arose.

15 | ### FACTUAL ALLEGATIONS

16 | **Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

17 | 36.     Defendants collectively run pornography websites, the main website being
18 | www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than
19 | the San Diego Padres website. Defendants also collectively operate subscription based websites
20 | www.mompov.com and www.girlsdotoys.com. In addition, Defendants have numerous free websites
21 | where they publish short clips of the videos as advertisements for their subscription-based websites.
22 | Defendants also run advertising websites that link to each of their subscription-based websites. For
23 | example, Defendants' website www.girls-do-porn.com, which features Plaintiffs' likenesses, contains
24 | advertisements and links to Defendants' "sister website" www.mompov.com. Likewise, Defendants'
25 | website www.mompov.net, contains advertisements and links to www.girlsdoporn.com.

26 | **Defendants use offshore shell companies set up by a group notorious for money laundering and**
27 | **tax evasion to run their fraudulent operation**

28 | 37.     Although Defendants use several entities to run the three subscription websites, they are

1  inextricably linked as a single operation run by a handful of people out of the same office space in

2  downtown San Diego, California, operated by the same credit card processing companies, and utilizing

3  the same sham offshore entities set up by the infamous GT Group, Ltd, which has laundered billions of

4  dollars for nefarious business operations such as the Sinoalan Cartel and Ukrainian gun runners.   GT

5  Group Ltd. operates out of the tiny Pacific island nation, Vanuatu.  It website, since taken offline,

6  boasted:

> GT Group Offshore has three typical packages for Nominee Services, allowing you to
> achieve total privacy for yourself or your client. Through our vast experience and
> knowledge of offshore services, we have been able to package these services to suit
> almost any requirement. Should you seek something slightly different to our standard
> options, please talk to us. It is also important to note that the fees shown below are our retail
> fees. For your special discount price, please talk to us.

38.     For a Level III package, the customer gets:

- Two Nominee Directors / Shareholders / Managers
- Printing your prepared documents
- Signing of up to 50 documents
- Power of Attorney, signed by both Nominees with Apostille (you provide the name &
details for our standard POA)
- Standard Resignation letter from each director
- Copy of each Directors Passport with Notarial Certification
- Notarisation and Apostille of one more document

39.  ·    To provide this "nominee" service, GT Group Limited incorporates thousands of shell

companies that, on paper, list a local (i.e. the "nominees") as the director, shareholder and officer of the

company.  GT Group Limited then pays these locals to sign the documents necessary to keep its shell

companies in good standing.  However, the locals play no part in the shell companies other than signing

the documents.  GT Group Limited then contracts with people seeking to utilize the anonymity of these

shell companies owned by the locals to conduct business anonymously.  Defendant Oh Well Media

Limited, for example, is owned on paper by Abigail Kalopung—a local on Vanuatu.  She is the sole

shareholder, officer and director of Oh Well Media Ltd.  By paying GT Group Limited's fee,

Defendants, however, control Oh Well Media Limited, giving them the ability to open bank accounts

and enter into contracts in the company's name.

40.     Defendants have set up at least three sham entities using GT Group Limited.  Defendants'

1   website www.girlsdoporn.com indicates that it uses Oh Well Media Limited as its 2257[1] custodian and

2   lists its address as P.O. Box 6195, Port Vila, Vanuatu 65774, Poteau 540 208, Ave Due Capitain Cook

3   Seaside, Port Vila, Vanuatu 65774.  Defendants' website www.girlsdoporn.com lists its 2257 custodian

4   as Sidle Media Limited, P.O. Box 6193 Port Villa, Vanuatu, Poteau 540 208, Ave Due Capitain Cook

5   Seaside, Port Vila, Vanuatu 65774.  Finally, Defendants' other subscription website

6   www.mompov.com lists its 2257 custodian of records as "BUBBLEGUMFILMS INC" (sic), c/o GT

7   Group Limited, 1st Floor Pacific Building, Port Vila, Vanuatu 65774.  www.girlsdoporn.com used to

8   list Bubblegum Films Inc. as its 2257 custodian at this same address but has since changed it to a

9   different sham entity started by GT Group Limited named Oh Well Media Limited.

10  **Defendants lie to the victims, repeatedly**

11  41.     The young women appearing in Defendants' amateur pornography come from good families,

12  have never appeared in pornography before, are often paying their way through school, and are just

13  beginning their careers and adulthood.  So, there is only way Defendants can convince these women to

14  have sex on film or produce other adult video material: Defendants lie to them.

15  42.     Defendants advertise themselves across the country as a legitimate Southern California

16  modeling agency - on Craigslist and other websites.  Defendants' Craigslist advertisements fail to even

17  mention that they are an online pornography company.  Instead, they claim they are seeking models,

18  and often times contain a link in the Craigslist advertisement to www.beginemodelling.com or

19  www.modelinggigs.com.  Neither of these websites mention anything about pornography.  Using the

20  impression that they are applying for a typical modeling gig for, at most, swimsuit or lingerie, these

21  sham websites lure women into providing Defendants with pictures of themselves and their name, age,

22  height, weight, state, city, email, and phone number. If Defendants feel they have attracted a proper

23  target, they reach out to the women by phone and/or email in order to feel the women out more.  Once

24  on the phone, Defendants are able to brazenly lie to the women without the fear of putting their lies in

25  writing, and in hopes of being able to cajole the women into filming a pornography.

26  _____

[1] 18 U.S.C. 2257 requires pornography companies to collect certain information from all persons appearing in the
27  pornographic films the produce to ensure they are over 18 years of age. Despite being operated out of San Diego,
Defendants list Oh Well Media Limited, Sidle Media Ltd. and Bubblegum Films, Inc. as their 2257 custodians on their
28  websites www.girlsdoporn.com, www.girlsdotoys.com and www.mompov.com, respectively.  The entities have the same
address in Vanuatu--- Poteau 540 208, Ave Due Capitain Cook, Seaside, Port Vila, Vanuatu 65774.

43. When the young women ask Defendants where they will distribute the video, Defendants assure them that they will not post the video online (or cause it to be so posted), they will not distribute the video in the United States (or cause is to be so distributed), and they will keep each woman anonymous. Defendants represent the videos will be on DVDs overseas (usually in Australia or New Zealand since Defendants' themselves are from there and have an accent) and for private use.

44. If still not convinced by their lies, Defendants provide "references" who Defendants claim previously shot a video (but, whose video is not yet released), to vouch for Defendants and promise the same security, limited distribution, and anonymity. In addition, Defendants use several references that either have not shot a video, or who know the videos are being posted online but are comfortable lying to the prospective victims in order to earn a few dollars. Defendants coach the references on how to handle various questions from the prospective women. As further incentive to lie to the women, Defendants pay the reference more money if the prospective victim they speak with actually ends up filming a video. Defendant WRIGHT is such an individual. WRIGHT filmed a video for Defendants that was released in the Spring of 2015. WRIGHT was aware of Defendants' websites, that the women's names would be released, but nevertheless acted as a reference for Defendants and repeatedly lied to prospective victims by telling them the videos would not be posted online, and would instead be released on DVDs in foreign countries.

45. For example, on February 24, 2016 at 7:23pm, a victim of Defendants' fraudulent scheme received an email from "Jonathan N jobs@beginmodeling.com" stating:

> This is Kaitlin, she is 19.
> She is from Scottsdale, AZ and has done 2 shoots with us.
> We pretty much paid for her breast job and she is recovering.
> She also worked with the same talent that you will work with
> Here is her cell: (480) ***-****,

[Formatting and sics in original.] The email had photographs of defendant WRIGHT attached.

46. An hour or so after this email, on February 24, 2016, the victim received a text message from (480) ***-****, which is the same phone number Jonathan provided for WRIGHT. The following text exchange occurred between the victim and WRIGHT (Defendants' paid agent):

| | WRIGHT: | Hey [victim's name omitted] my name is Kailyn- Jonathon gave me your contact info! Im sure you're nervous or maybe even sketched out a little bit but you seriously have nothing to worry about! It's completely legit, once you land (if you're flying in from out of town that is*) you will be picked up in a nice car and taken to where you are shooting your scene and all that OH AND they pay you in cash up front! |
|---|---|---|
| | | Okay so I am a very easily sketched out person when it comes to stuff like this I was very Nervous but once I got there I felt like a complete idiot because I realized I had nothing to worry about haha - lowkey was a little embarrassed haha (emojis omitted) The model is super hot which is nice (emojis omitted) and the photographer is super cool |
| | | It's you, the model, and the photographer in the room and no one else so it's not uncomfortable or anything which is chill Girl if you have any questions please **DO NOT**hesitate to text me or call or FaceTime or whatever!!!! (emojis omitted) |
| | VICTIM: | Hey thank you for being so nice! That's exactly where I am at! |
| | | These aren't distributed in America right? |
| | WRIGHT: | No prob! And no they aren't! |
| | VICTIM: | Is there anyway they can get back to the US? I just have this shaky thing with this guy I like love and I can't have anyone find out |
| | WRIGHT: | No no no you're totally fine! |
| | | That's what I was worried about but there is absolutely no way anyone will find out |
| | VICTIM: | Where are the videos going exactly? Like DVDs I think he said in Australia UK, but like DVDs or .. ? |
| | WRIGHT: | Yeah so it goes out to wealthier countries; yea DVDs and stuff like that but nothing online! |

47.    In their discussions with these young woman, Defendants use aliases and mention nothing about their website(s) where they plan to post the videos, or the websites on which they plan to publically promote and advertise the videos.  Defendants also mention nothing about: (a) all of the other young women whose lives they have irreparably damaged earlier by Defendants' video publication and promotion (b) all of the other young women imploring them to stop and to take down their videos; and (c) all of the complaints that they (and their legal counsel) have received from other young women and their families.

48.     After Defendants lie to the young women, they book rooms at upscale San Diego County hotels, most often at major high-end chains in downtown San Diego (e.g., Hilton, Hyatt, Marriot). If the young women are not in Southern California, Defendants book flights for the women.

49.     Defendant YOUSIF, MOSER or GARCIA typically pick the women up from the airport. In the car, they reassure the women Defendants will not publish the videos on the Internet.

50.     Once the young women are confined to the hotel room, Defendants tell the women they look nervous, need to relax and then try to persuade them to drink alcohol and/or smoke marijuana, which GARCIA consumes regardless of whether the women choose to do so. YOUSIF typically acts as the makeup artist for most women. While applying makeup, YOUSIF again reassures the women the video will not be released online, and generally appeases any concerns the women express.

51.     Before filming begins, GARCIA asks the women to take off their clothes so that they may take pictures to send to the "boss." After sending the pictures to the boss. Defendants routinely tell the women, after they have flown to San Diego, are naked, and confined in a hotel room, that the boss cannot pay them the agreed upon price because the woman has cellulite, a bruise, breast reduction scars, too small breasts, tattoos, etc. Defendants routinely accuse the women of sending them misleading pictures in hopes to con the women into accepting less than they were promised before flying to San Diego. If the woman refuses to shoot the film for less money, Defendants threaten to sue the woman for the price of the flight and hotel room Defendants had paid for or threaten to cancel the woman's return flight, which Defendants booked and have control over.   The vast majority of women flown to San Diego are paid less than the agreed upon amount when they decided to board a plane and fly across the country.

52.     After the repeated misrepresentations, and sometimes after alcohol and marijuana Defendants provide, and while confined in a hotel room with unknown men, Defendants present the women with documents to sign: (a) often under duress, coercion, and/or while distracting or rushing them; (b) while continuing to orally misrepresent their intent for the video's eventual distribution; (c) while continuing to fraudulently omit the material facts referenced herein (e.g., that they work for a San Diego-based pornography website that has damaged other young women's lives); and (d) often lying about the purported nature and effect of the documents. The documents are full of legalese and fail to mention

1   www.girlsdoporn.com or any of the free public websites that Defendants intend to publish the videos.

2   Instead, the documents indicate Defendants work for "Bubblegum Casting" or "BLL Media." If the

3   names of these companies are Googled, which several women have done when presented with the

4   documents, the companies have sham websites that give the impression they are legit media companies.

5   Nothing on either of these websites indicates the videos are destined for www.girlsdoporn.com, any of

6   Defendants' other websites, or free websites like www.pornhub.com, where Defendants' videos have

7   been viewed almost 500 million times.

8   53.     A few months after filming, despite their earlier representations, Defendants release the videos

9   on, at least, www.girlsdoporn.com (their monthly subscription-based website) and www.girls-do-

10   porn.com (a free website with clips of the videos that then directs the user to www.girlsdoporn.com).

11   Defendants also release/license all or part of the videos all over the Internet on a multiple of free

12   pornography websites – in part, to advertise www.girlsdoporn.com with the images and likenesses of

13   the young women. Defendants post clips of the videos on popular websites like www.youporn.com or

14   www.pornhub.com as advertisements.

15   54.     Interestingly, and by no accident, GARCIA'S (and any other male participant's) face is

16   intentionally cut from the frame and not shown in any video released by Defendants. Soon after the

17   release, someone who knows one of the young women will notify them the video is online. This

18   becomes the first time the young women have ever heard of Defendants' main website:

19   www.girlsdoporn.com.

20   55.     When the young women reach out to Defendants, they discover Defendants have changed their

21   phone numbers (they use disposable phones and/or changeable Internet phone numbers) and have also

22   used fake names (e.g., PRATT often uses "Mark," GARCIA often uses "Jonathan," and WOLFE often

23   uses "Ben" or "Isaac"). Defendants then refuse to talk to the women, hang up on them, and/or block

24   their calls. If the women get in contact with Defendants' counsel, they refuse to even give Plaintiffs

25   copies of any signed documents and threaten them with legal action.

26   56.     After Defendants cause the videos to be distributed online, Defendants, their subscribers, and/or

27   Internet stalkers release Plaintiffs' real names online, usually on blogs followed by "fans" and

28   subscribers of www.girlsdoporn.com. Defendants also post pictures of Plaintiffs on

12

**COMPLAINT**

1   www.pornwikileaks.com, which they bought in November 2015. The posts on

2   www.pornwikileaks.com also contain links to the women's social media accounts, their family's social

3   media accounts, high school information and other personal information that would garner attention

4   from people that want to find out intimate details about the women. Defendants then embed

5   advertisements inside the posts on www.pornwikileaks.com that link to their subscription websites. As

6   a result (of which Defendants are cognizant), third parties often then stalk, harass, bully, and blackmail

7   the young women and their families – online, by telephone, and in-person.

8   57.     Once Defendants release the five to ten minute clip of the woman's video, it spreads like

9   wildfire through their hometowns, colleges, high schools, and workplace. Within a day or two, almost

10   every person the woman knows has been sent a link to the video. This appears to be designed by

11   Defendants in order to make the videos go viral by sending links to people close to Plaintiffs on social

12   media—whether it be family, friends, classmates, sorority members, etc., all of which can be gleaned

13   from viewing the Plaintiff's social media accounts. Thus, when high school or college classmates or

14   coworkers get a link for the five to ten minute clip Defendants released, they are inclined to purchase a

15   subscription to Defendants' websites to see the entire 45 minute video.

16   58.     Because of Defendants, some of these young women lose relationships with friends, significant

17   others, and family. Some lose or change jobs, and some are forced to leave their school. Months to

18   years after the videos, many are still harassed by strangers on the Internet. And almost all have

19   suffered severe psychological and emotional damage -- some have even considered and even attempted

20   suicide.

21   59.     Below, are more specific facts and claims relating to six young women.

22   **JANE DOE NO. 17**

23   60.     Around July 2015, JANE DOE NO. 17 was pursuing modeling as a career, in addition to being

24   a full-time student. While searching for modeling jobs on Craigslist.com, JANE DOE NO. 17

25   discovered a modeling advertisement for "Begin Modeling." The advertisement contained a link to

26   www.beginmodeling.com. As alleged above, www.beginmodeling.com website features modeling

27   pictures, not pornography. Believing it was a typical modeling job, JANE DOE NO. 17 responded the

28   advertisement indicating she was interested.

13

**COMPLAINT**

61.     JANE DOE NO. 17 spoke with "Stephen" on the telephone and via text message about what the job would entail. JANE DOE NO. 17 is informed and believes that "Stephen" is really defendant MATTHEW WOLFE. WOLFE told JANE DOE NO. 17 that she would be taking "artistic pictures" and that some nudity would be involved. WOLFE told her she would be paid $650 for the shoot. During these discussions, WOLFE never told JANE DOE NO. 17 the job would entail pornography or that he and the other defendants operated www.girlsdoporn.com, had filmed hundreds of pornographic videos and published them on the Internet.

62.     To ensure she was comfortable with the nudity, WOLFE provided JANE DOE NO. 17 with a reference that she could speak with. She spoke with "Kaylin," whom she is informed and believes is defendant KAILYN WRIGHT. WRIGHT told JANE DOE NO. 17 a few things about the shoot, but never mentioned pornography. WRIGHT told JANE DOE NO. 17 that she felt very comfortable with Defendants and that they were very nice men.

63.     WOLFE told JANE DOE NO. 17 to meet her at the Omni Hotel in downtown San Diego. Once there, JANE DOE NO. 17 met WOLFE, who took her to the MAC store in Fashion Valley mall to get her makeup done. WOLFE still had not advised JANE DOE NO. 17 the job was to film pornography. After the mall, the two returned to the Omni Hotel.

64.     Once they reached the hotel room, WOLFE causally mentioned it would be a pornography. JANE DOE NO. 17 told him she would not film a pornography. WOLFE then offered three times the amount they had previously offered for the photos. JANE DOE NO. 17 refused again. WOLFE and GARCIA then told JANE DOE NO. 17 that she had nothing to worry about because the videos would never be released online. They then gave JANE DOE NO. 17 a vodka cranberry cocktail to drink to, as they put it, "loosen up." WOLFE became agitated when JANE DOE NO. 17 would still not agree to shoot the video. He then told her how she had caused them the spend large amounts of money and time setting up the shoot. He then offered her $4,000.

65.     Based on the representations made by WOLFE and GARCIA that she would remain anonymous, and needing money, JANE DOE NO. 17 reluctantly agreed to film the video under the belief that it would never be posted on the Internet.

66.     Prior to filming, GARCIA offered JANE DOE NO. 17 a hit of the marijuana he was smoking.

14

COMPLAINT

1   GARCIA told her that he should not have let her smoke it but it would be "our secret."

2   67.    GARCIA and WOLFE coached JANE DOE NO. 17 how to act during the interview portion of

3   the video and how to answer questions. Multiple times during the filming of the interview portion,

4   WOLFE would make JANE DOE NO. 17 re-answer questions because she was either not acting happy

5   enough or did not like the answer. For example, at the time, JANE DOE NO. 17 was not dating

6   anyone. WOLFE did not like that answer and told her to say she had a boyfriend. In addition, she told

7   them she agreed to film the video because she needed the money to pay rent. They did not like this

8   response, and asked her to change it.

9   68.    The filming was very painful. During one portion, JANE DOE NO. 17 gagged, vomited into

10  her mouth, and choked. She told them she needed to stop and go to the bathroom. They told her to stay

11  there and finish the scene. At one point during the filming, she was in such pain that she started crying.

12  WOLFE stopped filming, demanded that she go to the restroom to fix her makeup, and then re-shoot

13  the entire scene over. At this time, JANE DOE NO. 17 told WOLFE that she was wanted to leave the

14  hotel room and go for a walk to get some fresh air. WOLFE and GARCIA would not let her leave and

15  forced her to stand on the balcony instead. WOLFE told JANE DOE NO. 17 she needed to "get over

16  it" and that they would keep re-recording the scenes until she looked "into it."

17  69.    A few months later, a friend sent JANE DOE NO. 17 a link to the video. Thereafter, all of her

18  friends and family quickly learned of the video. JANE DOE NO. 17 tried calling WOLFE, but he

19  blocked her number.

20  **JANE DOE NO. 18**

21  70.    Around January 2016, JANE DOE NO. 18 was searching for modeling jobs on Craigslist. She

22  found a posting that included a link to the website www.ModelingGigs.com. As alleged above, this

23  website did not mention pornography and instead featured pictures of clothed women in typical

24  modeling poses. JANE DOE NO. 18 responded to the advertisement thinking it was for modeling.

25  71.    She received a call from "Mark" and began exchanging emails, phone calls and text messages.

26  During her conversations, Mark told JANE DOE NO. 18 she would be paid $4,500 to shoot with a

27  male. JANE DOE NO. 18 told Mark she had serious concerns that it would end up online, and that she

28  was concerned her friends and family would find the video. Mark assured her they would not publish

15

**COMPLAINT**

1  the video on the Internet and it would instead be distributed in DVD.  Mark informed JANE DOE NO.

2  18 that the video would be distributed in Australia and South America.

3  72.      Mark provided a reference for JANE DOE NO. 18 to speak with, which she did.  The reference

4  told JANE DOE NO. 18 that the Defendants were great to work with and the job was easy.

5  73.      JANE DOE NO. 18 flew to San Diego on or about January 26, 2016.  At this time, she believed

6  she had the opportunity to either shoot still frame photographs, as depicted on the website, or film a

7  pornography.

8  74.      When she arrived, defendant GYI picked up JANE DOE NO. 18 from the airport and took her

9  to GARCIA's apartment.  JANE DOE NO. 18 waited there for hours alone until the makeup artist to

10  arrive.  The makeup artist arrived, did JANE DOE NO. 18's makeup, and then her, GARCIA and GYI

11  went to a hotel.  On the way to the hotel, GARCIA stopped to buy marijuana.

12  75.      JANE DOE NO. 18 again asked GARCIA and GYI about the distribution of the video.

13  GARCIA and GYI assured her it would not be published on the Internet.

14  76.      Once at the hotel, GARCIA and GYI presented JANE DOE NO. 18 with documents to sign.

15  They told JANE DOE NO. 18 the documents were just permission to use the video overseas.  They

16  again told JANE DOE NO. 18 the video would never be posted online, would never distributed in the

17  United States, that the video would never be connected to her, and that she would remain anonymous.

18  GARCIA and GYI yelled at JANE DOE NO. 18 that they were in a hurry and that she just needed to

19  sign them so they could start.

20  77.      JANE DOE NO. 18 told GARCIA and GYI she was nervous.  GARCIA and GYI therefore

21  gave her marijuana and several shots of vodka.  They also told JANE DOE NO. 18 she could stop

22  filming at any time.

23  78.      Prior to filming the interview portion, GARCIA and GYI coached JANE DOE NO. 18 on what

24  to say and how to act.  She advised them she was not comfortable lying, and they pushed her to do so.

25  They also told her she needed to act flirtatious and excited to be there, even if she was not.  They made

26  JANE DOE NO. 18 re-film different portions of the interview scene if they were not happy with her

27  answer, or if she was not flirtatious or excited enough.

28  79.      During filming, JANE DOE NO. 18 told GARCIA and GYI that she was in serious pain.

16

COMPLAINT

1   Several times, GYI stopped filming because JANE DOE NO. 18 was in visible pain.   When she told

2   them how much pain she was in, GARCIA and GYI assured JANE DOE NO. 18 the shoot was almost

3   over, which it was not.  The shoot continued on for hours.  Eventually, JANE DOE NO. 18 began

4   bleeding vaginally.  She demanded that GARCIA stop, and told GARCIA and GYI she was leaving.

5   When she tried to leave, GARCIA and GYI blocked the hotel room door and pushed her back.  They

6   then told her that if she did not finish filming, they would take back all of her money, publish what

7   footage they already had online with her name attached to it, and cancel her return flight home.  With

8   nowhere to go, and because Defendants controlled her flight home, JANE DOE NO. 18 had no choice

9   but to abide by GARCIA and GYI's commands until they were done with her.

10   80.   Once filming ended, GARCIA and GYI told JANE DOE NO. 18 she had to stay in the hotel

11   room, and film a "solo shoot" the next day, which she had never agreed to do.  JANE DOE NO. 18 told

12   them to leave, but they refused and ordered room service.  GARCIA and GYI smoked more marijuana

13   and began watching television.  Despite being promised four thousand five hundred dollars ($4,500),

14   GARCIA only paid JANE DOE NO. 18 $3,000.  JANE DOE NO. 18 told them she was owed more

15   money, and GARCIA said she could speak with Mark about that in the morning.  Eventually, they left.

16   81.   The next morning, JANE DOE NO. 18 called Mark to ask when her flight home was and how

17   she would get to the airport.  Mark told her someone would pick her up in the same black Escalade

18   they had previously picked her up from the airport in.

19   82.   Another man she did not recognize picked JANE DOE NO. 18 up from the hotel in the black

20   Escalade.  JANE DOE NO. 18 got in believing the man was taking her to the airport.  The man drove

21   JANE DOE NO. 18 to the airport.  However, once there, he told her that Mark had cancelled her flight

22   (which was scheduled for 10:19am) because she was going to shoot the solo video—something she had

23   repeatedly refused to do.  The driver advised JANE DOE NO. 18 he had driven to the airport because

24   he was there to pick up another young woman, which they did.  The man drove the two women back to

25   GARCIA's apartment.

26   83.   There, JANE DOE NO. 18 called "Mark" and told him she was owed the full $4,500 and that

27   she needed to leave immediately.  In response, "Mark" told JANE DOE NO. 18 they had paid her less

28   because her body was not as good as they thought, that she was "immature" for bringing up money, and

1  that if she wanted the full $4,500 she would have to film the solo scene. Mark continued to yell at her

2  on the phone trying to convince her to do the solo shoot. JANE DOE NO. 18 refused, and Mark

3  eventually agreed fly her home that day.

4  84.  Around February 15, 2016, JANE DOE NO. 18 received a text message from high school friend

5  with a link to the video. Thereafter, the video spread quickly to every one of JANE DOE NO. 18's

6  friends and family.

7  85.  JANE DOE NO. 18 is informed and believes and thereon alleges that "Mark" is actually

8  defendant PRATT.

9  **JANE DOE NO. 19**

10  86.  Around November 2016, JANE DOE NO. 19 responded to the advertisement and corresponded

11  with who she believes was defendant PRATT by email and text message. PRATT told her that the job

12  was 30 minutes and only to the level to which she was comfortable. JANE DOE NO. 19 asked PRATT

13  where the scenes would be distributed. PRATT told her they would not post the video online, they

14  would not distribute the video in the United States, and that she would remain anonymous. JANE DOE

15  NO. 19 also spoke with two reference women, who ratified PRATT'S representations.

16  87.  On November 15, 2016 around 7:00 p.m., YOUSIF picked JANE DOE NO. 19 up at the San

17  Diego airport and drove her to the Omni San Diego Hotel in downtown San Diego. YOUSIF concealed

18  the fact JANE DOE NO. 19' modeling job was actually video pornography and destined for

19  www.GirlsDoPorn.com, for which she has worked for years.

20  88.  After JANE DOE NO. 19 arrived at the Omni San Diego Hotel, YOUSIF called PRATT and

21  GYI, but no cameraman showed up. So, Defendants cancelled her flight home and made her stay in

22  the room alone all night.

23  89.  Around 9:00 a.m. on November 16, 2016, PRATT, GARCIA (going by his alias "Jonathan"),

24  GYI and a man named "Markus" arrived. JANE DOE NO. 19 told the four (4) men she was

25  uncomfortable and asked to fly home to Seattle. The four men got angry and cancelled her flight yet

26  again, then locked the hotel room. They told her she had to do the pornography video, offered her

27  $4,000, and would only get her a flight home to Seattle when it was over.

28  90.  Defendants then offered JANE DOE NO. 19 alcohol and marijuana (which GARCIA was

18

COMPLAINT

1   already drinking and smoking), but she declined.  Defendants then handed her documents to sign, but

2   would not allow her to read them and again represented that she would remain anonymous.  They

3   assured her there was nothing to worry about, promised her privacy, and said nobody she knew would

4   see the videos.  The Defendants promised to email JANE DOE NO. 19 what she signed, but later

5   refused to.

6   91.     Relying on Defendants' representations of foreign, discrete distribution, and wanting to fly

7   home, JANE DOE NO. 19 participated in the video.  While making the video, JANE DOE NO. 19 told

8   them she was uncomfortable and wanted to leave.  Defendants told her there was no option to stop.

9   While making the video, JANE DOE NO. 19 was forced to perform sexual acts she did not agree to; if

10  she declined, GARCIA would manipulate her aggressively.

11  92.     After the video, Defendants refused to pay JANE DOE NO. 19 the full $4,000, and only paid

12  her $3,000, telling her, among other things, that her "body was a 10, but her face was a 7."

13  93.     Around January 2017, Defendants released JANE DOE NO. 19' video on

14  www.girlsdoporn.com and other websites, which were then discovered by her family, friends, co-

15  workers, and employer.  JANE DOE NO. 19 emailed PRATT asking him to take down the video, but

16  he ignored her.  JANE DOE NO. 19 called PRATT, then he said he did not know her and hung up.

17  JANE DOE NO. 19 then texted PRATT, saying she would have a lawyer contact him.  PRATT replied

18  with the following threat and denigration by text message: "lol yeah good luck we got all convos and

19  the entire fucking shoot on video your a joke [sic]."

20  94.     The Defendants, their subscribers, and/or third parties leaked JANE DOE NO. 19's real name

21  and her contact information (social media, phone, email, etc.) on other websites.  People then harassed

22  JANE DOE NO. 19 through social media, text message, and by phone.  She has had to go to counseling

23  for suicidal thoughts, is often unable to go out in public, has lost friends, and has had to delete her

24  social media and change her phone number.

25  **JANE DOE NO. 20**

26  95.     Around September 2015, JANE DOE NO. 20 responded to a Craigslist ad for modeling for

27  www.modelingwork.com.  That website, like the others, mentions nothing about pornography and

28  appears to be a company that photographs fashion models.

96.    "Mike@modelingwork.com" responded to JANE DOE NO. 20. Mike eventually advised JANE DOE NO. 20 the job was for an adult film and they would pay her $5,000 for the video. As requested, JANE DOE NO. 20 provided them with pictures of herself. During a phone call, Mike told JANE DOE NO. 20 that the video would never be published online or distributed in the United States. He also provided a phone number for "Cat" whom he said was a woman who had filmed a similar video that could confirm the video would not be published on the Internet. JANE DOE NO. 20 and Cat exchanged text messages and spoke on the phone. During these conversations, Cat advised that she had filmed a video for Defendants and that her video was not online and that nobody she knows has ever seen it.

97.    Mike booked a flight for JANE DOE NO. 20 to fly to San Diego. However, JANE DOE NO. 20 had second thoughts and cancelled. Mike began calling JANE DOE NO. 20 repeatedly. When she answered, Mike began trying to convince JANE DOE NO. 20 to recommit to filming. Mike confirmed over and over that the video would not be published online. She again agreed to film the video based on these promises and representations.

98.    When they presented her with paperwork to sign, JANE DOE NO. 20 again sought reassurance the videos would not be published on the Internet, which they confirmed they would not do. GARCIA represented the paperwork was for tax purposes.

99.    Defendants only paid JANE DOE NO. 20 $2,500 because, as GARCIA put it, she was "not what Mark expected," and because she had tattoos—something that was clearly visible from the photos she sent to Defendants before flying to San Diego.

100.    Around January 2016, Defendants published JANE DOE NO. 20's video on the Internet. Thereafter, numerous people sent clips of the video to JANE DOE NO. 20 with rude and suggestive comments.

**JANE DOE NO. 21**

101.    In May 2015, JANE DOE NO. 21 responded to a Craigslist advertisement for modeling. She began speaking with "Jonathan N," who told her they were seeking women for an adult gig in Southern California. Jonathan offered to pay JANE DOE NO. 21 $3,500 to shoot a 30 minute film. Jonathan told JANE DOE NO. 21 the video would be distributed on DVD overseas and not in the United States,

1  and assured they would not publish it on the Internet. Jonathan also told JANE DOE NO. 21 she could

2  view the male performer's STI results before the filming began   .

3  102.   Jonathan provided names of several references with whom JANE DOE NO. 21 spoke. The

4  references acted bubbly and enthusiastic about their experience with Defendants. The references never

5  mentioned they were paid, and confirmed the videos would not be released on the Internet.

6  103.   JANE DOE NO. 21 agreed to fly to San Diego on the terms reached during these discussions

7  with Jonathan and the references.

8  104.   JANE DOE NO. 21 discovered that defendant GARCIA was the man with whom she had been

9  speaking that purported to be "Jonathan." During the shoot, GARCIA demanded that she have sex in

10  ways she had not agreed to during her phone calls with Jonathan. When JANE DOE NO. 21 said no,

11  GARCIA told her they'd already paid her and that she was obligated.

12  105.   Around June 2015, Defendants released JANE DOE NO. 21 video despite the many

13  representations that it would not be.

14  **JANE DOE NO. 22**

15  106.   Around January 2015, JANE DOE NO. 22 responded to a Craigslist advertisement for modeling

16  with the headline "Females Escape The Snow And Make $5k."   A person using the email "Johnathan :

17  jobs@beginmodeling.com (sic)" told her the job would be 30 minutes of video and that "[n]one of your

18  personal information will be given out in the video or afterwards , no names etc are used in the video.

19  (sic)." Johnathan represented to JANE DOE NO. 22 the videos would be distributed on DVD in

20  Australia and New Zealand and would not be published online.

21  107.   Between January 2015 and July 2015, JANE DOE NO. 22 flew to San Diego and filmed three

22  videos for Defendants.

23  108.   Before filming each video, Defendants assured JANE DOE NO. 22 the videos would not be

24  published online and that she would remain anonymous. Defendants reiterated this when they provided

25  JANE DOE NO. 22 with a contract to sign. Each time, JANE DOE NO. 22 tried to read the documents

26  Defendants had provided her, but was rushed through by Defendants and she did not understand the

27  content she was able to read. She did, however, understand Defendants representation that they would

28  not post the videos on the Internet.

1    109.    Around August 2015, JANE DOE NO. 22 learned that Defendants had published her videos

2    online. When she contacted Defendants, they ignored her and blocked her phone calls.

3    **CAUSES OF ACTION**

4    **FIRST CAUSE OF ACTION**

5    **INTENTIONAL MISREPRESENTATION**

6    **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

7    110.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

8    though set forth herein, including, without limitation, the agency and alter ego allegations.

9    111.    During Plaintiffs' discussions and negotiations with Defendants before each made an adult

10    video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

11    agreements), Defendants represented: they would not post the videos online (or cause such publication),

12    they would not distribute the videos in the United States (or cause such publication), and that Plaintiffs

13    would remain anonymous. Defendants further represented at all times to Plaintiffs that would not cause

14    the videos to be posted online or distributed in the United States. Defendants at all times assured

15    Plaintiffs there was nothing to worry about, promised privacy, and said nobody Plaintiffs knew would

16    see the videos. Defendants caused other women to reiterate these representations to Plaintiffs. Finally,

17    Defendants represented they would pay Plaintiffs certain sums of money; as set forth above, some of

18    Plaintiffs did not receive the sums represented.

19    112.    Those representations were false.

20    113.    Defendants intended that Plaintiffs rely on the above representations when each young woman

21    decided to make an adult video.

22    114.    Plaintiffs reasonably relied on the representations.

23    115.    Plaintiffs have been harmed by their reasonable reliance in that Defendants published their

24    videos online, published their videos in the United States, and released Plaintiffs' real names.

25    116.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

26    Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

27    plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

28    blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

22
**COMPLAINT**

1    embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

2    the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

3    were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

4    restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

5    also seek injunctive relief.

6    117.    Defendants were acting individually and on behalf of each other when they made each of these

7    representations and, when one of them made a representation, the others ratified the representation

8    and/or knew of the misrepresentation and failed to correct it.

9    118.    Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

10   Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

11   (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

12   via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

13   forth above.

14   119.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

15   of punitive damages pursuant to Section 3294 of the California Civil Code.

16                                   **SECOND CAUSE OF ACTION**

17                                   **FRAUDULENT CONCEALMENT**

18                         **(All Plaintiffs against All Named Defendants and ROES 1 – 500)**

19   120.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

20   though set forth herein, including, without limitation, the agency and alter ego allegations.

21   121.    During Plaintiffs' discussions and negotiations with Defendants before each made an adult

22   video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

23   agreements), Defendants actively concealed their true identities (their individual names and, more

24   importantly, the identity of www.girlsdoporn.com, on which they intended to publish Plaintiffs nude

25   photos and sex acts). At all these times, they actively concealed the fact their true intention was to post

26   the videos online and distribute them in the United States – or cause such publication and distribution.

27   At all these times, Defendants also concealed the facts regarding: (a) all of the other young women

28   whose lives they have irreparably damaged earlier by Defendants' video publication and promotion; (b)

                                              23

1   all of the other young women imploring them to stop and to take down their videos; and (c) all of the

2   complaints that they (and their legal counsel) have received from other young women and their

3   families.

4   122.    Defendants owed Plaintiffs duties to disclose this information as, among other reasons, they

5   provided some information to Plaintiffs during correspondence, and during contract and business

6   negotiations.

7   123.    Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their

8   website, their business, their video distribution, and the likelihood of injury to and harassment of

9   Plaintiffs.

10   124.    Defendants concealed these facts with the intent to induce Plaintiffs to make the adult videos.

11   125.    The concealed information was objectively material to any reasonable person and caused

12   Plaintiffs to make the adult videos.

13   126.    Plaintiffs justifiably relied on Defendants' false representations.

14   127.    Defendants' failure to disclose these material facts to Plaintiffs was substantial factor in causing

15   their harm.  Had Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

16   128.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

17   Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

18   plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

19   blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

20   embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

21   the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

22   were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

23   restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff

24   also seek injunctive relief.

25   129.    Defendants were acting individually and on behalf of each other when they made each of these

26   omissions and, when one of them made an omission, the others ratified the omission and/or knew of the

27   omission and failed to correct it.

28   130.    Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

1   Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

2   (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

3   via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

4   forth above.

5   131.   Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

6   of punitive damages pursuant to Section 3294 of the California Civil Code.

7                                    **THIRD CAUSE OF ACTION**

8                                         **FALSE PROMISE**

9                   **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

10  132.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

11  though set forth herein, including, without limitation, the agency and alter ego allegations.

12  133.   During Plaintiffs' discussions and negotiations with Defendants before each made an adult

13  video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

14  agreements), Defendants made promises to Plaintiffs that: they would not post the videos online (or

15  cause such publication), they would not distribute the videos in the United States (or cause such

16  publication), and Plaintiffs would remain anonymous.  Defendants promised Plaintiffs that would not

17  cause the videos to be posted online or distributed in the United States.  Defendants promised Plaintiffs

18  there was nothing to worry about, promised privacy, and promised nobody they knew would see the

19  videos.  Finally, Defendants represented they would pay Plaintiffs certain sums of money; as set forth

20  above, some of Plaintiffs did not receive the sums represented.

21  134.   Defendants' affirmative promises were of material fact and important as Plaintiffs would not

22  have otherwise made the adult videos.

23  135.   Defendants did not intend to perform these promises at the times they made them, and have not

24  performed as promised.  Defendants knew their promises were false and merely wanted Plaintiffs to

25  make the videos for Defendants' benefit.

26  136.   Defendants intended to induce Plaintiffs to alter their positions in reliance on the promises by

27  making the adult videos.

28  137.   Plaintiffs justifiably and reasonably relied on Defendants' promises and Defendants' affirmative

                                              25
                                         **COMPLAINT**

1  promises were an immediate cause of Plaintiffs' conduct.

2  138.   Defendants did not perform the promises.

3  139.   As an actual and proximate cause of Defendants' false promises and Plaintiffs' justifiable

4  reliance, Plaintiffs were damaged in that Defendants posted the videos online, distributed the videos in

5  the United States, and released Plaintiffs' names.

6  140.   Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

7  Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

8  plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

9  blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

10  embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

11  the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

12  were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

13  restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff

14  also seek injunctive relief.

15  141.   Defendants were acting individually and on behalf of each other when they made each of these

16  omissions and, when one of them made a false promise, the others ratified it, and/or knew of the false

17  promise and failed to correct it.

18  142.   Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

19  Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

20  (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

21  via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

22  forth above.

23  143.   Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

24  of punitive damages pursuant to Section 3294 of the California Civil Code.

25  **FOURTH CAUSE OF ACTION**

26  **NEGLIGENT MISREPRESENTATION**

27  **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

28  144.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

26

1 though set forth herein, including, without limitation, the agency and alter ego allegations.

2 145. During Plaintiffs' discussions and negotiations with Defendants before each made an adult

3 video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

4 agreements), Defendants represented: they would not post the videos online (or cause such publication),

5 they would not distribute the videos in the United States (or cause such publication), and that Plaintiffs

6 would remain anonymous. Defendants further represented at all times to Plaintiffs that would not cause

7 the videos to be posted online or distributed in the United States. Defendants at all times assured

8 Plaintiffs there was nothing to worry about, promised privacy, and said nobody Plaintiffs knew would

9 see the videos. Defendants caused other women to reiterate these representations to Plaintiffs.

10 146. The representations were false and although Defendants may have honestly believed that the

11 representations were true, they had no reasonable grounds for believing the representations were true

12 when they made them.

13 147. Defendants intended that Plaintiffs would rely on the above representations in their decisions to

14 make the adult videos.

15 148. Plaintiffs reasonably relied on Defendants' misrepresentations in their decisions to make the

16 adult videos.

17 149. Plaintiffs' reliance on Defendants' false representations was a substantial factor in causing their

18 harm in that Defendants posted their videos online, published their videos in the United States, and

19 released Plaintiffs' names.

20 150. Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

21 Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

22 plaintiff, and consists of, at least, compensatory damages, including, but not limited to the difference in

23 value in what the parties exchanged (i.e., the money Plaintiffs received for what they were told was

24 *limited* distribution and what Defendants profited through *global* distribution).

25 ///

26 ///

27 ///

28 ///

27

COMPLAINT

## FIFTH CAUSE OF ACTION

## MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]

**(JANE DOE NO. 17, JANE DOE NO. 18, JANE DOE NO. 19, AND JANE DOE NO. 20 against**

**All Named Defendants and ROES 1 - 500)**

151.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

152.    Defendants used Plaintiffs' names, likenesses, and/or identities without Plaintiffs' permission, though fraud, and/or without promised consideration, including, without limitation, on Defendants' websites (e.g., www.girlsdoporn.com), social media, and advertising.  Finally, any release purporting to give Defendants unconditional use of The Plaintiff's videos is unenforceable due to unclear terms, a lack of mental capacity/competence, mistake, undue influence, and/or Defendants' unclean hands.

153.    Defendants' gained a commercial benefit by using Plaintiffs' names, likenesses, and/or identities.

154.    Following Defendants' initial publication of each of Plaintiffs' videos on their own websites, and through the date of this amended complaint, Defendants have republished and redirected the misappropriated content to different websites and to different audiences.  Defendants have republished Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where Defendants post varying and edited snippets of Plaintiffs' videos with embedded links and advertisements to Defendants' websites; these varying and edited snippets of Plaintiffs' videos have been viewed millions of times by hundreds of thousands of different individuals.  Defendants conduct the same form of repetitive mass advertising on their fan blogs and forums, and on their own social media.

155.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

28

COMPLAINT

1    the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

2    were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

3    restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

4    also seek injunctive relief.

5    156.    Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants

6    had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant

7    to their agreement, Defendants intentionally misappropriated Plaintiffs' names, likenesses, and/or

8    identities at the time and place and via the manner set forth above; and (3) pursuant to their agreement,

9    Defendants injured Plaintiffs, as set forth above.

10    157.    Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an

11    award of punitive damages pursuant to Section 3294 of the California Civil Code.

12    <strong><u>SIXTH CAUSE OF ACTION</u></strong>

13    <strong><u>MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]</u></strong>

14    <strong>(JANE DOE NO. 17, JANE DOE NO. 18, JANE DOE NO. 19, AND JANE DOE NO. 20 against</strong>

15    <strong>All Named Defendants and ROES 1 - 500)</strong>

16    158.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

17    though set forth herein, including, without limitation, the agency and alter ego allegations.

18    159.    On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, Defendants

19    knowingly used Plaintiffs' names, voices, photographs, video, and likenesses to advertise or sell

20    subscriptions to Defendants' businesses.

21    160.    Defendants' use did not occur in connection with a news, public affairs, or sports broadcast or

22    account, or with a political campaign.

23    161.    Defendants did not have Plaintiffs' consent, obtained it though fraud, and/or without promised

24    consideration. Finally, any release purporting to give Defendants unconditional use of The Plaintiff's

25    videos is unenforceable due to unclear terms, a lack of mental capacity/competence, mistake, undue

26    influence, and/or Defendants' unclean hands.

27    162.    Defendants use of Plaintiffs' names, voices, photographs, video, and likenesses was directly

28    connected to Defendants' commercial purpose.

29
COMPLAINT

163.     Following Defendants' initial publication of each of Plaintiffs' videos on their own websites, and through the date of this amended complaint, Defendants have republished and redirected the misappropriated content to different websites and to different audiences.  Defendants have republished Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where Defendants post varying and edited snippets of Plaintiffs' videos with embedded links and advertisements to Defendants' websites; these varying and edited snippets of Plaintiffs' videos have been viewed millions of times by hundreds of thousands of different individuals.  Defendants conduct the same form of repetitive mass advertising on their fan blogs and forums, and on their own social media.

164.     Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages and/or statutory damages, including, disgorgement of profits; (c) attorney fees; and (d) restitution / unjust enrichment damages (i.e., the money Plaintiffs received for what they were told was *limited* distribution and what Defendants profited through *global* distribution).  The Plaintiff also seek injunctive relief.

165.     Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant to their agreement, Defendants intentionally misappropriated Plaintiffs' names, voices, photographs, video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set forth above.

166.     Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

///

///

///

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(JANE DOE NO. 17, JANE DOE NO. 18, JANE DOE NO. 19, AND JANE DOE NO. 20 against**

**All Named Defendants and ROES 1 - 500)**

167.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

168.    Defendants concealed the fact they run an online pornography website. In order to get Plaintiffs to make adult videos, Defendants lied to Plaintiffs about the distribution. They assured Plaintiffs there was nothing to worry about and promised privacy. Defendants knew all of the other young women whose lives they have irreparably damaged earlier by Defendants' video publication and promotion; all of the other young women imploring them to stop and to take down their videos; and all of the complaints and they (and their legal counsel) have received from other young women and their families. Defendants used Plaintiffs' videos and names to commercially promote their websites and enrich themselves. This conduct was outrageous as it exceeded all bounds of common decency usually tolerated by a civilized society.

169.    Defendants intended to inflict the injuries stated herein upon Plaintiffs, or the injuries were substantially certain to result from Defendants' conduct.

170.    Defendants' outrageous conduct actually and proximately caused Plaintiffs to suffer serious emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, fear, and – for some - consideration of suicide. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff.

171.    Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant to their agreement, with their outrageous conduct, Defendants intentionally inflicted severe emotional distress upon Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set forth above.

172.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

31

1    of punitive damages pursuant to Section 3294 of the California Civil Code.

2    **EIGHTH CAUSE OF ACTION**

3    **NEGLIGENCE**

4    **(JANE DOE NO. 17, JANE DOE NO. 18, JANE DOE NO. 19, AND JANE DOE NO. 20 against**

5    **All Named Defendants and ROES 1 - 500)**

6    173.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

7    though set forth herein, including, without limitation, the agency and alter ego allegations.

8    174.    In their transactions and dealings with The Plaintiff, Defendants had a duty to use ordinary care

9    and to prevent injury to Plaintiffs based on the foreseeability of harm to Plaintiffs, the degree of

10    certainty The Plaintiff would suffer injuries, the closeness of connection between Defendants' actions

11    and Plaintiffs' injuries, the moral blame attached to Defendants' conduct, the policy of preventing

12    future harm, and the extent of Defendants' burden and the consequences to the community of imposing

13    duty and liability.

14    175.    Defendants' above-described actions and omissions (e.g., lying about and concealing the fact

15    they run an online pornography website upon which they planned to post the videos; and assuring

16    Plaintiffs there was nothing to worry about – all while knowing that release of the videos would cause

17    harassment and severe emotional damage), breached the duty of care.

18    176.    Defendants' breach of the duty of care actually and proximately caused Plaintiffs harm in an

19    amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a)

20    serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of

21    sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame,

22    and fear; (b) compensatory damages, including, but not limited to the difference in value in what the

23    parties exchanged (i.e., the money Plaintiffs received for what they were told was *limited* distribution

24    and what Defendants profited through *global* distribution); and (c) restitution / unjust enrichment

25    damages (same calculation as the compensatory damages). Plaintiffs also seek injunctive relief.

26    ///

27    ///

28    ///

## NINTH CAUSE OF ACTION

## BREACH OF CONTRACT

**(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

177.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

178.    Plaintiffs entered into oral agreements with Defendants whereby Plaintiffs agreed to make their respective videos with the conditions: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and they would ensure their privacy and anonymity.

179.    Plaintiffs performed all of their obligations under the agreements; in particular, they participated in the video shoots.

180.    All conditions required for Defendants' performances occurred, but they breached the contract by distributing and/or causing the videos to be posted online and in the United States, and by failing to ensure Plaintiffs' privacy and anonymity.  Also, as set forth above, some of Plaintiffs did not receive the sums agreed upon for their video(s).

181.    As an actual and proximate cause of Defendants' breach, Plaintiffs were damaged in an amount to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

## TENTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL

**(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

182.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

183.    Defendants made clear and unambiguous promises to Plaintiffs that: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and they would ensure their privacy and anonymity.

184.    Plaintiffs relied on these promises in that they made the videos.

185.    Plaintiffs' reliance was both reasonable and foreseeable.

186.    Plaintiffs were injured as a result in that Defendants distributed or cause the distribution of the

33

COMPLAINT

1   videos online and in the United States, and failed to ensure Plaintiffs' privacy and anonymity.

2   187.   Injustice can be avoided only by an award of compensatory and consequential damages in the

3   amount of, at least, $500,000 per plaintiff.

4   **ELEVENTH CAUSE OF ACTION**

5   **VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**

6   **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

7   188.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

8   though set forth herein, including, without limitation, the agency and alter ego allegations.

9   189.   Defendants' conduct constitutes a "business practice" under Business & Professions Code,

10   Section 17200, et seq. ("Section 17200").

11   190.   Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it

12   violates common and California statutory law. Defendants' "business practice" constitutes

13   "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the

14   public.

15   191.   Defendants intended their conduct to cause – and it did so cause – Plaintiffs to suffer economic

16   injury in fact and caused Defendants to receive ill-gotten gains. Plaintiffs were damaged – and

17   Defendants unjustly enriched - in an amount to be proven at trial, but believed to be, at least, $500,000

18   per plaintiff. As such, Plaintiffs have individual standing under Section 17200.

19   192.   Pursuant to the remedies provisions of Section 17200: Defendants owe Plaintiffs restitution of

20   Plaintiffs' property (e.g., videos and images); the Court should enjoin Defendants' violative conduct;

21   and the Court should issue the maximum civil penalties permitted.

22   **TWELFTH CAUSE OF ACTION**

23   **FRAUDULENT TRANSFER**

24   **(All Plaintiffs against All The Named Defendants and ROES 475 - 550)**

25   193.   Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

26   though set forth herein, including, without limitation, the agency and alter ego allegations.

27   194.   Plaintiffs have a right to payment from Defendants for the claims in this action and are, thus,

28   creditors.

34
COMPLAINT

1    195.    On information and belief, Defendants transferred Plaintiffs' videos and the revenue generated

2    therefrom to defendant Oh Well Media Limited, Sidle Media Limited, Greenhill Services, Ltd., and or

3    Bubblegum Films, Ltd (sham entities located in Vanuatu used to hide assets) and ROES 200 – 250 with

4    the intent to hinder, delay, or defraud Plaintiffs in their collection efforts on the subject claims.

5    196.    Plaintiffs were harmed as, among other things, they still have not received compensation for the

6    claims in this action.

7    197.    Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

8    198.    Defendants' actions were fraudulent and malicious and therefore warrant an award of punitive

9    damages pursuant to Section 3294 of the California Civil Code.

10    **THIRTEENTH CAUSE OF ACTION**

11    **DECLARATORY RELIEF**

12    **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

13    199.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

14    though set forth herein, including, without limitation, the agency and alter ego allegations.

15    200.    An actual controversy exists over the enforceability of all agreements executed by the parties to

16    this lawsuit, including any release executed by Plaintiffs purporting to give Defendants the right to use

17    their likeness.

18    201.    In addition, an actual controversy exists over whether defendants are alter egos and whether

19    they may be held liable for each other's actions or inactions.

20    **PRAYER FOR RELIEF**

21    WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

22    A.      For compensatory damages of, at least, $1,000,000.00 per plaintiff;

23    B.      For restitution and disgorgement of ill-gotten gains/unjust enrichment;

24    C      For civil penalties;

25    D.      For an injunction;

26    E.      For punitive damages;

27    F.      For attorney fees;

28    G.      For prejudgment interest;

H.    For costs of suit;

I.    To set aside all fraudulent transfers of assets;

J.    A judicial declaration that all contracts or releases executed by Plaintiffs are unenforceable as a matter of law;

K.    A judicial declaration that defendants are alter egos of one another and may be held liable for each other's debts and obligations; and

L.    For such other and further relief as the Court deems just and proper.

Date: November 7, 2017                         By: */s/ Brian M. Holm*
                                               Robert Hamparyan
                                               John J. O'Brien
                                               Brian M. Holm
                                               **Attorneys for Plaintiffs**

2017 SEP 7 PM 3:30

F I L E D
Clerk of the Superior Court

SEP 07 2017

By: R. BABERS, Deputy

1 | Robert Hamparyan (State Bar No. 181934)
ROBERT HAMPARYAN, APC
2 | 275 W. Market Street
San Diego, CA 92101
3 | t. 619.550.1355
e. robert@hamparyanlawfirm.com
4 |

5 | John J. O'Brien (State Bar No. 253392)
THE O'BRIEN LAW FIRM, APLC
6 | 750 B Street, Suite 3300
San Diego, CA 92101
7 | t. 619.535.5151
e. john@theobrienlawfirm.com
8 |

9 | Brian M. Holm (State Bar No. 255691)
HOLM LAW GROUP, PC
10 | 12636 High Bluff Drive, Suite 400
San Diego, CA 92130
11 | t. 858.707.5858
e. brian@holmlawgroup.com
12 |

**Attorneys for Plaintiffs**

13 |

14 |           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15 |                   **COUNTY OF SAN DIEGO**

16 | JANE DOE NO. 15, an individual; JANE DOE   CASE NO.: **37-2017-00033321-CU-FR-CTL**
17 | NO. 16, an individual;

18 |              Plaintiffs,          **COMPLAINT**

19 | v.                                **[JURY TRIAL DEMANDED]**

20 | GIRLSDOPORN.COM, a business        1. Intentional Misrepresentation
organization, form unknown; MICHAEL J.   2. Fraudulent Concealment
21 | PRATT, an individual; ANDRE GARCIA, an   3. False Promise
individual; MATTHEW WOLFE, an        4. Negligent Misrepresentation
22 | individual; BLL MEDIA, INC., a California   5. Misappropriation of Name & Likeness
corporation; BLL MEDIA HOLDINGS, LLC,      [Common Law]
23 | a Nevada limited liability company; DOMI   6. Misappropriation of Name & Likeness
PUBLICATIONS, LLC, a Nevada limited        [Civ. C. § 3344]
24 | liability company; EG PUBLICATIONS, INC.,   7. Intentional Infliction of Emotional Distress
a California corporation; M1M MEDIA, LLC,   8. Negligence
25 | a California limited liability company;   9. Breach of Contract
BUBBLEGUM FILMS, INC., a business    10. Promissory Estoppel
26 | organization, form unknown; OH WELL    11. Unlawful & Fraudulent Business Practices
MEDIA LIMITED, a business organization,      [Bus. & Prof. Code §17200]
27 | form unknown; MERRO MEDIA, INC., a     12. Fraudulent Transfer
California corporation; MERRO MEDIA
28 |

1

**COMPLAINT**

1  HOLDINGS, LLC, a Nevada limited liability
   company; CLOCKWORK PRODUCTIONS,
2  INC., a business organization, form unknown;
   UHD PRODUCTIONS, LLC, a Wyoming
3  limited liability company; BUBBLEGUM
   FILMS, LTD., a business organization, form
4  unknown; GREENHILL SERVICES, LTD., a
   business organization, form unknown; SIDLE
5  MEDIA LIMITED, a business organization,
   form unknown; RIVA YOUSIF, an individual;
6  THEODORE GYI, an individual; VALERIE
   MOSER, an individual; CLIFF ELLIS, an
7  individual; KAILYN WRIGHT, an individual;
   DOUGLAS WIEDERHOLD, an individual;
8  and ROES 1 - 550, inclusive,
9
             Defendants.
10

11

12       This action is intricately related to San Diego Superior Court Case No.: 37-2016-19027-CU-FR-

13  CTL, where 14 similarly-situated young women sue the same fraudulent pornography business.

14                                              ----

15       Plaintiffs JANE DOE NO. 15 and JANE DOE No. 16, inclusive, individuals, (all plaintiffs

16  collectively, "Plaintiffs") bring this complaint against defendants GIRLSDOPORN.COM, a business

17  organization, form unknown; MICHAEL J. PRATT, an individual; ANDRE GARCIA, an individual;

18  MATTHEW WOLFE, an individual; BLL MEDIA, INC., a California corporation; BLL MEDIA

19  HOLDINGS, LLC, a Nevada limited liability company; DOMI PUBLICATIONS, LLC, a Nevada

20  limited liability company; EG PUBLICATIONS, INC., a California corporation; M1M MEDIA, LLC,

21  a California limited liability company; BUBBLEGUM FILMS, INC., a business organization, form

22  unknown; OH WELL MEDIA LIMITED, a business organization, form unknown; MERRO MEDIA,

23  INC., a California corporation; MERRO MEDIA HOLDINGS, LLC, a Nevada limited liability

24  company; CLOCKWORK PRODUCTIONS, INC., place of incorporation unknown; UHD MEDIA,

25  INC., place of incorporation unknown; BUBBLEGUM FILMS, LTD., place of incorporation unknown;

26  GREENHILL SERVICES, LTD., place of incorporation unknown; SIDLE MEDIA LIMITED, place of

27  incorporation unknown; RIVA YOUSIF, an individual; THEODORE "TEDDY" GYI, an individual;

28  VALERIE MOSER, an individual; CLIFF ELLIS, an individual; and ROES 1-550 (all defendants

                                                2
                                            COMPLAINT

1  collectively, "Defendants").

2                                    **THE PARTIES**

3  **Plaintiffs**

4  1.      Plaintiff JANE DOE NO. 15 is an individual residing in the State of Colorado.

5  2.      Plaintiff JANE DOE NO. 16 is an individual residing in the State of Minnesota.

6  **Defendants**

7  3.      GIRLSDOPORN.COM is a business organization, form unknown, with its principal place of

8  business in San Diego County, California.

9  4.      BLL MEDIA, INC. is a California corporation with its principal place of business in San Diego

10  County, California.

11  5.      BLL MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal place

12  of business in Clark County, Nevada.

13  6.      DOMI PUBLICATIONS, LLC is a Nevada limited liability company with its principal place of

14  business in Clark County, Nevada.

15  7.      EG PUBLICATIONS, INC. is a California corporation with its principal place of business in

16  San Diego County, California.

17  8.      M1M MEDIA, LLC is a California limited liability company with its principal place of business

18  in San Diego County, California.

19  9.      BUBBLEGUM FILMS, INC. is a business organization, form unknown, with, on information

20  and belief, its "principal place of business" in Port Vila, Vanuatu.

21  10.     OH WELL MEDIA LIMITED is a business organization, form unknown, with, on information

22  and belief, its "principal place of business" in Port Vila, Vanuatu.

23  11.     MERRO MEDIA, INC. is a California corporation with its principal place of business in San

24  Diego County, California.

25  12.     MERRO MEDIA HOLDINGS, LLC is a Nevada limited liability company with its principal

26  place of business in Clark County, Nevada.

27  13.     CLOCKWORK PRODUCTIONS, INC. is a corporation.  Plaintiffs are unaware of what state or

28  foreign nation it is incorporated in.

1   14.     UHD PRODUCTIONS, LLC is a limited liability company organized in the State of Wyoming

2   with its principal place of business in San Diego, California.

3   15.     BUBBLEGUM FILMS, LTD is a business organization, form unknown, with, on information

4   and belief, its "principal place of business" in Port Vila, Vanuatu.

5   16.     GREENHILL SERVICES, LTD. is a corporation.  Plaintiffs are unaware of what state or

6   foreign nation it is incorporated in.

7   17.     SIDLE MEDIA LIMITED is a corporation.  Plaintiffs are unaware of what state or foreign

8   nation it is incorporated in.

9   18.     On information and belief, GIRLSDOPORN.COM, BLL MEDIA, INC., BLL MEDIA

10  HOLDINGS, LLC, DOMI PUBLICATIONS, LLC, EG PUBLICATIONS, INC., M1M MEDIA, LLC,

11  BUBBLEGUM FILMS, INC., OH WELL MEDIA LIMITED, MERRO MEDIA, INC., MERRO

12  MEDIA HOLDINGS, LLC; CLOCKWORK PRODUCTIONS, INC., UHD PRODUCTIONS, LLC,

13  BUBBLEGUM FILMS, LTD., GREENHILL SERVICES, LTD, SIDLE MEDIA LIMITED and ROES

14  1 - 250 ("THE ENTITY DEFENDANTS") are entities in the business of online pornography

15  production, distribution, and sales.  On information and belief, THE ENTITY DEFENDANTS own

16  and/or operate numerous online pornography websites, including, without limitation,

17  www.girlsdoporn.com, www.girlsdotoys.com and www.mompov.com.

18  19.     MICHAEL J. PRATT ("PRATT") is an individual residing in San Diego County, California.

19  On information and belief, he is a sales agent and representative, and the majority or sole shareholder,

20  managing member, and/or chief executive officer of each of THE ENTITY DEFENDANTS.

21  20.     ANDRE GARCIA ("GARCIA") is an individual residing in San Diego County, California.  On

22  information and belief, he is a sales agent and representative for each of THE ENTITY DEFENDANTS

23  – as well as a participant and "actor" in their pornography.

24  21.     MATTHEW WOLFE ("WOLFE") is an individual residing in San Diego County, California.

25  On information and belief, he is a sales agent and representative for each of THE ENTITY

26  DEFENDANTS – as well as a videographer of their pornography.

27  22.     RIVA YOUSIF ("YOUSIF") is an individual residing in San Diego County, California.

28  23.     THEODORE GYI ("GYI") is an individual residing in San Diego County, California.

24.   VALERIE MOSER ("MOSER") is an individual residing in San Diego County, California.

25.   CLIFF ELLIS ("ELLIS") is an individual, who at all relevant times discussed herein, resided in San Diego County, California.

26.   DOUGLAS WIEDERHOLD ("WIEDERHOLD") is an individual that Plaintiffs are informed and believe and thereon allege resides in Clark County, Nevada.

27.   KAILYN WRIGHT ("WRIGHT") is an individual that Plaintiffs are informed and believe and thereon allege lives in Maricopa County, Arizona.

28.   On information and belief, ROES 251 – 500 are other shareholders, members, officers, sales agents, representatives, videographers, and/or "actors" of THE ENTITY DEFENDANTS.

29.   Plaintiffs are ignorant of the true names, capacities, and/or liabilities of defendants sued herein as ROES 1 - 550, inclusive, and therefore sue these defendants by such fictitious names and allege that ROES 1 - 550 are responsible in some manner for the occurrences herein alleged.  Plaintiffs will amend this complaint to allege their true names, capacities, and/or liabilities when ascertained.

30.   In doing all things alleged herein, including, without limitation, corresponding, negotiating, and contracting with Plaintiffs, Defendants were agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees of each other in the acts and/or omissions herein alleged.  Defendants were and are acting within the course and scope of their authority as such agents, servants, representatives, partners, joint venturers, affiliates, parents, subsidiaries, and/or employees and with the permission, authorization, consent, and ratification of each other.

31.   In doing all things alleged herein, including, without limitation, corresponding, negotiating, and contracting with Plaintiffs, THE ENTITY DEFENDANTS, PRATT, GARCIA, WOLFE, GYI, MOSER, YOUSIF, ELLIS, WRIGHT, and ROES 251 – 550 acted as alter egos of each other.  In particular, they: (a) commingled their funds and other assets, failed to segregate funds between them, and have without authorization diverted corporate funds and assets for noncorporate uses; (b) treated each other's assets as their own; (c) issued shares of one other to themselves and third parties haphazardly and without authority; (d) held themselves out as being personally liable for the debts of each other; (e) failed to maintain minutes and corporate records, and confused of the records of the separate entities; (f) used the same business locations and employed the same employees; (g) failed to

5

1   adequately capitalize the entities; (h) used each other as a conduit for a single venture of themselves; (i)

2   failed to maintain arm's length relationships among themselves; and (j) diverted assets without

3   consideration from/to one another to the detriment of creditors, including Plaintiffs. Recognition of the

4   privilege of separate existences between these defendants would promote injustice, unfairness, and

5   fraud. Any separateness is to be disregarded. As such, Defendants are jointly and severally liable in

6   this action as alter egos.

7                                    **JURISDICTION AND VENUE**

8   32.    This Court has jurisdiction over Defendants as they are physically present in San Diego County,

9   California and/or because Defendants committed the subject acts and omissions in San Diego County,

10  California.

11  33.    Venue is proper as San Diego County is where Defendants reside and have their principal place

12  of business, the subject contracts were entered into, and/or the obligations and liability arose.

13                                    **FACTUAL ALLEGATIONS**

14  **Defendants' Business Scam: Lie to Young Women and Con them into Online Pornography**

15  34.    Together, PRATT, GARCIA, WOLFE, WIEDERHOLD, GYI, MOSER, YOUSIF, ELLIS,

16  WRIGHT and the rest of Defendants operate a San Diego-based pornography business, which

17  irreparably damages the lives of young women from San Diego and across the country. The operation

18  appears to be started by PRATT and WIEDERHOLD around 2010.

19  35.    Defendants collectively run pornography websites, the main website being

20  www.girlsdoporn.com, a subscription-based amateur pornography website, which gets more traffic than

21  the San Diego Padres website. Defendants also collectively operate subscription based websites

22  www.mompov.com and www.girlsdotoys.com. In addition, Defendants have numerous free websites

23  where they publish short clips of the videos as advertisements for their subscription-based websites.

24  Defendants also run advertising websites that link to each of their subscription-based websites. For

25  example, Defendants' website www.girls-do-porn.com, which features Plaintiffs' likenesses, contains

26  advertisements and links to www.mompov.com. Likewise, Defendants' website www.mompov.net,

27  contains advertisements and links to www.girlsdoporn.com.

28  36.    Although Defendants use several entities to run the three subscription websites, they are

                                          6
                                    **COMPLAINT**

1  inextricably linked as a single operation run by a handful of people out of the same office space in

2  downtown San Diego, California, operated by the same credit card processing companies, and utilizing

3  the same sham offshore entities set up by the infamous GT Group, Ltd, which has laundered billions of

4  dollars for nefarious business operations such as the Sinoalan Cartel and Ukrainian gun runners.   GT

5  Group Ltd. operates out of the tiny Pacific island nation, Vanuatu.  It incorporates thousands of shell

6  companies that, on paper, are owned by locals.  GT Group Ltd pays locals on Vanuatu to sign the

7  documents necessary to keep its shell companies in good standing with the local as the sole owner,

8  officer, director and shareholder.  However, the locals play no part in the shell companies other than

9  signing the documents.  GT Group Ltd then contracts with people seeking to utilize the anonymity of

10  an offshore company.  Defendant Oh Well Media Limited, for example, is owned on paper by Abigail

11  Kalopung—a local on Vanuatu.  She is the sole shareholder, officer and director of Oh Well Media Ltd.

12  on paper.  Defendants, however, control Oh Well Media Limited Defendants, giving them the ability to

13  open bank accounts and enter into contracts in the company's name.  Defendants' website indicates that

14  it uses Oh Well Media Limited as its 2257 custodian.[1]  Abigail Kalopung appears to own about fifty of

15  these shell companies on paper.

16  37.    The young women appearing in Defendants' amateur pornography come from good families,

17  have never appeared in pornography before, are often paying their way through school, and are just

18  beginning their careers and adulthood.  So, there is only way Defendants can convince these women to

19  have sex on film or produce other adult video material: Defendants lie to them.

20  38.    Defendants advertise themselves across the country as a legitimate Southern California

21  modeling agency - on Craigslist and other websites.  Defendants' Craigslist advertisements fail to even

22  mention that they are an online pornography company.  Instead, they claim they are seeking models,

23  and often times contain a link in the Craigslist advertisement to www.beginemodelling.com or

24  www.modelinggigs.com.  Neither of these websites mention anything about pornography.  Using the

25  impression that they are applying for a typical modeling gig for, at most, swimsuit or lingerie, these

26  ---

[1] 18 U.S.C. 2257 requires pornography companies to collect certain information from all persons appearing in the
27  pornographic films the produce to ensure they are over 18 years of age.  Despite being operated out of San Diego,
Defendants list Oh Well Media Limited, Sidle Media Ltd. and Bubblegum Films, Inc. as their 2257 custodians on their
28  websites www.girlsdoporn.com, www.girlsdotoys.com and www.mompov.com, respectively.  The entities have the same
address in Vanuatu--- Poteau 540 208, Ave Due Capitain Cook, Seaside, Port Vila, Vanuatu 65774.

7

1  sham websites lure women into providing Defendants with pictures of themselves and their name, age,

2  height, weight, state, city, email, and phone number. If Defendants feel they have attracted a proper

3  target, they reach out to the women by phone and/or email in order to feel the women out more. Once

4  on the phone, Defendants are able to brazenly lie to the women without the fear of putting their lies in

5  writing, and in hopes of being able to cajole the women into filming a pornography.

6  39.    When the young women ask Defendants where they will distribute the video, Defendants assure

7  them that they will not post the video online (or cause it to be so posted), they will not distribute the

8  video in the United States (or cause is to be so distributed), and they will keep each woman anonymous.

9  Defendants represent the videos will be on DVDs overseas (usually in Australia or New Zealand since

10  Defendants' themselves are from there and have an accent) and for private use.

11  40.    If still not convinced by their lies, Defendants provide "references" who Defendants claim

12  previously shot a video (but, whose video is not yet released), to vouch for Defendants and promise the

13  same security, limited distribution, and anonymity.  In addition, Defendants use several references that

14  either have not shot a video, or who know the videos are being posted online but are comfortable lying

15  to the prospective victims in order to earn a few dollars. Defendants coach the references on how to

16  handle various questions from the prospective women. As further incentive to lie to the women,

17  Defendants pay the reference more money if the prospective victim they speak with actually ends up

18  filming a video. Defendant WRIGHT is such an individual.  WRIGHT filmed a video for Defendants

19  that was released in the Spring of 2015.  WRIGHT was aware of Defendants' websites, that the

20  women's names would be released, but nevertheless acted as a reference for Defendants and repeatedly

21  lied to prospective victims by telling them the videos would not be posted online, and would instead be

22  released on DVDs in foreign countries.

23  41.    In their discussions with these young woman, Defendants use aliases and mention nothing about

24  their website(s) where they plan to post the videos, or the websites on which they plan to publically

25  promote and advertise the videos. Defendants also mention nothing about: (a) all of the other young

26  women whose lives they have irreparably damaged earlier by Defendants' video publication and

27  promotion (b) all of the other young women imploring them to stop and to take down their videos; and

28  (c) all of the complaints that they (and their legal counsel) have received from other young women and

8
COMPLAINT

1   their families.

2   42.    After Defendants lie to the young women, they book rooms at upscale San Diego County hotels,

3   most often at major high-end chains in downtown San Diego (e.g., Hilton, Hyatt, Marriot).  If the

4   young women are not in Southern California, Defendants pay for their airfare to San Diego.

5   43.    Defendant YOUSIF, MOSER or GARCIA typically pick the women up from the airport.  In the

6   car, they reassure the women Defendants will not publish the videos on the Internet.

7   44.    Then, without hotel knowledge and consent, and, on information and belief, without any license

8   or permit whatsoever, Defendants sneak videography equipment into the hotel – hiding the equipment

9   in large suitcases – in order to produce the amateur pornography.

10  45.    Once the young women are confined to the hotel room, Defendants tell the women they look

11  nervous, need to relax and then try to persuade them to drink alcohol and/or smoke marijuana, which

12  GARCIA consumes regardless of whether the women choose to do so.  YOUSIF acts as the makeup

13  artist for most women.  While applying makeup, YOUSIF again reassures the women the video will not

14  be released online, and generally appeases any concerns the women express.

15  46.    Before filming begins, GARCIA asks the women to take off their clothes so that they may take

16  pictures to send to the "boss."  After sending the pictures to the boss, Defendants routinely tell the

17  women, after they have flown to San Diego, are naked, and confined in a hotel room, that the boss

18  cannot pay them the agreed upon price because the woman has cellulite, a bruise, breast reduction

19  scars, too small breasts, etc.  Defendants routinely accuse the women of sending them misleading

20  pictures. If the woman refuses to shoot the film for less money, Defendants threaten to sue the woman

21  for the price of the flight and hotel room Defendants had paid for or threaten to cancel the woman's

22  return flight, which Defendants booked and have control over.   The vast majority of women flown to

23  San Diego are paid less than the agreed upon amount when they decided to board a plane and fly across

24  the country.

25  47.    After the repeated misrepresentations, and sometimes after alcohol and marijuana Defendants

26  provide, and while confined in a hotel room with unknown men, Defendants present the women with

27  documents to sign: (a) often under duress, coercion, and/or while distracting or rushing them; (b) while

28  continuing to orally misrepresent their intent for the video's eventual distribution; (c) while continuing

9

**COMPLAINT**

1   to fraudulently omit the material facts referenced herein (e.g., that they work for a San Diego-based

2   pornography website that has damaged other young women's lives); and (d) often lying about the

3   purported nature and effect of the documents. The documents are full of legalese and fail to mention

4   www.girlsdoporn.com. Instead, the documents indicate Defendants work for "Bubblegum Casting" or

5   "BLL Media." If the names of these companies are Googled, which several women have done when

6   presented with the documents, the companies have sham websites that give the impression they are

7   legit media companies. Nothing on either of these websites indicates the videos are destined for

8   www.girlsdoporn.com, any of Defendants' other websites, or free websites like www.pornhub.com.

9   48.     A few months after filming, despite their earlier representations, Defendants release the videos

10  on, at least, www.girlsdoporn.com (their monthly subscription-based website) and www.girls-do-

11  porn.com (a free website with clips of the videos that then directs the user to www.girlsdoporn.com).

12  Defendants also release/license all or part of the videos all over the Internet on a multiple of free

13  pornography websites – in part, to advertise www.girlsdoporn.com with the images and likenesses of

14  the young women. Defendants post clips of the videos on popular websites like www.youporn.com or

15  www.pornhub.com as advertisements. www.pornhub.com is the 37th most trafficked website in the

16  world, with more traffic than www.eBay.com, www.Bing.com and www.msn.com. Some of the clips

17  of the videos Defendants post as advertisements on www.pornhub.com and www.youporn.com have

18  been viewed over 40 million times.

19  49.     Interestingly, and by no accident, GARCIA'S (and any other male participant's) face is

20  intentionally cut from the frame and not shown in any video released by Defendants. Soon after the

21  release, someone who knows one of the young women will notify them the video is online. This

22  becomes the first time the young women have ever heard of Defendants' main website:

23  www.girlsdoporn.com.

24  50.     When the young women reach out to Defendants, they discover Defendants have changed their

25  phone numbers (they use disposable phones and/or changeable Internet phone numbers) and have also

26  used fake names (e.g., PRATT often uses "Mark," GARCIA often uses "Jonathan," and WOLFE often

27  uses "Ben" or "Isaac"). Defendants then refuse to talk to the women, hang up on them, and/or block

28  their calls. If the women get in contact with Defendants' counsel, they refuse to even give Plaintiffs

1    copies of any documents signed and threaten them with legal action.

2    51.      After Defendants cause the videos to be distributed online, Defendants, their subscribers, and/or

3    Internet stalkers release Plaintiffs' real names online, usually on blogs followed by "fans" and

4    subscribers of www.girlsdoporn.com. Defendants also post pictures of Plaintiffs on

5    www.pornwikileaks.com, which they bought in November 2015. The posts on

6    www.pornwikileaks.com also contain links to the women's social media accounts, their family's social

7    media accounts, high school information and other personal information that would garner attention

8    from people that want to find out intimate details about the women. Defendants then embed

9    advertisements inside the posts on www.pornwikileaks.com that link to their subscription websites. As

10    a result (of which Defendants are cognizant), third parties often then stalk, harass, bully, and blackmail

11    the young women and their families – online, by telephone, and in-person. A true and correct copy of

12    such an advertisement is attached hereto as Exhibit A.

13    52.      Once the woman's video is released, it spreads like wildfire through their hometowns, colleges,

14    high schools, and workplace. Within a day or two, almost every person the woman knows has been

15    sent a link to the video. Because of Defendants, some of these young women lose relationships with

16    friends, significant others, and family. Some lose or change jobs, and some are forced to leave their

17    school. Months to years after the videos, many are still harassed by strangers on the Internet. And

18    almost all have suffered severe psychological and emotional damage -- some have even considered and

19    attempted suicide.

20    53.      Below, are more specific facts and claims of two young women.

21    **JANE DOE NO. 15**

22    54.      In February 2016, Defendants posted an advertisement on Craigslist.com in the gigs/modeling

23    section for the Denver area, seeking young women for adult modeling. The advertisement included a

24    link to www.beginmodeling.com, which is a website the features modeling pictures, not pornography.

25    55.      That same month, JANE DOE NO. 15, having reviewed the www.beginmodeling.com website,

26    responded to the advertisement thinking it was for modeling.

27    56.      On February 19, 2016, JANE DOE NO. 15 received an email from "Jonathan N" from

28    jobs@beginmodeling.com and on behalf of Defendants. The email said,

This is a legitimate adult gig for an established Southern California company. You will make $4000 CASH for your first shoot which is paid up front, consistent work is also available, we offer solo toy scenes for $1000. You can do BOTH scenes in one trip for $5000.

...

None of your personal information will be given out in the video or afterwards , no names etc are used in the video.

[Formatting and sics in original.]

57.     A few days later, JANE DOE NO. 15 spoke to "Jonathan" on the telephone. During the conversation, Jonathan increased the previous offer by telling JANE DOE NO. 15 she would be paid $5,000 for the adult film by itself, which would involve five sexual positions, which would each take five to seven minutes to film. JANE DOE NO. 15 asked Jonathan several times during the phone call whether the video would be posted on the Internet and he assured her each time that it would not. Instead, Jonathan told her the video would be distributed on DVD in Australia and United Kingdom and would never be released or be seen in the United States. Jonathan also told JANE DOE NO. 15 that he would provide references with whom she could speak to answer any of her questions.

58.     On February 24, 2016 at 7:23pm, JANE DOE NO. 15 received an email from "Jonathan N jobs@beginmodeling.com" on behalf of Defendants that stated:

This is Kaitlin, she is 19.
She is from Scottsdale, AZ and has done 2 shoots with us.
We pretty much paid for her breast job and she is recovering.
She also worked with the same talent that you will work with
Here is her cell: (480) ***-****,

[Formatting and sics in original.] The email had photographs of defendant WRIGHT attached.

59.     An hour or so after this email, on February 24, 2016, JANE DOE NO. 15 received a text message from (480) ***-****, which is the same phone number Jonathan provided for WRIGHT. The following text exchange occurred between JANE DOE NO. 15 and WRIGHT (Defendants' paid agent):

WRIGHT:          Hey [Jane Doe No. 15] my name is Kailyn- Jonathon gave me your contact info! Im sure you're nervous or maybe even sketched out a little bit but you seriously have nothing to worry about! It's completely legit, once you land (if you're flying in from out of town that is*) you will be picked up in a nice car and taken to

12

COMPLAINT

1   where you are shooting your scene and all that OH AND they pay you in cash up front!

2   Okay so I am a very easily sketched out person when it comes to stuff like this I was very Nervous but once I got there I felt like a complete idiot because I realized I had nothing to worry about haha - lowkey was a little embarrassed haha (emojis omitted) The model is super hot which is nice (emojis omitted) and the photographer is super cool

3

4

5

6   It's you, the model, and the photographer in the room and no one else so it's not uncomfortable or anything which is chill Girl if you have any questions please **DO NOT**hesitate to text me or call or FaceTime or whatever!!!! (emojis omitted)

7

8

9   JANE DOE NO. 15:   Hey thank you for being so nice! That's exactly where I am at!

10   These aren't distributed in America right?

11   WRIGHT:   No prob! And no they aren't!

12   JANE DOE NO. 15:   Is there anyway they can get back to the US? I just have this shaky thing

13   with this guy I like love and I can't have anyone find out

14

15   WRIGHT:   No no no you're totally fine!

16   That's what I was worried about but there is absolutely no way anyone will find out

17

18   JANE DOE NO. 15:   Where are the videos going exactly? Like DVDs I think he said in Australia UK, but like DVDs or .. ?

19   WRIGHT:   Yeah so it goes out to wealthier countries; yea DVDs and stuff like that but nothing online!

20

21   [All sics in original.]   True and correct copies of these messages are attached hereto as <u>Exhibit B</u>.

22   60.     A few days later, JANE DOE NO. 15 video conferenced with "Jonathan" via FaceTime, who

23   she has now identified as defendant PRATT. During the conversation, PRATT again reassured her the

24   video would not be posted on the Internet.

25   61.     On February 28, 2016, JANE DOE NO. 15 flew to San Diego. She arrived around 8:30am. Her

26   return flight was scheduled for 7:45pm that same day. When she landed, nobody came to pick her up

27   as she had discussed with PRATT the prior day. She called the phone number she had for PRATT

28   several times but he did not answer. Eventually JANE DOE NO. 15 was picked up from the airport by

1   defendant GYI. The two drove around for a few hours while GYI tried to contact PRATT, who was not

2   answering his phone. While driving around, JANE DOE NO. 15 spoke with GYI about the distribution

3   of the video. GYI told her the videos would not be online and even went as far as to mention how he

4   liked the authenticity of making a hard copy version because online pornography seemed so cheap to

5   him. Eventually, around 1:00pm, GYI finally spoke with someone on the phone and the two went to a

6   hotel in San Diego.

7   62.      When she got in the room, it was just GYI and JANE DOE NO. 15. A makeup artist that JANE

8   DOE NO. 15 is informed and believes to be defendant YOUSIF, came into the room and did her

9   makeup. GARCIA eventually came in the room, but immediately went to the bathroom and began

10  vomiting. GARCIA came out of the bathroom and had paperwork with him. GARCIA reiterated that

11  the contract was stating that the video would not be online, would only be on DVD and sent to

12  countries outside of the United States. JANE DOE NO. 15 asked GARCIA if her name would ever be

13  released and he confirmed that it would not. While they were speaking, GYI interjected that the

14  contract was just saying the video would not go on the Internet and would be distributed outside the of

15  the United States. GYI and GARCIA rushed JANE DOE NO. 15 through everything telling her that the

16  shoot would take several hours—despite the previous representations that it would be 30 minutes of

17  filming. At this time, JANE DOE NO. 15's return flight was only a few hours away.

18  63.      During the shoot, JANE DOE NO. 15 told Defendants she was not comfortable with several

19  sexual acts they asked her to perform. Defendants told her that she had already been paid and that she

20  had to do them.

21  64.      Defendants paid JANE DOE NO. 15 $2,000 less than she was promised before flying to San

22  Diego. After the shoot, she sent PRATT a text message telling him that he owed her more money.

23  PRATT responded by trying to justify the underpayment:

24          "Yeah you're bruised up I can't have that."

25          "Honestly .. My partner and I were not very impressed with the photos. You have bruises over

26          your body and cuts on your wrists and arms."

27          "Photos is one thing, in person is another. You were paid very well. $3,000 is about 4x more
            then the regular pay girls get, you were also offered a solo tomorrow for $1,000."
28

14

COMPLAINT

1   65.    A month or two later, Defendants published JANE DOE NO. 15's video on their websites.

2   Links to the video were sent to her friends and family. JANE DOE NO. 15 sent a text message to

3   WRIGHT telling WRIGHT that she had lied to her. WRIGHT never responded.

4   **JANE DOE NO. 16**

5   66.    Around February 2014, Defendants posted an advertisement on Craigslist.com in the

6   gigs/modeling seeking young women for adult modeling.

7   67.    JANE DOE NO. 16 responded to the advertisement and was led to www.modelinggigs.com[2],

8   which, like Defendants' other bogus website www.beginmodeling.com, also fails to mention

9   pornography and is gives the viewer the impression it is a typical modeling company.

10  68.    After expressing interest in the Craigslist advertisement for modeling, JANE DOE NO. 16

11  received an email from Mark@ModelingGigs.com and spoke with "Mark" on the phone, on behalf of

12  Defendants. During the phone call, "Mark" told JANE DOE NO. 16 the gig was an adult film that

13  involved very basic sex that would be distributed in New Zealand on DVD and would never be

14  available in the United States or on the Internet. Pratt, who has an accent, also advised JANE DOE

15  NO. 16 that he was from New Zealand, which further helped sell his lies.

16  69.    JANE DOE NO. 16 also spoke with references provided by Defendants. The references assured

17  her the video would not be posted online or be available in the United States.

18  70.    On August 1, 2014, JANE DOE NO. 16 flew to San Diego. She was picked up by GARCIA

19  and "Mark," who she is now informed and believes is defendant PRATT. They drove JANE DOE NO.

20  16 and her friend, whom she had brought with her for safety reasons, to the Torrey Pines Hilton. They

21  were unable to film that night, so they dropped JANE DOE NO. 16 and her friend at the beach. While

22  at the beach, JANE DOE NO. 16 received a text message from PRATT asking her is she would come

23  spend the night in his bed for $400. She declined.

24  71.    The next day around noon, PRATT, GARCIA and ELLIS showed up at the hotel with the video

25  equipment. Once there, they provided JANE DOE NO. 16 several alcoholic drinks from the hotel bar,

26  telling her it would calm her nerves. Defendant ELLIS did JANE DOE NO. 16's makeup while

27  ────────────

[2] Upon further inspection, www.modelinggigs.com is filled with stock photographs of models that one can purchase from Shutterstock.com for a few dollars. Defendants never actually photographed the models depicted on this website, despite claiming to have done so.

28

1  PRATT and GARCIA set up the equipment. PRATT and GARCIA continued to reassure JANE DOE

2  NO. 16 her video would not be released on the Internet and would be released New Zealand and

3  Australia. When JANE DOE NO. 16 asked PRATT what would happen if she "chickened out" and did

4  not film the video, PRATT told her she would be forced to reimburse him for the cost of her flight, her

5  friend's flight and the hotel. JANE DOE NO. 16 asked PRATT if she could only do the photoshoot and

6  not do the adult film, and PRATT told her that she had to do the adult film because the photoshoot was

7  useless without the film. JANE DOE NO. 16 therefore thought she would be forced to repay PRATT

8  unless she did the adult film.

9  72.    Thereafter, PRATT provided documents for her to sign. PRATT and GARCIA told JANE DOE

10 NO. 16 that the documents ensured the video would only be on DVD and distributed in Australia and

11 New Zealand, as they had previously told her. When JANE DOE NO. 16 tried to read it in detail,

12 PRATT and GARCIA told her they needed to get the shoot started, that she could read it in detail after

13 the shoot was finished and that they would get her a copy after the shoot. They told her to just fill out

14 the information and sign where she needed to sign.

15 73.    After the documents were filled out, PRATT coached JANE DOE NO. 16 how to respond to

16 interview questions—telling her things like she needed to act bubbly and excited to be there. During

17 the shoot, ELLIS would come into the room on breaks and bring JANE DOE NO. 16 another alcoholic

18 drink.

19 74.    During the filming, PRATT instructed JANE DOE NO. 16 that she needed to perform oral sex

20 on GARCIA. JANE DOE NO. 16 told PRATT that she was uncomfortable doing that. ELLIS, who had

21 come back into the room, got JANE DOE NO. 16 another drink. PRATT then told her that they had

22 already paid her so she was required by contract to do it.

23 75.    After filming was finished, PRATT, ELLIS, and GARCIA drove JANE DOE NO. 16 and her

24 friend to the mall, and then to PRATT's apartment for a photoshoot.

25 76.    According to Defendants' website, www.girls-do-porn.com, Defendants first published JANE

26 DOE NO. 16's video on September 8, 2014. JANE DOE NO. 16 learned of the video in March 2015.

27 ///

28 ///

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

**(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

77.     Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

78.     During Plaintiffs' discussions and negotiations with Defendants before each made an adult video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported agreements), Defendants represented: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and that Plaintiffs would remain anonymous. Defendants further represented at all times to Plaintiffs that would not cause the videos to be posted online or distributed in the United States. Defendants at all times assured Plaintiffs there was nothing to worry about, promised privacy, and said nobody Plaintiffs knew would see the videos. Defendants caused other women to reiterate these representations to Plaintiffs. Finally, Defendants represented they would pay Plaintiffs certain sums of money; as set forth above, some of Plaintiffs did not receive the sums represented.

79.     Those representations were false.

80.     Defendants intended that Plaintiffs rely on the above representations when each young woman decided to make an adult video.

81.     Plaintiffs reasonably relied on the representations.

82.     Plaintiffs have been harmed by their reasonable reliance in that Defendants published their videos online, published their videos in the United States, and released Plaintiffs' real names.

83.     Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

17

**COMPLAINT**

1  were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

2  restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

3  also seek injunctive relief.

4  84.    Defendants were acting individually and on behalf of each other when they made each of these

5  representations and, when one of them made a representation, the others ratified the representation

6  and/or knew of the misrepresentation and failed to correct it.

7  85.    Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

8  Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

9  (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

10  via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

11  forth above.

12  86.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

13  of punitive damages pursuant to Section 3294 of the California Civil Code.

14  **SECOND CAUSE OF ACTION**

15  **FRAUDULENT CONCEALMENT**

16  **(All Plaintiffs against All Named Defendants and ROES 1 – 500)**

17  87.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

18  though set forth herein, including, without limitation, the agency and alter ego allegations.

19  88.    During Plaintiffs' discussions and negotiations with Defendants before each made an adult

20  video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

21  agreements), Defendants actively concealed their true identities (their individual names and, more

22  importantly, the identity of www.girlsdoporn.com, on which they intended to publish Plaintiffs nude

23  photos and sex acts). At all these times, they actively concealed the fact their true intention was to post

24  the videos online and distribute them in the United States – or cause such publication and distribution.

25  At all these times, Defendants also concealed the facts regarding: (a) all of the other young women

26  whose lives they have irreparably damaged earlier by Defendants' video publication and promotion; (b)

27  all of the other young women imploring them to stop and to take down their videos; and (c) all of the

28  complaints that they (and their legal counsel) have received from other young women and their

18

**COMPLAINT**

1 families.

2 89. Defendants owed Plaintiffs duties to disclose this information as, among other reasons, they

3 provided some information to Plaintiffs during correspondence, and during contract and business

4 negotiations.

5 90. Defendants knew of, but knowingly concealed, the true facts regarding their identifies, their

6 website, their business, their video distribution, and the likelihood of injury to and harassment of

7 Plaintiffs.

8 91. Defendants concealed these facts with the intent to induce Plaintiffs to make the adult videos.

9 92. The concealed information was objectively material to any reasonable person and caused

10 Plaintiffs to make the adult videos.

11 93. Plaintiffs justifiably relied on Defendants' false representations.

12 94. Defendants' failure to disclose these material facts to Plaintiffs was substantial factor in causing

13 their harm. Had Plaintiffs known of the undisclosed facts, they would not have made the adult videos.

14 95. Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

15 Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

16 plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

17 blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

18 embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

19 the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

20 were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

21 restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

22 also seek injunctive relief.

23 96. Defendants were acting individually and on behalf of each other when they made each of these

24 omissions and, when one of them made an omission, the others ratified the omission and/or knew of the

25 omission and failed to correct it.

26 97. Defendants also acted in a conspiracy when they committed this fraud as: (1) each of

27 Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs;

28 (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and

1    via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set

2    forth above.

3    98.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

4    of punitive damages pursuant to Section 3294 of the California Civil Code.

5                                    **THIRD CAUSE OF ACTION**

6                                          **FALSE PROMISE**

7                        **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

8    99.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

9    though set forth herein, including, without limitation, the agency and alter ego allegations.

10    100.    During Plaintiffs' discussions and negotiations with Defendants before each made an adult

11    video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

12    agreements), Defendants made promises to Plaintiffs that: they would not post the videos online (or

13    cause such publication), they would not distribute the videos in the United States (or cause such

14    publication), and Plaintiffs would remain anonymous.  Defendants promised Plaintiffs that would not

15    cause the videos to be posted online or distributed in the United States.  Defendants promised Plaintiffs

16    there was nothing to worry about, promised privacy, and promised nobody they knew would see the

17    videos.  Finally, Defendants represented they would pay Plaintiffs certain sums of money; as set forth

18    above, some of Plaintiffs did not receive the sums represented.

19    101.    Defendants' affirmative promises were of material fact and important as Plaintiffs would not

20    have otherwise made the adult videos.

21    102.    Defendants did not intend to perform these promises at the times they made them, and have not

22    performed as promised.  Defendants knew their promises were false and merely wanted Plaintiffs to

23    make the videos for Defendants' benefit.

24    103.    Defendants intended to induce Plaintiffs to alter their positions in reliance on the promises by

25    making the adult videos.

26    104.    Plaintiffs justifiably and reasonably relied on Defendants' promises and Defendants' affirmative

27    promises were an immediate cause of Plaintiffs' conduct.

28    105.    Defendants did not perform the promises.

106.　As an actual and proximate cause of Defendants' false promises and Plaintiffs' justifiable reliance, Plaintiffs were damaged in that Defendants posted the videos online, distributed the videos in the United States, and released Plaintiffs' names.

107.　Plaintiffs' reliance on these false representations was a substantial factor in causing their harm. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they were told was *limited* distribution and what Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff also seek injunctive relief.

108.　Defendants were acting individually and on behalf of each other when they made each of these omissions and, when one of them made a false promise, the others ratified it, and/or knew of the false promise and failed to correct it.

109.　Defendants also acted in a conspiracy when they committed this fraud as: (1) each of Defendants had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant to their agreement, Defendants intentionally mislead Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to their agreement, Defendants injured Plaintiffs, as set forth above.

110.　Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award of punitive damages pursuant to Section 3294 of the California Civil Code.

### FOURTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (All Plaintiffs against All Named Defendants and ROES 1 - 500)

111.　Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

112.　During Plaintiffs' discussions and negotiations with Defendants before each made an adult

1 | video for Defendants (and simultaneous with Plaintiffs' attempted review of any purported

2 | agreements), Defendants represented: they would not post the videos online (or cause such publication),

3 | they would not distribute the videos in the United States (or cause such publication), and that Plaintiffs

4 | would remain anonymous. Defendants further represented at all times to Plaintiffs that would not cause

5 | the videos to be posted online or distributed in the United States. Defendants at all times assured

6 | Plaintiffs there was nothing to worry about, promised privacy, and said nobody Plaintiffs knew would

7 | see the videos. Defendants caused other women to reiterate these representations to Plaintiffs.

8 | 113.    The representations were false and although Defendants may have honestly believed that the

9 | representations were true, they had no reasonable grounds for believing the representations were true

10 | when they made them.

11 | 114.    Defendants intended that Plaintiffs would rely on the above representations in their decisions to

12 | make the adult videos.

13 | 115.    Plaintiffs reasonably relied on Defendants' misrepresentations in their decisions to make the

14 | adult videos.

15 | 116.    Plaintiffs' reliance on Defendants' false representations was a substantial factor in causing their

16 | harm in that Defendants posted their videos online, published their videos in the United States, and

17 | released Plaintiffs' names.

18 | 117.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

19 | Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

20 | plaintiff, and consists of, at least, compensatory damages, including, but not limited to the difference in

21 | value in what the parties exchanged (i.e., the money Plaintiffs received for what they were told was

22 | *limited* distribution and what Defendants profited through *global* distribution).

23 | **FIFTH CAUSE OF ACTION**

24 | **MISAPPROPRIATION OF NAME AND LIKENESS [COMMON LAW]**

25 | **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

26 | 118.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

27 | though set forth herein, including, without limitation, the agency and alter ego allegations.

28 | 119.    Defendants used Plaintiffs' names, likenesses, and/or identities without Plaintiffs' permission,

1  though fraud, and/or without promised consideration, including, without limitation, on Defendants'

2  websites (e.g., www.girlsdoporn.com), social media, and advertising. Finally, any release purporting to

3  give Defendants unconditional use of The Plaintiff's videos is unenforceable due to unclear terms, a

4  lack of mental capacity/competence, mistake, undue influence, and/or Defendants' unclean hands.

5  120.    Defendants' gained a commercial benefit by using Plaintiffs' names, likenesses, and/or

6  identities.

7  121.    Following Defendants' initial publication of each of Plaintiffs' videos on their own websites,

8  and through the date of this amended complaint, Defendants have republished and redirected the

9  misappropriated content to different websites and to different audiences. Defendants have republished

10  Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the

11  Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where

12  Defendants post varying and edited snippets of Plaintiffs' videos with embedded links and

13  advertisements to Defendants' websites; these varying and edited snippets of Plaintiffs' videos have

14  been viewed millions of times by hundreds of thousands of different individuals. Defendants conduct

15  the same form of repetitive mass advertising on their fan blogs and forums, and on their own social

16  media.

17  122.    Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

18  Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

19  plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

20  blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

21  embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to

22  the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they

23  were told was *limited* distribution and what Defendants profited through *global* distribution); and (c)

24  restitution / unjust enrichment damages (same calculation as the compensatory damages). The Plaintiff

25  also seek injunctive relief.

26  123.    Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants

27  had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant

28  to their agreement, Defendants intentionally misappropriated Plaintiffs' names, likenesses, and/or

1    identities at the time and place and via the manner set forth above; and (3) pursuant to their agreement,

2    Defendants injured Plaintiffs, as set forth above.

3    124.    Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an

4    award of punitive damages pursuant to Section 3294 of the California Civil Code.

5    **SIXTH CAUSE OF ACTION**

6    **MISAPPROPRIATION OF LIKENESS [CIVIL CODE § 3344]**

7    **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

8    125.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

9    though set forth herein, including, without limitation, the agency and alter ego allegations.

10   126.    On their websites (e.g., www.girlsdoporn.com), social media, and other advertising, Defendants

11   knowingly used Plaintiffs' names, voices, photographs, video, and likenesses to advertise or sell

12   subscriptions to Defendants' businesses.

13   127.    Defendants' use did not occur in connection with a news, public affairs, or sports broadcast or

14   account, or with a political campaign.

15   128.    Defendants did not have Plaintiffs' consent, obtained it though fraud, and/or without promised

16   consideration.  Finally, any release purporting to give Defendants unconditional use of The Plaintiff's

17   videos is unenforceable due to unclear terms, a lack of mental capacity/competence, mistake, undue

18   influence, and/or Defendants' unclean hands.

19   129.    Defendants use of Plaintiffs' names, voices, photographs, video, and likenesses was directly

20   connected to Defendants' commercial purpose.

21   130.    Following Defendants' initial publication of each of Plaintiffs' videos on their own websites,

22   and through the date of this amended complaint, Defendants have republished and redirected the

23   misappropriated content to different websites and to different audiences.  Defendants have republished

24   Plaintiffs' misappropriated likenesses to different audiences in various advertising campaigns on the

25   Internet, including on third party websites (such as www.pornhub.com and www.youporn.com), where

26   Defendants post varying and edited snippets of Plaintiffs' videos with embedded links and

27   advertisements to Defendants' websites; these varying and edited snippets of Plaintiffs' videos have

28   been viewed millions of times by hundreds of thousands of different individuals.  Defendants conduct

24

**COMPLAINT**

1  the same form of repetitive mass advertising on their fan blogs and forums, and on their own social

2  media.

3  131.  Plaintiffs' reliance on these false representations was a substantial factor in causing their harm.

4  Plaintiffs have been harmed in an amount to be proven at trial, but that is, at least, $500,000 per

5  plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying,

6  blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression,

7  embarrassment, mortification, shame, and fear; (b) compensatory damages and/or statutory damages,

8  including, disgorgement of profits; (c) attorney fees; and (d) restitution / unjust enrichment damages

9  (i.e., the money Plaintiffs received for what they were told was *limited* distribution and what

10  Defendants profited through *global* distribution).  The Plaintiff also seek injunctive relief.

11  132.  Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants

12  had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant

13  to their agreement, Defendants intentionally misappropriated Plaintiffs' names, voices, photographs,

14  video, and likenesses at the time and place and via the manner set forth above; and (3) pursuant to their

15  agreement, Defendants injured Plaintiffs, as set forth above.

16  133.  Defendants' actions were fraudulent, oppressive, and malicious and therefore also warrant an

17  award of punitive damages pursuant to Section 3294 of the California Civil Code.

18  ### SEVENTH CAUSE OF ACTION

19  ### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

20  **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

21  134.  Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

22  though set forth herein, including, without limitation, the agency and alter ego allegations.

23  135.  Defendants concealed the fact they run an online pornography website.  In order to get Plaintiffs

24  to make adult videos, Defendants lied to Plaintiffs about the distribution.  They assured Plaintiffs there

25  was nothing to worry about and promised privacy.  Defendants knew all of the other young women

26  whose lives they have irreparably damaged earlier by Defendants' video publication and promotion; all

27  of the other young women imploring them to stop and to take down their videos; and all of the

28  complaints and they (and their legal counsel) have received from other young women and their

25

**COMPLAINT**

1  families. Defendants used Plaintiffs' videos and names to commercially promote their websites and

2  enrich themselves. This conduct was outrageous as it exceeded all bounds of common decency usually

3  tolerated by a civilized society.

4  136.    Defendants intended to inflict the injuries stated herein upon Plaintiffs, or the injuries were

5  substantially certain to result from Defendants' conduct.

6  137.    Defendants' outrageous conduct actually and proximately caused Plaintiffs to suffer serious

7  emotional distress, including, but not limited to, loss of eating, loss of sleep, enduring fright, shock,

8  nervousness, anxiety, depression, embarrassment, mortification, shame, fear, and – for some -

9  consideration of suicide. Plaintiffs have been harmed in an amount to be proven at trial, but that is, at

10  least, $500,000 per plaintiff.

11  138.    Defendants also acted in a conspiracy when they committed this tort as: (1) each of Defendants

12  had knowledge of and agreed to both the objective and course of action to injure Plaintiffs; (2) pursuant

13  to their agreement, with their outrageous conduct, Defendants intentionally inflicted severe emotional

14  distress upon Plaintiffs at the time and place and via the manner set forth above; and (3) pursuant to

15  their agreement, Defendants injured Plaintiffs, as set forth above.

16  139.    Defendants' actions were fraudulent, oppressive, and malicious and therefore warrant an award

17  of punitive damages pursuant to Section 3294 of the California Civil Code.

18                                    **EIGHTH CAUSE OF ACTION**

19                                        **NEGLIGENCE**

20            **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

21  140.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

22  though set forth herein, including, without limitation, the agency and alter ego allegations.

23  141.    In their transactions and dealings with The Plaintiff, Defendants had a duty to use ordinary care

24  and to prevent injury to Plaintiffs based on the foreseeability of harm to Plaintiffs, the degree of

25  certainty The Plaintiff would suffer injuries, the closeness of connection between Defendants' actions

26  and Plaintiffs' injuries, the moral blame attached to Defendants' conduct, the policy of preventing

27  future harm, and the extent of Defendants' burden and the consequences to the community of imposing

28  duty and liability.

142.    Defendants' above-described actions and omissions (e.g., lying about and concealing the fact they run an online pornography website upon which they planned to post the videos; and assuring Plaintiffs there was nothing to worry about – all while knowing that release of the videos would cause harassment and severe emotional damage), breached the duty of care.

143.    Defendants' breach of the duty of care actually and proximately caused Plaintiffs harm in an amount to be proven at trial, but that is, at least, $500,000 per plaintiff, and consists of, at least: (a) serious emotional distress, including, but not limited to, bullying, blackmail, loss of eating, loss of sleep, enduring fright, shock, nervousness, anxiety, depression, embarrassment, mortification, shame, and fear; (b) compensatory damages, including, but not limited to the difference in value in what the parties exchanged (i.e., the money Plaintiffs received for what they were told was *limited* distribution and what Defendants profited through *global* distribution); and (c) restitution / unjust enrichment damages (same calculation as the compensatory damages).  The Plaintiff also seek injunctive relief.

## NINTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)

144.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as though set forth herein, including, without limitation, the agency and alter ego allegations.

145.    Plaintiffs entered into oral agreements with Defendants whereby Plaintiffs agreed to make their respective videos with the conditions: they would not post the videos online (or cause such publication), they would not distribute the videos in the United States (or cause such publication), and they would ensure their privacy and anonymity.

146.    Plaintiffs performed all of their obligations under the agreements; in particular, they participated in the video shoots.

147.    All conditions required for Defendants' performances occurred, but they breached the contract by distributing and/or causing the videos to be posted online and in the United States, and by failing to ensure Plaintiffs' privacy and anonymity.  Also, as set forth above, some of Plaintiffs did not receive the sums agreed upon for their video(s).

148.    As an actual and proximate cause of Defendants' breach, Plaintiffs were damaged in an amount

27

1    to be proven at trial, but believed to be, at least, $500,000 per plaintiff.

2                              **TENTH CAUSE OF ACTION**

3                              <u>PROMISSORY ESTOPPEL</u>

4         **(JANE DOE NO. 15 against All Named Defendants and ROES 1 - 500)**

5    149.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

6    though set forth herein, including, without limitation, the agency and alter ego allegations.

7    150.    Defendants made clear and unambiguous promises to Plaintiffs that: they would not post the

8    videos online (or cause such publication), they would not distribute the videos in the United States (or

9    cause such publication), and they would ensure their privacy and anonymity.

10   151.    Plaintiffs relied on these promises in that they made the videos.

11   152.    Plaintiffs' reliance was both reasonable and foreseeable.

12   153.    Plaintiffs were injured as a result in that Defendants distributed or cause the distribution of the

13   videos online and in the United States, and failed to ensure Plaintiffs' privacy and anonymity.

14   154.    Injustice can be avoided only by an award of compensatory and consequential damages in the

15   amount of, at least, $500,000 per plaintiff.

16                             **ELEVENTH CAUSE OF ACTION**

17         <u>**VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, et seq.**</u>

18         **(All Plaintiffs against All Named Defendants and ROES 1 - 500)**

19   155.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

20   though set forth herein, including, without limitation, the agency and alter ego allegations.

21   156.    Defendants' conduct constitutes a "business practice" under Business & Professions Code,

22   Section 17200, et seq. ("Section 17200").

23   157.    Defendants' "business practice" constitutes "unlawful" conduct under Section 17200, as it

24   violates common and California statutory law.  Defendants' "business practice" constitutes

25   "fraudulent" conduct under Section 17200, as it deceives – and is likely to deceive – members of the

26   public.

27   158.    Defendants intended their conduct to cause – and it did so cause – Plaintiffs to suffer economic

28   injury in fact and caused Defendants to receive ill-gotten gains.  Plaintiffs were damaged – and

1  Defendants unjustly enriched - in an amount to be proven at trial, but believed to be, at least, $500,000

2  per plaintiff.  As such, Plaintiffs have individual standing under Section 17200.

3  159.    Pursuant to the remedies provisions of Section 17200: Defendants owe Plaintiffs restitution of

4  Plaintiffs' property (e.g., videos and images); the Court should enjoin Defendants' violative conduct;

5  and the Court should issue the maximum civil penalties permitted.

6                            **TWELFTH CAUSE OF ACTION**

7                              **FRAUDULENT TRANSFER**

8           **(All Plaintiffs against All The Named Defendants and ROES 475 - 550)**

9  160.    Plaintiffs incorporate by reference all of the preceding paragraphs contained in this complaint as

10  though set forth herein, including, without limitation, the agency and alter ego allegations.

11  161.    Plaintiffs have a right to payment from Defendants for the claims in this action and are, thus,

12  creditors.

13  162.    On information and belief, Defendants transferred Plaintiffs' videos and the revenue generated

14  therefrom to defendant Oh Well Media Limited, Sidle Media Limited and or Bubblegum Films, Ltd

15  (sham entities located in Vanuatu used to hide assets) and ROES 200 – 250 with the intent to hinder,

16  delay, or defraud Plaintiffs in their collection efforts on the subject claims.

17  163.    Plaintiffs were harmed as, among other things, they still have not received compensation for the

18  claims in this action.

19  164.    Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

20  165.    Defendants' actions were fraudulent and malicious and therefore warrant an award of punitive

21  damages pursuant to Section 3294 of the California Civil Code.

22  ///

23  ///

24  ///

25

26

27

28

1

## PRAYER FOR RELIEF

2 WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

3 A. For compensatory damages of, at least, $1,000,000.00;

4 B. For restitution and disgorgement of ill-gotten gains/unjust enrichment;

5 C For civil penalties;

6 D. For an injunction;

7 E. For punitive damages;

8 F. For attorney fees;

9 G. For prejudgment interest;

10 H. For costs of suit; and

11 I. For such other and further relief as the Court deems just and proper.

12

13 Date: September 7, 2017   By: */s/ Brian M. Holm*

14             Robert Hamparyan

              John J. O'Brien

15             Brian M. Holm

              **Attorneys for Plaintiffs**

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**

1

**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)

2

555 West Beech Street, Suite 500
San Diego, California 92101

3

Telephone:   (619) 800-0529
Facsimile:    (866) 365-4856

4

5

**LAW OFFICES OF DANIEL A. KAPLAN**
Daniel A. Kaplan (SBN 179517)

6

Alexandra R. Byler (SBN 294307)
555 West Beech Street, Suite 230

7

San Diego, California 92101
Telephone:   (619) 685-3988

8

Facsimile:    (619) 684-3239

9

Attorneys for Defendants

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/30/2018** at 02:14:00 PM

Clerk of the Superior Court
By Richard Day, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**

10

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

11

12

JANE DOE NOS. 1-14, inclusive,
individuals;

13

Plaintiffs,

14

v.

15

GIRLSDOPORN.COM, a business
organization, form unknown; MICHAEL J.

16

PRATT, an individual; ANDRE GARCIA,
an individual; MATTHEW WOLFE, an

17

individual; BLL MEDIA, INC., a California
corporation; BLL MEDIA HOLDINGS,

18

LLC, a Nevada limited liability company;
DOMI PUBLICATIONS, LLC, a Nevada

19

limited liability company; EG
PUBLICATIONS, INC., a California

20

corporation; M1M MEDIA, LLC, a
California limited liability company;

21

BUBBLEGUM FILMS, INC., a business
organization, form unknown; OH WELL

22

MEDIA LIMITED, a business organization,
form unknown; MERRO MEDIA, INC., a

23

California corporation; MERRO MEDIA
HOLDINGS, LLC, a Nevada limited liability

24

company; and ROES 1 - 500, inclusive,

25

Defendants.

LEAD CASE:
Case No. 37-2016-00019027-CU-FR-CTL

CONSOLIDATED WITH:
Case No. 37-2017-00043712-CU-FR-CTL
Case No. 37-2017-00033321-CU-FR-CTL

**DEFENDANTS' ANSWER TO
COMPLAINT FILED BY JANE DOES
NOS. 15 AND 16**

**Judge:**   Hon. Joel R. Wohlfeil
**Dept.:**    C-73

Complaints Filed: September 7, 2017
Trial Date: March 8, 2019

[IMAGED FILE]

26

///

27

///

28

///

-1-

1    Defendants GIRLSDOPORN.COM, MICHAEL J. PRATT, ANDRE GARCIA,

2    MATTHEW WOLFE, BLL MEDIA, INC., BLL MEDIA HOLDINGS, LLC, EG

3    PUBLICATIONS, INC., M1M MEDIA, LLC, MERRO MEDIA, INC., and MERRO MEDIA

4    HOLDINGS, LLC (collectively, "Defendants") respectfully submit this Answer to the Complaint

5    filed by plaintiffs JANE DOE NOS. 15 and 16 (collectively, "Plaintiffs").

6    **GENERAL DENIAL**

7    Pursuant to the provisions of California Code of Civil Procedure section 431.30,

8    Defendants generally and specifically deny each and all of the allegations in Plaintiffs'

9    Complaint, including each and every purported cause of action contained therein. Defendants

10    further deny that Plaintiffs have or will sustain damages in the amounts alleged, or in any amount

11    whatsoever, by reason of any conduct of Defendants. Further, Defendants:

12    1.    Deny that Plaintiffs are entitled to judgment against Defendants in any amount

13    whatsoever, and for any reason or manner as alleged;

14    2.    Deny that Plaintiffs are entitled to any form of relief whatsoever; and

15    3.    Deny that Plaintiffs are entitled to any award of attorneys' fees and costs incurred

16    as a result of these claims, or for any other reason.

17    **AFFIRMATIVE DEFENSES**

18    As to each and every cause of action stated against Defendants in the Complaint,

19    Defendants allege the following as separate and affirmative defenses.

20    **FIRST AFFIRMATIVE DEFENSE**

21    **(Failure to State a Claim)**

22    Defendants allege, and without admitting any of the allegations contained in Plaintiffs'

23    Complaint, that the Complaint fails to state a claim upon which relief can be granted.

24    **SECOND AFFIRMATIVE DEFENSE**

25    **(No Damages Suffered)**

26    Plaintiffs have not suffered any damage as a result of any actions or omissions of

27    Defendants.

28    ///

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs failed, neglected, and refused to mitigate their alleged damages.

**FOURTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that Plaintiffs' claims are barred, in whole or in part, because of their own unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

**(Proportion of Fault)**

Defendants allege, and without admitting any of the allegations contained in the Complaint, that the damages alleged by Plaintiffs, if any, were a direct and proximate result of the actions of parties other than these Defendants, and that the Defendants' liability, if any, is limited in direct proportion to the percentage of fault directly attributable to them.

**SIXTH AFFIRMATIVE DEFENSE**

**(*In Pari Delicto*)**

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that the claims therein and each and every purported cause of action are barred due to Plaintiffs' own acts and courses of conduct which render it *in pari delicto*.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Laches)**

Defendants allege, and without admitting any of the allegations contained in the Complaint, that Plaintiffs have delayed for an unreasonable period of time in asserting their claims or causes of action against Defendants, which delays have prejudiced Defendants. Therefore, Plaintiffs' claims or causes of action against Defendants are barred under the doctrine of laches.

///

ANSWER TO COMPLAINT FILED BY JANE DOES NOS. 15 & 16

1

## EIGHTH AFFIRMATIVE DEFENSE

2

### (Independent, Intervening Conduct)

3

Plaintiffs are barred from recovery in that any damage sustained by Plaintiffs was the

4

direct and proximate result of the independent, intervening, negligent and/or unlawful conduct of

5

independent third parties or their agents, and not any act or omission on the part of Defendants.

6

## NINTH AFFIRMATIVE DEFENSE

7

### (Unjust Enrichment)

8

Defendants allege, and without admitting any of the allegations contained in the

9

Complaint, that Plaintiffs will be unjustly enriched by an award of the amount claimed in the

10

Complaint.

11

## TENTH AFFIRMATIVE DEFENSE

12

### (Doctrine of Estoppel)

13

Defendants allege, and without admitting any of the allegations contained in the

14

Complaint, that Plaintiffs are estopped to recover from Defendants as a result of their own

15

conduct.

16

## ELEVENTH AFFIRMATIVE DEFENSE

17

### (Doctrine of Waiver)

18

Defendants allege, and without admitting any of the allegations contained in the

19

Complaint, that Plaintiffs are barred from any recovery against Defendant as a result of the

20

doctrine of waiver.

21

## TWELFTH AFFIRMATIVE DEFENSE

22

### (Consent)

23

Defendants allege, and without admitting any of the allegations contained in the

24

Complaint, that Plaintiffs consented to and approved all alleged acts and omissions attributed to

25

Defendants. Therefore, Plaintiffs' claims or causes of action against Defendants are barred under

26

the doctrine of consent.

27

///

28

///

-4-

ANSWER TO COMPLAINT FILED BY JANE DOES NOS. 15 & 16

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Justification)

Defendants deny that they committed any unlawful act or omission against Plaintiffs, however, any action or omission they did take was justified under the circumstances.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that the claims therein and each and every purported cause of action are barred due to the statute of limitations, including, but not limited to, California Code of Civil Procedure sections 339 and 335.1.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Punitive Damages)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that any award of punitive or exemplary damages as sought by Plaintiffs therein would violate the due process and excessive fine clauses of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as the Constitution of the State of California.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Attorney Fees, Costs, or Pre- or Post-Judgment Interest)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that attorneys' fees, costs, and pre- and post-judgment interest are not recoverable by Plaintiffs as a matter of law in this case.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Negligence)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that Plaintiffs were negligent or otherwise at fault and should be barred from recovery of that portion of the damages (if any were suffered) directly attributable to their proportionate share of the negligence or fault, pursuant to the doctrine of comparative negligence.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Misjoinder – C.C.P. § 430.10(d))

The Complaint contains a defect or misjoinder of parties.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Parol Evidence)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that the claims therein and each and every purported cause of action are barred due to the Parol evidence rule.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Speculative Damages)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs are seeking to recover lost profits or damages that are completely speculative in nature.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Assumption of Risk)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs knowingly and voluntarily assumed the risk of the conduct, events, and matters alleged in their Complaint, and the damages, if any, incurred by Plaintiffs, was the proximate result of the risks so assumed.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Exercise Ordinary Care)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs failed to exercise ordinary and reasonable care on their own behalf and such negligence and carelessness was a proximate cause of some portion, up to and including the whole of, their own alleged injuries and damages, if any, and Plaintiffs' recovery therefore should be barred or reduced according to law, up to and including the whole thereof.

///

///

ANSWER TO COMPLAINT FILED BY JANE DOES NOS. 15 & 16

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Acts of Other Parties)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that if they are subjected to any liability herein, it will be due in whole, or in part, to the acts and/or omissions of other parties unknown at this time, and any recovery obtained by Defendants should be barred or reduced according to law, up to and including the whole thereof.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Exercise Ordinary Care)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that if they are subjected to any liability herein, it will be due in whole, or in part, to the acts and/or omissions of other parties unknown at this time, and any recovery obtained by Defendants should be barred or reduced according to law, up to and including the whole thereof.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Uncertainty)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that at all relevant times herein, Defendants exercised reasonable care and did not know, and in the exercise of reasonable care could not have known, of the alleged acts or allegations in connection with the conditions which are the subject of the Complaint.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Ripeness)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs have not yet incurred damages or loss with respect to this action. Their Complaint is therefore not ripe for adjudication.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Non-Existent Obligations)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that the Complaint contains non-existent obligations which were not contracted for and no agreement exists.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Failure of Consideration)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that if any contracts, obligations or agreements as alleged in the Complaint have been entered into, any duty of performance of Defendants is excused by reason of failure of consideration, waiver, nonexistence of condition precedent, breach by Plaintiffs, impossibility of performance, prevention by Plaintiffs, frustration of purpose and/or acceptance by Plaintiffs.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Setoff)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that to the extent Defendants are found liable under any cause of action alleged in the Complaint, the award to Plaintiffs, if any, should be set off by the amount owed by Plaintiffs to Defendants.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Improper Joinder)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs are improperly joined to this action and should be severed accordingly.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Additional Affirmative Defenses)

Defendants currently have insufficient information upon which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available.  Defendants reserve their rights to assert additional defenses in the event discovery indicates additional affirmative defenses are appropriate.

## PRAYER

WHEREFORE, Defendants pray as follows:

1.  That Plaintiffs take nothing by virtue of this action;

2.  For judgment to be entered against Plaintiffs and in favor of Defendants;

ANSWER TO COMPLAINT FILED BY JANE DOES NOS. 15 & 16

1

3.   That Defendants be awarded their costs incurred in this action, and any other amounts

2

recoverable under law; and

3

4.   That this Court grant Defendants such other relief the Court may deem just and proper.

4

5

Dated:   April 30, 2018                                    **LAW OFFICES OF DANIEL A. KAPLAN**

6

7

By:   _____

Daniel A. Kaplan

8

Alexandra R. Byler

Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO COMPLAINT FILED BY JANE DOES NOS. 15 & 16

1

**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)

2
555 West Beech Street, Suite 500
San Diego, California 92101

3
Telephone:      (619) 800-0529
Facsimile:      (866) 365-4856

4

**LAW OFFICES OF DANIEL A. KAPLAN**

5
Daniel A. Kaplan (SBN 179517)
Alexandra R. Byler (SBN 294307)

6
555 West Beech Street, Suite 230
San Diego, California 92101

7
Telephone:      (619) 685-3988
Facsimile:      (619) 684-3239

8

Attorneys for Defendants

9

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/30/2018** at 02:14:00 PM

Clerk of the Superior Court
By Richard Day,Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

10

## COUNTY OF SAN DIEGO – CENTRAL DIVISION

11

| | |
|---|---|
| 12 JANE DOE NOS. 1-14, inclusive, individuals; | LEAD CASE: Case No. 37-2016-00019027-CU-FR-CTL |
| 13 Plaintiffs, | CONSOLIDATED WITH: |
| 14 v. | Case No. 37-2017-00043712-CU-FR-CTL Case No. 37-2017-00033321-CU-FR-CTL |

15
GIRLSDOPORN.COM, a business
organization, form unknown; MICHAEL J.

16
PRATT, an individual; ANDRE GARCIA,
an individual; MATTHEW WOLFE, an

17
individual; BLL MEDIA, INC., a California
corporation; BLL MEDIA HOLDINGS,

18
LLC, a Nevada limited liability company;
DOMI PUBLICATIONS, LLC, a Nevada

19
limited liability company; EG
PUBLICATIONS, INC., a California

20
corporation; MlM MEDIA, LLC, a
California limited liability company;

21
BUBBLEGUM FILMS, INC., a business
organization, form unknown; OH WELL

22
MEDIA LIMITED, a business organization,
form unknown; MERRO MEDIA, INC., a

23
California corporation; MERRO MEDIA
HOLDINGS, LLC, a Nevada limited liability

24
company; and ROES 1 - 500, inclusive,

25
Defendants.

**DEFENDANTS' ANSWER TO
PLAINTIFFS' COMPLAINT FILED BY
JANE DOES NOS. 17 - 22**

**Judge:**   Hon. Joel R. Wohlfeil
**Dept.:**   C-73

Complaint Filed: November 8, 2017
Trial Date: March 8, 2019

[IMAGED FILE]

26
///

27
///

28
///

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FILED BY JANE DOES NOS. 17 - 22

1    Defendants GIRLSDOPORN.COM, MICHAEL J. PRATT, ANDRE GARCIA,

2  MATTHEW WOLFE, BLL MEDIA, INC., BLL MEDIA HOLDINGS, LLC, EG

3  PUBLICATIONS, INC., M1M MEDIA, LLC, MERRO MEDIA, INC., and MERRO MEDIA

4  HOLDINGS, LLC (collectively, "Defendants") respectfully submit this Answer to the Complaint

5  filed by plaintiffs JANE DOE NOS. 17 - 22 (collectively, "Plaintiffs").

6    **GENERAL DENIAL**

7    Pursuant to the provisions of California Code of Civil Procedure section 431.30,

8  Defendants generally and specifically deny each and all of the allegations in Plaintiffs'

9  Complaint, including each and every purported cause of action contained therein.  Defendants

10  further deny that Plaintiffs have or will sustain damages in the amounts alleged, or in any amount

11  whatsoever, by reason of any conduct of Defendants.  Further, Defendants:

12    1.    Deny that Plaintiffs are entitled to judgment against Defendants in any amount

13  whatsoever, and for any reason or manner as alleged;

14    2.    Deny that Plaintiffs are entitled to any form of relief whatsoever; and

15    3.    Deny that Plaintiffs are entitled to any award of attorneys' fees and costs incurred

16  as a result of these claims, or for any other reason.

17    **AFFIRMATIVE DEFENSES**

18    As to each and every cause of action stated against Defendants in the Complaint,

19  Defendants allege the following as separate and affirmative defenses.

20    **FIRST AFFIRMATIVE DEFENSE**

21    **(Failure to State a Claim)**

22    Defendants allege, and without admitting any of the allegations contained in Plaintiffs'

23  Complaint, that the Complaint fails to state a claim upon which relief can be granted.

24    **SECOND AFFIRMATIVE DEFENSE**

25    **(No Damages Suffered)**

26    Plaintiffs have not suffered any damage as a result of any actions or omissions of

27  Defendants.

28  ///

-2-

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs failed, neglected, and refused to mitigate their alleged damages.

**FOURTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that Plaintiffs' claims are barred, in whole or in part, because of their own unclean hands.

**FIFTH AFFIRMATIVE DEFENSE**

**(Proportion of Fault)**

Defendants allege, and without admitting any of the allegations contained in the Complaint, that the damages alleged by Plaintiffs, if any, were a direct and proximate result of the actions of parties other than these Defendants, and that the Defendants' liability, if any, is limited in direct proportion to the percentage of fault directly attributable to them.

**SIXTH AFFIRMATIVE DEFENSE**

**(*In Pari Delicto*)**

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that the claims therein and each and every purported cause of action are barred due to Plaintiffs' own acts and courses of conduct which render it *in pari delicto*.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Laches)**

Defendants allege, and without admitting any of the allegations contained in the Complaint, that Plaintiffs have delayed for an unreasonable period of time in asserting their claims or causes of action against Defendants, which delays have prejudiced Defendants. Therefore, Plaintiffs' claims or causes of action against Defendants are barred under the doctrine of laches.

///

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FILED BY JANE DOES NOS. 17 - 22

## EIGHTH AFFIRMATIVE DEFENSE

### (Independent, Intervening Conduct)

Plaintiffs are barred from recovery in that any damage sustained by Plaintiffs was the direct and proximate result of the independent, intervening, negligent and/or unlawful conduct of independent third parties or their agents, and not any act or omission on the part of Defendants.

## NINTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

Defendants allege, and without admitting any of the allegations contained in the Complaint, that Plaintiffs will be unjustly enriched by an award of the amount claimed in the Complaint.

## TENTH AFFIRMATIVE DEFENSE

### (Doctrine of Estoppel)

Defendants allege, and without admitting any of the allegations contained in the Complaint, that Plaintiffs are estopped to recover from Defendants as a result of their own conduct.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Doctrine of Waiver)

Defendants allege, and without admitting any of the allegations contained in the Complaint, that Plaintiffs are barred from any recovery against Defendant as a result of the doctrine of waiver.

## TWELFTH AFFIRMATIVE DEFENSE

### (Consent)

Defendants allege, and without admitting any of the allegations contained in the Complaint, that Plaintiffs consented to and approved all alleged acts and omissions attributed to Defendants. Therefore, Plaintiffs' claims or causes of action against Defendants are barred under the doctrine of consent.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Justification)

Defendants deny that they committed any unlawful act or omission against Plaintiffs, however, any action or omission they did take was justified under the circumstances.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that the claims therein and each and every purported cause of action are barred due to the statute of limitations, including, but not limited to, California Code of Civil Procedure sections 339 and 335.1.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Punitive Damages)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that any award of punitive or exemplary damages as sought by Plaintiffs therein would violate the due process and excessive fine clauses of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as the Constitution of the State of California.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Attorney Fees, Costs, or Pre- or Post-Judgment Interest)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that attorneys' fees, costs, and pre- and post-judgment interest are not recoverable by Plaintiffs as a matter of law in this case.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Negligence)

Defendants allege, and without admitting any of the allegations contained in Plaintiffs' Complaint, that Plaintiffs were negligent or otherwise at fault and should be barred from recovery of that portion of the damages (if any were suffered) directly attributable to their proportionate share of the negligence or fault, pursuant to the doctrine of comparative negligence.

1

**EIGHTEENTH AFFIRMATIVE DEFENSE**

2

**(Misjoinder – C.C.P. § 430.10(d))**

3

The Complaint contains a defect or misjoinder of parties.

4

**NINETEENTH AFFIRMATIVE DEFENSE**

5

**(Parol Evidence)**

6

Defendants allege, and without admitting any of the allegations contained in Plaintiffs'

7

Complaint, that the claims therein and each and every purported cause of action are barred due to

8

the Parol evidence rule.

9

**TWENTIETH AFFIRMATIVE DEFENSE**

10

**(Speculative Damages)**

11

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs'

12

Complaint, that Plaintiffs are seeking to recover lost profits or damages that are completely

13

speculative in nature.

14

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

15

**(Assumption of Risk)**

16

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs'

17

Complaint, that Plaintiffs knowingly and voluntarily assumed the risk of the conduct, events, and

18

matters alleged in their Complaint, and the damages, if any, incurred by Plaintiffs, was the

19

proximate result of the risks so assumed.

20

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

21

**(Failure to Exercise Ordinary Care)**

22

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs'

23

Complaint, that Plaintiffs failed to exercise ordinary and reasonable care on their own behalf and

24

such negligence and carelessness was a proximate cause of some portion, up to and including the

25

whole of, their own alleged injuries and damages, if any, and Plaintiffs' recovery therefore should

26

be barred or reduced according to law, up to and including the whole thereof.

27

///

28

///

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FILED BY JANE DOES NOS. 17 - 22

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Acts of Other Parties)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that if they are subjected to any liability herein, it will be due in whole, or in part, to the acts and/or omissions of other parties unknown at this time, and any recovery obtained by Defendants should be barred or reduced according to law, up to and including the whole thereof.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Exercise Ordinary Care)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that if they are subjected to any liability herein, it will be due in whole, or in part, to the acts and/or omissions of other parties unknown at this time, and any recovery obtained by Defendants should be barred or reduced according to law, up to and including the whole thereof.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Uncertainty)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that at all relevant times herein, Defendants exercised reasonable care and did not know, and in the exercise of reasonable care could not have known, of the alleged acts or allegations in connection with the conditions which are the subject of the Complaint.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Ripeness)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that Plaintiffs have not yet incurred damages or loss with respect to this action. Their Complaint is therefore not ripe for adjudication.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Non-Existent Obligations)

Defendants allege, and without admitting any of the allegations contained in the Plaintiffs' Complaint, that the Complaint contains non-existent obligations which were not contracted for and no agreement exists.

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FILED BY JANE DOES NOS. 17 - 22

1                **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

2                      **(Failure of Consideration)**

3        Defendants allege, and without admitting any of the allegations contained in the Plaintiffs'

4 Complaint, that if any contracts, obligations or agreements as alleged in the Complaint have been

5 entered into, any duty of performance of Defendants is excused by reason of failure of

6 consideration, waiver, nonexistence of condition precedent, breach by Plaintiffs, impossibility of

7 performance, prevention by Plaintiffs, frustration of purpose and/or acceptance by Plaintiffs.

8                **TWENTY-NINTH AFFIRMATIVE DEFENSE**

9                          **(Setoff)**

10        Defendants allege, and without admitting any of the allegations contained in the Plaintiffs'

11 Complaint, that to the extent Defendants are found liable under any cause of action alleged in the

12 Complaint, the award to Plaintiffs, if any, should be set off by the amount owed by Plaintiffs to

13 Defendants.

14                  **THIRTIETH AFFIRMATIVE DEFENSE**

15                     **(Improper Joinder)**

16        Defendants allege, and without admitting any of the allegations contained in the Plaintiffs'

17 Complaint, that Plaintiffs are improperly joined to this action and should be severed accordingly.

18                **THIRTY-FIRST AFFIRMATIVE DEFENSE**

19              **(Additional Affirmative Defenses)**

20        Defendants currently have insufficient information upon which to form a belief as to

21 whether they may have additional, as yet unstated, affirmative defenses available. Defendants

22 reserve their rights to assert additional defenses in the event discovery indicates additional

23 affirmative defenses are appropriate.

24                           **PRAYER**

25

26        WHEREFORE, Defendants pray as follows:

27       1. That Plaintiffs take nothing by virtue of this action;

28       2. For judgment to be entered against Plaintiffs and in favor of Defendants;

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FILED BY JANE DOES NOS. 17 - 22

1    3.   That Defendants be awarded their costs incurred in this action, and any other amounts

2          recoverable under law; and

3    4.   That this Court grant Defendants such other relief the Court may deem just and proper.

4

5    Dated:  April 30, 2018                    **LAW OFFICES OF DANIEL A. KAPLAN**

6

7                                    By: _____
                                         Daniel A. Kaplan

8                                        Alexandra R. Byler
                                         Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-9-